IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIE DAVIS, JR.,<br>NATHANIEL BRIDDELL,<br>JOSEPH GARRISON,<br>LARRY E. GIBBS,<br>ROY H. WALTERS,<br><br>ALL SIMILARLY-SITUATED CURRENT<br>AND FORMER EMLOYEES OF<br>MOUNTAIRE FARMS, INC.,<br>MOUNTAIRE FARMS OF<br>DELMARVA, INC., and MOUNTAIRE<br>FARMS      OF DELAWARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNTAIRE FARMS, INC.,<br>MOUNTAIRE FARMS OF<br>DELMARVA, INC., and<br>MOUNTAIRE FARMS OF<br>DELAWARE, INC., all Delaware corporations,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. NO. 04-0414-KAJ<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION |

---

**PLAINTIFFS' OPENING BRIEF**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

MARGOLIS EDELSTEIN
Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680
Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Document**                                                              **Page No.**

TABLE OF CASES ……………………………………………………..…    iv

NATURE AND STAGE OF PROCEEDINGS …………………………….…...    1

SUMMARY OF ARGUMENT ………………………………………….…...    3

STATEMENT OF MATERIAL FACTS ………………………….………...    4

ARGUMENT ………………………………………………………….…...    8

I.    PLAINTIFFS' TESTIMONY ESTABLISHES THEY
      WERE EMPLOYED IN A NON-EXEMPT CAPACITY, THEREFORE
      THERE IS NO GENUINE ISSUE OF MATERIAL FACT
      PRECLUDING SUMMARY JUDGMENT IN THEIR FAVOR ON
      THEIR FAIR LABOR STANDARDS ACT CLAIM ……………....…    8

II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
      AS A MATTER OF LAW BECAUSE THEY ARE NOT
      EXECUTIVE EMPLOYEES EXEMPT FROM THE FLSA'S
      OVERTIME REQUIREMENT ……………………………..……….    9

      A.    AS CREW LEADERS, PLAINTIFFS WERE NOT
            EMPLOYED IN A BONA FIDE EXECUTIVE
            CAPACITY ……………………………………..…………    10

            1.    PLAINTIFFS' SUGGESTIONS AND
                  RECOMMENDATIONS AS TO THE HIRING, FIRING,
                  ADVANCEMENT, PROMOTION OR ANY OTHER
                  CHANGE IN STATUS OF EMPLOYEES WERE NOT
                  GIVEN PARTICULAR WEIGHT ………………………..    11

III.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS A
      MATTER OF LAW PURSUANT TO THE DELAWARE WAGE
      PAYMENT AND COLLECTION ACT BECAUSE THEY HAVE
      ESTABLISHED THAT THEY WERE ENTITLED TO OVERTIME
      COMPENSATION AND WERE NOT PAID ACCORDINGLY ……    14

IV.   PLAINTIFFS' ARE ENTITLED TO SUMMARY JUDGMENT
      AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS
      ESTABLISH THAT THE DEFENDANT INTENTIONALLY
      RETALIATED AGAINST THEM FOR THEIR COMPLAINT IN
      TERMS OF INTIMIDATION IN VIOLATION OF THE FAIR LABOR
      STANDARDS ACT ………………………………………………14

**Document**                                                                    **Page No.**

1.  PLAINTIFFS PARTICIPATED IN PROTECTED
    ACTIVITY UNDER THE FAIR LABOR STANDARDS
    ACT …………………………………………………..…….  15

2.  DEFENDANT SUBJECTED PLAINTIFFS TO AN
    ADVERSE EMPLOYMENT ACTION …………………..  15

3.  THERE IS A CAUSAL LINK BETWEEN THE
    PROTECTED ACTIVITY AND THE ADVERSE
    EMPLOYMENT ACTION ………………………………  16

CONCLUSION …………………………………………………………….  17

# TABLE OF CASES

**Case Name**                                                                    **Page No.**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ……………………    8

Blackie v. Maine, 75 F.3d 716 (1st Cir. 1996) …………………………………..   15

Brock v. Richardson, 812 F.2d 121 (3d.Cir. 1987) ………………………………   15

Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998) ……………………..   16

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1
(3d Cir. 1995) ……………………………………………………………………..    8

Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S. Ct. 737,
15 L.Ed.2d 694 (1966) ……………………………………………………………    8

Lafate v. Chase Manhattan Bank (USA), 123 F. Supp. 2d 773, 778
(D. Del. 2000) …………………………………………………………………….. 15, 16

Lowman v. State of Delaware Department of Corrections, 2003 U.S. Dist.
LEXIS 2579 (D. Del. February 21, 2003) …………………………………………...   16

Marshall v. R&M Erectors, Inc., 429 F.Supp. 771 (D. Del. 1977) ………………   10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10,
89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) …………………………………………    8

Morgan v. Future Ford Sales, 830 F.Supp. 807, 1 WH Cases2d 995
(D. Del. 1993) ……………………………………………………………………..   16

Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995) ………………………    8

Reeves v. International Tel. & Tel. Corp., 357 F. Supp. 295, 302-03, 21
WH Cases 40 (W.D. La. 1973) ……………………………………………………    9

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) ……………..   15

Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000) ……………………………..   16

Torre v. Casio, Inc., 42 F. 3d 825, 831 (3d Cir. 1994) …………………………… 15, 16

## Statutes & Regulations

Delaware Wage Payment and Collection Act, 19 Del. C. § 1101 *et seq.* ………… 1

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ………………………..….. 1, 9

Fair Labor Standards Act, 29 U.S.C. §213(a)(1) ………………………………… 1

Fair Labor Standards Act, 29 U.S.C. §215(a)(3) ……………………………… 14, 15

19 *Del.C.* §1102 ……………………………………………………………….. 14

19 *Del.C.* §§ 1103(b) and 1113(c) ……………………………………………….. 14

29 C.F.R. § 541.1 ……………………………………………………………………11

29 C.F.R. § 541.103 *et seq.* ……………………………………………………… 1

29 C.F.R. § 541.105 ……………………………………………………………… 11

Fed. R. Civ. P. 56(c) …………………………………………………………… 8

## NATURE AND STAGE OF PROCEEDINGS

On June 18, 2004, Willie Davis, Jr., Nathaniel Briddell, Joseph Garrison, Larry E. Gibbs, and Roy H. Walters (hereinafter "Plaintiffs"), filed a three-count Complaint against Defendant Mountaire Farms, Inc., Mountaire Farms of Delmarva, Inc., and Mountaire Farms of Delaware, Inc. (hereinafter "Defendant"), alleging claims for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter "FLSA"), as well as the applicable United States Department of Labor Regulations, including 29 C.F.R. § 541.103 *et seq.*[1], and the Delaware Wage Payment and Collection Act, 19 Del. C. § 1101 *et seq.* Plaintiffs claim they are entitled to overtime compensation for hours each of them worked in excess of forty (40) hours per week during their employment with Defendant as Crew Leaders. Plaintiffs also seek attorneys' fees and costs, as well as liquidated damages.

Plaintiffs seek summary judgment on their FLSA claim on the basis that Plaintiffs were not exempt from the overtime compensation requirement because they were not employed in a bona fide executive capacity pursuant to 29 U.S.C. §213(a)(1). Plaintiffs were not employed in an executive capacity because their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change in status of employees were not given particular weight.

Plaintiffs also seek summary judgment on their claim under the Delaware Wage Payment and Collection Act. Since Plaintiffs were not employed in a bona fide executive capacity, they were, in fact, entitled to overtime compensation which they did not receive. Therefore, Plaintiffs did not receive all the wages they were due.

---

[1] On April 20, 2004, the U.S. Department of Labor proposed regulations redefining some of the exemptions for executive employees. The proposed regulations took effect on August 23, 2004. Plaintiff's suit was initiated on June 18, 2004. Any references to the FLSA's regulations in this Opening Brief refer to the regulations in effect when the Plaintiffs filed suit.

Finally, Plaintiffs seek summary judgment on their retaliation claim under the FLSA. Plaintiffs engaged in protected activity under the FLSA, of which Defendant was made aware; Plaintiffs were then subjected to an adverse employment action, to wit, intimidation in the form of threats to their employment which occurred contemporaneous to the protected activity.

This is Plaintiffs' Opening Brief in support of their Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

I.   PLAINTIFFS' TESTIMONY ESTABLISHES THEY WERE EMPLOYED IN A
     NON-EXEMPT CAPACITY, THEREFORE THERE IS NO GENUINE ISSUE OF
     MATERIAL FACT PRECLUDING SUMMARY JUDGMENT IN THEIR FAVOR
     ON THE FAIR LABOR STANDARDS ACT CLAIM.

II.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF
     LAW BECAUSE THEY ARE NOT EXECUTIVE EMPLOYEES EXEMPT FROM
     THE FAIR LABOR STANDARDS ACT OVERTIME REQUIREMENT.

     A.   AS CREW LEADERS, PLAINTIFFS WERE NOT EMPLOYED IN A
          BONA FIDE EXECUTIVE CAPACITY.

          1.   PLAINTIFFS' SUGGESTIONS AND RECOMMENDATIONS
               AS  TO  THE  HIRING,  FIRING,  ADVANCEMENT,
               PROMOTION OR ANY OTHER CHANGE IN STATUS OF
               EMPLOYEES WERE NOT GIVEN PARTICULAR WEIGHT.

III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF
     LAW  PURSUANT  TO  THE  DELAWARE  WAGE  PAYMENT  AND
     COLLECTION ACT BECAUSE THEY HAVE ESTABLISHED THAT THEY
     WERE ENTITLED TO OVERTIME COMPENSATION AND WERE NOT PAID
     ACCORDINGLY.

IV.  PLAINTIFFS' ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF
     LAW  BECAUSE  THE  UNDISPUTED  FACTS  ESTABLISH  THAT  THE
     DEFENDANT INTENTIONALLY RETALIATED AGAINST THEM FOR THEIR
     COMPLAINT IN TERMS OF INTIMIDATION IN VIOLATION OF THE FAIR
     LABOR STANDARDS ACT.

     A.   PLAINTIFFS PARTICIPATED IN PROTECTED ACTIVITY UNDER
          THE FAIR LABOR STANDARDS ACT.

     B.   DEFENDANT  SUBJECTED  PLAINTIFFS  TO  AN  ADVERSE
          EMPLOYMENT ACTION.

     C.   THERE IS A CAUSAL CONNECTION BETWEEN THE PROTECTED
          ACTIVITY AND THE ADVERSE EMPLOYMENT ACTION.

## STATEMENT OF MATERIAL FACTS

Plaintiffs are/were employees of Defendant who worked in the non-exempt position of Crew Leader which involved the production, processing, and distribution of poultry products for consumers during the three (3) years immediately preceding the filing of this lawsuit. Defendant is a Delaware corporation that, by and through its employees, including the Plaintiffs, is engaged in the production, processing and distribution of poultry products for consumers.

For the past several years, going back at least three (3) years for the purpose of this action, Plaintiffs have/had been classified as "exempt" employees pursuant to the FLSA and thereby were not paid at a rate of one and one-half times their hourly rate of pay for hours worked in excess of forty (40) hours per week. The job duties and responsibilities of Plaintiffs did/do not meet the executive exemption, nor any other exemption, to the relevant sections of the FLSA as defined under the statute and the applicable code of federal regulations.

At all relevant times hereto, Defendant followed, and continues to follow, a corporate policy and/or practice that requires/required Plaintiffs to submit a daily time sheet with their hours broken down for each day of the week. However, these daily time sheets only reflect the time that is spent on the designated farms each day. The daily time sheets do not include the compensable time Plaintiffs spent/spend picking up and dropping off the chicken catchers before arriving to the designated farm and before returning home each day. As a result, for the three (3)-year period immediately preceding the filing of this action, Defendant failed to pay Plaintiffs the compensation to which they were entitled under the FLSA; Plaintiffs have been paid only for the time beginning when the farm(s) they are assigned to open, and have not been paid for any of the time they are required to travel, pick up, and return home the catchers necessary to perform

4

the work at the farm(s), resulting in Plaintiffs not being paid for numerous hours worked beyond forty (40) every week.

On the average, it is estimated that Plaintiffs work/worked three (3) to five (5) overtime hours per day, fifteen (15) to twenty-five (25) overtime hours per week, if not more, in excess of forty (40) hours per week without any overtime compensation from Defendant whatsoever. Defendant improperly classified and continues to improperly classify Plaintiffs as exempt from the overtime requirements of the FLSA and applicable regulations. Plaintiffs worked in excess of forty (40) hours continually in various work weeks throughout the previous three (3) years, and they continue to work in excess of forty (40) hours in various work weeks and will likely continue to do so hereafter, without receiving the proper amount of overtime pay.

Plaintiffs were in the position of Crew Leaders. As Crew Leaders, Plaintiffs had no power to hire or fire employees. In fact, if Plaintiffs were aware of an individual or individuals who were in need of employment, they could do nothing more than to suggest that the individual contact the Defendant's plant or management personnel and instruct the individual to complete an application. Plaintiffs had no say as to whether or not any individual(s) would actually be hired. Further, Plaintiffs were not permitted to make their own work hours or schedules. All of the aforementioned "management" responsibilities were dictated to Plaintiffs by Defendant. Plaintiffs never qualified for the executive exemption to the FLSA. During the preceding three (3) years, Defendant knew that Plaintiffs were working in excess of forty (40) hours per work week, and that Plaintiffs were not receiving the compensation to which Plaintiffs were entitled under the FLSA and Delaware law.

Plaintiffs were also forced to use their personal automobiles to pick up, transport and/or return home various personnel on a daily basis. Defendant continuously refused to supply

company vehicles to Plaintiffs. Plaintiffs even had to leave their personal vehicles for company use if they were out sick or went on vacation. Additionally, Plaintiffs were responsible for all maintenance and repairs to their vehicles, including those caused by damages that occurred while Plaintiffs were working for Defendant. Plaintiffs were responsible for providing insurance coverage, up to $1,000,000.00 to cover Defendant's employees in the event of an accident on company time. The only consideration received by Plaintiff for using their personal vehicles was a weekly check in the amount of $250 to cover expenses, including gas and wear and tear on their vehicles.

Defendant was put on notice by Plaintiffs' counsel by letter dated February 27, 2004 that its policies and/or practices described herein are/were improper and illegal but Defendant has continued said policies and/or practices to date and will likely continue to keep them in effect hereafter.

Furthermore, when Defendant learned of Plaintiffs' intentions to seek counsel, Defendant immediately retaliated against Plaintiffs, threatening Plaintiffs with termination of their employment if they continued to pursue these issues with counsel. Specifically, the Plaintiffs who were employed as Crew Leaders in or around February 2004 received a "Final Warning" which indicated that failure to provide the chicken catchers with the required 30-minute lunch break would result in immediate termination of the Crew Leader. However, each Crew Leader had already been providing the required lunch break, if not more time. The "Final Warning" was issued just days after Defendant received the letter from Plaintiff's counsel. Plaintiffs believe that this "Final Warning" was an attempt to threaten, coerce, or intimidate Plaintiffs to prevent them from filing this action.

Defendant knew at all times, and showed reckless disregard for the fact that its pay policies and/or practices violated the FLSA. Defendant's violations of the FLSA were committed willfully and recklessly. As a result of the foregoing, Defendant has willfully and continuously failed and refused to pay Plaintiffs one and one-half times their regular rate of pay for weeks in which they worked in excess of forty (40) hours, and Defendant's willful failure and refusal to pay Plaintiffs one and one-half times their regular rate of pay for overtime work continues to this date and is likely to continue hereafter.

The precise amount of compensation due to Plaintiffs is unknown because the information required (i.e. time records, work schedules, etc.) is under the exclusive control of Defendant. Plaintiffs, nonetheless, do believe that the compensation owed to them is quite substantial.

## ARGUMENT

I.    **PLAINTIFFS' TESTIMONY ESTABLISHES THEY WERE EMPLOYED IN A NON-EXEMPT CAPACITY, THEREFORE THERE IS NO GENUINE ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT IN THEIR FAVOR ON THEIR FAIR LABOR STANDARDS ACT CLAIM.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered" where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute over a material fact must be "genuine", i.e., the evidence is such "that a reasonable jury could return a verdict in favor of the non-moving party." Id. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995).

To survive a motion for summary judgment, Defendant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

In the present matter, the current record which includes the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits establish that

8

Plaintiffs did not have the authority to hire or fire employees. The record also establishes that Plaintiffs may have advised a potential employee to "go to the plant and fill out the paperwork" but this is far less than recommending that Defendant hire a particular person. Therefore, Plaintiffs are entitled to summary judgment as a matter of law. Furthermore, Defendant has the burden of proof to establish the exemption applies to its employees. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S. Ct. 737, 15 L.Ed.2d 694 (1966). Defendant has failed to satisfy its burden.

## II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE THEY ARE NOT EXECUTIVE EMPLOYEES EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENT.

A plaintiff alleging a wage violation of the FLSA must establish the following elements to meet his burden: (1) the existence of an employment relationship with the defendant; (2) evidence that the defendant is covered under the Act; (3) the defendant's constructive or actual knowledge of overtime worked or wage payments in violation of the Act; and (4) the performance of some work for which the employee was not properly compensated under the Act and the amount of such liability at least by a just and reasonable inference. See Fair Labor Standards Act, 29 U.S.C. §201 et seq.

The exemptions pursuant to the FLSA must be applied on a case by case basis. See Reeves v. International Tel. & Tel. Corp., 357 F. Supp. 295, 302-03, 21 WH Cases 40 (W.D. La. 1973) (exempt status of employee depends on individual duties, not on how employee is classified). Simply because one employee is classified as an exempt employee does not automatically provide exempt status to all employees in that classification. An employee's job title alone is insufficient to determine exempt or non-exempt status.

Plaintiffs have established the existence of an employment relationship with the defendant and that the defendant is covered under the Act. (See Tab A, Paragraphs 4-11). Further, Plaintiffs have established that Defendant had constructive and actual knowledge of overtime worked. Defendant acquired this knowledge through the receipt of the daily log sheets which established that Plaintiffs worked additional hours outside the farm time because they were each required to pick up and drop off each of the catchers on their crews. Finally, Plaintiffs established that they performed work for which they were not properly compensated under the FLSA. Specifically, since Plaintiffs were required to pick up and drop off each catcher on their crews, this requirement added several additional compensable hours of work to Plaintiffs' workday. See Marshall v. R&M Erectors, Inc., 429 F.Supp. 771 (D. Del. 1977) (if an employee is required to report to a specified location where they must pick up employees, compensable time begins at the meeting place.) Since Plaintiffs were required to pick up each catcher on their crews at the catchers' homes, Plaintiffs' compensable time began as soon as they arrived at the first catcher's home. Therefore, Plaintiffs have satisfied the burden to establish that they were entitled to overtime compensation as a matter of law.

### A.    AS CREW LEADERS, PLAINTIFFS WERE NOT EMPLOYED IN A BONA FIDE EXECUTIVE CAPACITY.

Under the FLSA, an employee employed in a bona fide executive capacity shall mean any employee:

    (a)    Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

    (b)    Who customarily and regularly directs the work of two or more other employees therein; and

(c)    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and …

29 C.F.R. § 541.1.

As crew leaders, Plaintiffs were involved in the management of the enterprise since they were responsible for making certain that the chicken catchers caught the requisite number of chickens and made the appropriate arrangements to have the chickens that had been caught loaded on the trucks and for the truck drivers to return to Defendant's plant.  Further, Plaintiffs concede that Plaintiffs customarily and regularly direct the work of two or more other employees.  However, Plaintiffs did not have the authority to hire or fire employees and the few suggestions and/or recommendations made by Plaintiffs to Defendant were done in accordance with a practice which required Plaintiffs to refer potential employees to Defendant to complete the appropriate paperwork.  This certainly does not give rise to the level of particular weight to make Plaintiffs exempt employees under the FLSA.  Simply stated, Plaintiffs were not responsible for the recruitment of employees for Defendant nor were they involved in the interview process to actually hire employees for Defendant.  As a result, there is no factual issue to dispute the conclusion that Plaintiffs were not employed in a bona fide executive capacity under the FLSA, and Plaintiffs are entitled to summary judgment as a matter of law.

1.    **PLAINTIFFS' SUGGESTIONS AND RECOMMENDATIONS AS TO THE HIRING, FIRING, ADVANCEMENT, PROMOTION OR ANY OTHER CHANGE IN STATUS OF EMPLOYEES WERE NOT GIVEN PARTICULAR WEIGHT.**

To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of

11

the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. 29 C.F.R. § 541.105.

The job duties and/or responsibilities of the Plaintiffs in this matter did not include the hiring of chicken catchers or any other employee for Defendant. If one of the Plaintiffs knew of an individual who was interested in obtaining employment, he would send the potential candidate to the plant or directly to the supervisor, Doug Lynch. The Plaintiffs were not required to interview the potential employee nor did they review any application or paperwork that was submitted to Defendant. The extent of Plaintiffs' involvement was to send the potential employee to the plant or to Doug Lynch.

Another factor of whether particular weight is given to the suggestions and recommendations of employees includes the frequency at which such suggestions and recommendations are made or requested and the frequency at which the employee's suggestions and recommendations are relied upon.

Plaintiffs provide no input into who is hired by Defendant. (See Tab F, Page 29, Lines 19-25). The extent of Plaintiffs' involvement was only to tell an individual (interested in a job) to go to the plant and get signed up and go through the company's procedure. (See Tab F, Page 29, Line 25 and Page 30, Line 1-8). Plaintiffs could also go to Doug Lynch and tell him that they needed another "guy" or that someone needed to be hired and whether Plaintiff knew of someone who needed a job. Lynch would respond by telling the Crew Leader to bring the potential employee in and get him signed up. The potential employee may begin employment or may not begin employment. The Crew Leaders have no further input in the hiring decision. (See Tab D, Page 58, Lines 13-25 and Page 59, Lines 1-2). Further, Plaintiffs only indicate to

the potential employee that [they] have to go through company policy. There was never any indication that the potential employee had secured a position simply by speaking with a Crew Leader. (See Tab F, Page 30, Lines 9-14). Simply stated, Plaintiffs had no impact at all as to who was hired by Defendant. (See Tab F, Page 31, Lines 12-14). Furthermore, Plaintiffs did not believe they had the authority to hire or fire or to recommend the promotion of any individual. When asked whether a Plaintiff could recommend the promotion of one of the catchers to be a forklift driver, the response was, "Yes, I could ask Doug about it, yes." (See Tab C, Page 109, Lines 8-11). Furthermore, Plaintiffs knew that it was Doug Lynch who was responsible for hiring the chicken catchers or forklift drivers and not the Crew Leaders (See Tab D, Page 56, Lines 14-16).

Even though Plaintiffs may have occasionally sent some individual men to the plant to get signed up, these times were very minimal. (See Tab B). Even though the amount of men who were sent to the plant were minimal, sometimes individuals who were recommended were not even hired by Defendant (See Tab D, Page 56, Lines 17-21). Plaintiff Garrison recommended only three (3) individuals during his entire tenure as a Crew Leader with Defendant. (See Tab D, Page 58, Lines 1-12). Plaintiff Larry Gibbs recommended the hiring of only two (2) or three (3) individuals during his entire tenure as a Crew Leader (See Tab E, Page 78, Lines 4-5 and 14). Of the two (2) to three (3) potential chicken catchers that Gibbs advised to complete paperwork for employment with the Defendant, one (1) was not hired (See Tab E, Page 78, Lines 15-19).

Plaintiffs also were not involved in recommending chicken catchers for promotions. Plaintiff Garrison has never recommended to Defendant that a catcher be promoted to a forklift driver. (See Tab D, Page 108, Lines 17-23). Plaintiff Gibbs does not recall ever recommending

anyone for a promotion. He never even informed Doug Lynch that certain employees were doing a good job. Plaintiff Gibbs would respond to inquiries from Doug Lynch about current employees, but he never indicated that someone should be promoted. (See Tab E, Page 44, Lines 14-21 and Page 45, Lines 1-15).

**III.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW PURSUANT TO THE DELAWARE WAGE PAYMENT AND COLLECTION ACT BECAUSE THEY HAVE ESTABLISHED THAT THEY WERE ENTITLED TO OVERTIME COMPENSATION AND WERE NOT PAID ACCORDINGLY.**

Delaware's Wage Payment and Collection Act, specifically, 19 *Del.C.* §1102, requires the payment of all wages due on the regularly scheduled payday designated in advance by the employer. Failure to appropriately compensate employees on the regular scheduled paydays entitles the aggrieved employee(s) to liquidated damages in an amount equal to the unpaid wages/overtime and attorneys' fees, cost of prosecution and costs of the present action. 19 *Del.C.* §§ 1103(b) and 1113(c).

Plaintiffs have established that they were non-exempt employees and therefore should have been compensated at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per week. Since the Defendant failed to adequately compensate Plaintiffs, they are entitled to summary judgment as a matter of law on their Delaware Wage Payment and Collection Act claim.

**IV.    PLAINTIFFS' ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT THE DEFENDANT INTENTIONALLY RETALIATED AGAINST THEM FOR THEIR COMPLAINT IN TERMS OF INTIMIDATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT.**

Section 215(a)(3) of the FLSA makes it unlawful for any person:

> To discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [act], or has testified or is about to testify in any such proceeding …

A plaintiff claiming retaliation under the FLSA must establish that: (1) he engaged in a statutorily protected activity; (2) the employer then subjects the employee to an adverse employment action; and (3) as a reprisal for having engaged in the protected activity. See Blackie v. Maine, 75 F.3d 716 (1st Cir. 1996).

### 1.    PLAINTIFFS PARTICIPATED IN PROTECTED ACTIVITY UNDER THE FAIR LABOR STANDARDS ACT.

According to the FLSA, a "protected activity" is any instance when an employee has:

> filed any complaint or instituted or caused to be instituted any proceeding under or related to this [act], or has testified or is about to testify in any such proceeding …

29 U.S.C. § 215(a)(3).

Here, Plaintiffs engaged in a protected activity when their attorney sent a letter (See Tab G) to Mr. Phil Owen, Human Resources Manager, and complained that Defendant was not properly compensating Plaintiffs for all hours that were worked. See Brock v. Richardson, 812 F.2d 121 (3d.Cir. 1987) (an informal complaint is sufficient to bring an employee protection under the Act). Plaintiffs have met their burden to establish that they engaged in protected activity under the FLSA.

### 2.    DEFENDANT SUBJECTED PLAINTIFFS TO AN ADVERSE EMPLOYMENT ACTION.

An adverse employment action is an action that alters the employee's compensation, terms, conditions or privileges of employment, deprives him of employment opportunities or adversely affects his status as an employee. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). "Job termination, however, is not a requirement for a finding of adverse employment action - much less severe action can suffice." Lafate v. Chase Manhattan Bank

(USA), 123 F. Supp. 2d 773, 778 (D. Del. 2000); Torre v. Casio, Inc., 42 F. 3d 825, 831 (3d Cir. 1994) (finding that a job transfer without loss of pay or benefits, may constitute an adverse job action). The United States Supreme Court has defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

When determining whether an adverse employment action has occurred, courts should not analyze the employer's acts in isolation, but instead should analyze all of the employer's acts collectively. See Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000); see also Lafate, 123 F. Supp. 2d at 778; and Lowman v. State of Delaware Department of Corrections, 2003 U.S. Dist. LEXIS 2579 (D. Del. February 21, 2003) (holding that the multiple acts collectively can constitute an adverse employment action).

Simply put, Plaintiffs suffered an adverse employment action when Defendant threatened them with termination if they failed to provide their crews with the required 30-minute non-work period for a lunch break which each Crew Leader was already providing to the members of his crew. Plaintiffs have established that they were subjected to an adverse employment action, i.e. having their jobs threatened if they failed to provide their crew members with the required break that they were already receiving.

### 3.    THERE IS A CAUSAL LINK BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE EMPLOYMENT ACTION.

Determining whether there is a causal link between the protected act and the adverse employment action is highly fact sensitive and timing is not the only factor to be considered. Generally, whether there is a causal link between the protected activity and the adverse employment action is often in dispute. A sufficient causal link may be established by a showing that only a very brief period of time separated the assertion of statutory rights and the adverse employment action. Morgan v. Future Ford Sales, 830 F.Supp. 807, 1 WH Cases2d 995 (D. Del.

1993) (employee terminated 2 days after telling manager he contacted DOL establishes prima facie case where manager making termination decision knew of his activity).

In the present case, Plaintiffs complained to Mr. Phil Owen, through their counsel, that Defendant was not appropriately compensating them for all time worked, which generally exceeded forty (40) hours per week. In fact, shortly after Plaintiff's counsel notified Defendant of the alleged violations of the FLSA, Plaintiffs received a "Final Warning" that failure to provide their crews with a 30-minute non-work period would result in termination of their employment.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request this Honorable Court to grant the Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (DE #2407)
Keri L. Morris, Esquire (DE #4656)
1509 Gilpin Avenue
Wilmington, DE  19806
(302) 777-4680
Attorneys for the Plaintiffs

Dated: May 2, 2005

17

LEXSEE 2003 U.S. DIST. LEXIS 2579

**PATRICIA LOWMAN, Plaintiff, v. STATE OF DELAWARE DEPARTMENT OF CORRECTIONS, Defendant.**

**Civil Action No. 01-477-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 2579*

**February 21, 2003, Decided**

**DISPOSITION:** [*1] Motion for summary judgment denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After the sexual harasser was terminated, plaintiff employee sued defendant employer pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., alleging sexual harassment and retaliation. The employer moved for summary judgment pursuant to Fed. R. Civ. P. 56.

**OVERVIEW:** There were genuine issues of material fact to the issue of the employer's liability for the harasser's acts of sexual harassment. The employee raised genuine issues of material as to the following: (1) whether the employer knew of the harasser's habitual harassment of women and therefore was negligent, (2) whether the harasser was a supervisor, (3) whether the employer acted reasonably to prevent the harassment, and (4) whether the employee's actions after being harassed were unreasonable. There was a genuine issue of material fact as to whether, when collectively viewing the employer's actions, there was an adverse employment action taken against the employee. Several acts, which if considered in isolation would not constitute an adverse employment action, could, if viewed collectively, rise to the level of an adverse employment action under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S § 2000e* et seq. The multiple acts alleged by the employee could collectively constitute an adverse employment action and further discovery was required regarding details of a certain disciplinary action.

**OUTCOME:** The employer's motion for summary judgment was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Under Fed. R. Civ. P. 56(c), summary judgment is proper if there is no genuine issue of material fact and, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

*Labor & Employment Law > Discrimination > Sexual Harassment > Defenses & Exceptions*
[HN3] The Burlington affirmative defense comprises two necessary elements, that: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

**COUNSEL:** Barbara H. Stratton, Esquire of KNEPPER & STRATTON, Wilmington, Delaware. Attorney for Plaintiff.

Case 1:04-cv-00414-SLR    Document 42    Filed 05/02/2005    Page 24 of 25

Page 2
2003 U.S. Dist. LEXIS 2579, *

Michael F. Foster, Esquire, Deputy Attorney General of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware. Attorney for Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

February 21, 2003
Wilmington, Delaware

**FARNAN, District Judge**

Pending before the Court is State Defendant's Motion for Summary Judgment (D.I. 64). For the reasons discussed below, the Motion will be denied.

This is a Title VII sexual harassment case arising out of Sergeant ("Sgt.") Norman Sissons' conduct towards Correction Officer ("Officer") Patricia Lowman at the Multi-Purpose Criminal Justice at Gander Hill ("Gander Hill"). After an internal investigation of Officer Lowman's complaints, Sgt. Sissons was terminated from his employment with the State of Delaware Department of Corrections ("DOC") for sexual harassment. Subsequently, Officer Lowman filed the instant suit seeking relief from Sgt. Sissons' employer, the DOC.

[HN1] Under Federal Rule of Civil [*2] Procedure 56(c), summary judgement is proper if there is no genuine issue of material fact and, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. [HN2] The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

The DOC contends that it is not liable for Sgt. Sissons' acts under either a negligence or vicarious liability theory of agency. The DOC contends it was not negligent because it had no prior notice of sexual harassment by Sgt. Sissons and, once the DOC received Officer Lowman's complaint, it took prompt and adequate remedial action. Additionally, the DOC contends it is not vicariously liable for Sgt. Sissons' behavior because he is not a supervisor under Title VII. The DOC contends Sgt. Sissons is not a supervisor because he does not have the actual [*3] power to hire, fire, demote, transfer, promote, or discipline correction officers.

The DOC further contends that even if Sgt. Sissons is considered a supervisor under Title VII, it can establish the elements of the affirmative defense set out in Burlington Indus. v. Ellerth, which provides:

> [HN3] The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Indus. v. Ellerth, 524 U.S. 742, 765, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998)*. The DOC contends that its anti-harassment policy satisfies the first prong and that Officer Lowman's failure to promptly report Sgt. Sissons' conduct satisfies the second prong.

The DOC contends it did not retaliate against Officer Lowman. Specifically, The DOC contends it did not take an adverse employment action against Officer Lowman after or near the protected activity (filing a sexual harassment complaint with her supervisors), which is [*4] a required element of a prima facie retaliation case. The DOC contends Officer Loman's allegations of retaliation consist of complaints about jokes or taunts. The DOC contends Officer Lowman's other allegations of retaliation refer to incidents occurring nearly three years after her complaint against Sgt. Sissons, which therefore cannot be causally connected to the protected activity as required by Title VII.

In response, Officer Lowman contends there are genuine issues of material fact as to the following respondeat superior liability issues: 1) whether the DOC knew of Sgt. Sissons' habitual harassment of women and therefore was negligent; 2) whether Sgt. Sissons was a supervisor; 3) whether the DOC acted reasonably to prevent the harassment; and 4) whether Officer Lowman's actions after being harassed were unreasonable.

Officer Lowman contends the DOC was negligent in not preventing the harassment because the DOC had actual and constructive notice of the sexually hostile work environment created by Sgt. Sissons' conduct. Specifically, Officer Lowman contends Sgt. Sissons harassed six other employees at Gander Hill prior to

harassing Officer Lowman, and at least one employee reported [*5] the harassment to management six months prior to Officer Lowman's arrival at Gander Hill. Moreover, Officer Lowman contends the DOC was negligent in not preventing Sgt. Sissons' harassment of Officer Lowman after she filed a formal complaint.

Officer Lowman contends Sgt. Sissons is a supervisor because the DOC has a para-military chain of command which dictates that Officer's are obligated to obey all higher ranking personnel and are subject to discipline for insubordination if they do not. Additionally, Officer Lowman points out that Warden Raphael Williams agreed in his deposition that Sgt. Sissons had supervisory authority over Officer Lowman.

Officer Lowman contends that the DOC did not exercise reasonable care to prevent the harassment because the DOC was on notice of the sexually hostile work environment created by Sgt. Sissons at least six months prior to Officer Lowman's arrival at Gander Hill. Additionally, Officer Lowman contends that because of the DOC's inadequate remedial procedures, Sgt. Sissons was able to continue to harass her after a formal investigation had already been launched. Moreover, Officer Lowman contends that she did not receive copies of the DOC's sexual [*6] harassment policies during her training and could not find them posted when she looked for them at Gander Hill after the harassment began.

Officer Lowman contends that her delay in reporting the harassment was not unreasonable because of her subsequently substantiated fear of retaliation. Additionally, Officer Lowman contends that the DOC's failure to post anti-harassment policies hindered her efforts to educate herself about the DOC's complaint procedures.

Officer Lowman contends that the DOC took retaliatory adverse employment actions against her and that the actions were causally connected to protected activity. Officer Lowman contends the acts complained of are causally connected because they were close in time to the filing of her complaint with the Equal Employment Opportunity Commission and to activities related to the instant law suit. Officer Lowman contends that since her initial complaint, there has been a pattern of retaliatory conduct against her by the DOC that, when viewed in its entirety, rises to the level of an adverse employment action under Title VII. The retaliatory conduct includes the following: derogatory and hostile comments by superiors; threats to her career [*7] by a superior officer; unjustified revocation of light duty status; difficulty getting days off to attend Court ordered mediation; pretextual disciplinary investigations;

unjustified docking of pay; and a written reprimand for not making it to work because she ran her car off the road in the snow while driving with a broken arm. Viewing the facts in the light most favorable to Officer Lowman, the Court concludes that there are genuine issues of material fact that preclude a grant of summary judgment as to the issue of the DOC's liability for Sgt. Sissons' acts of sexual harassment, and thus, the Court will deny the DOC's Motion as to that claim. Specifically, the Court concludes that Officer Lowman has raised genuine issues of material fact as to the following: 1) whether the DOC knew of Sgt. Sissons' habitual harassment of women and therefore was negligent; 2) whether Sgt. Sissons was a supervisor; 3) whether the DOC acted reasonably to prevent the harassment; and 4) whether Officer Lowman's actions after being harassed were unreasonable. Therefore, the Court concludes that the issue of the DOC's liability for Sgt. Sissons' conduct is not amenable to summary judgment.

The Court further [*8] concludes that there is a genuine issue of material fact as to whether, when collectively viewing the DOC's actions, there was an adverse employment action taken against Officer Lowman, and thus, the Court will deny the DOC's Motion as to Officer Lowman's retaliation claim. The facts of the instant case are similar to those in *Lafate v. Chase Manhattan Bank, 123 F. Supp. 2d 773 (D. Del. 2000)*, where this Court held that several acts, which if considered in isolation would not constitute an adverse employment action, could, if viewed collectively, rise to the level of an adverse employment action under Title VII. Because the multiple acts alleged by Officer Lowman could collectively constitute an adverse employment action and because further discovery is required regarding details of the December disciplinary action, the Court concludes that summary judgment as to Officer Lowman's retaliation claim is not warranted.

For the reasons discussed, the State Defendant's Motion for Summary Judgment (D.I. 64) will be denied. An appropriate Order will be entered.

## ORDER

At Wilmington this 21st day of February 2003, for the reasons set forth in the Memorandum Opinion [*9] issued this date;

IT IS HEREBY ORDERED that State Defendant's Motion for Summary Judgment (D.I. 64) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE