2

Case 1:04-cv-00414-SLR   Document 44-3   Filed 05/02/2005   Page 1 of 11

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

C

United States District Court, E.D. Pennsylvania.
James L. HARRIS,
v.
MERCY HEALTH CORPORATION.
No. CIV. A. 97-7802.

Aug. 9, 2000.

MEMORANDUM

O'NEILL

*1 Plaintiff James L. Harris, a former employee of defendant Mercy Health Corporation of Southeastern Pennsylvania, [FN1] asserts a variety of statutory and common law claims under federal and Pennsylvania law arising from defendant's failure to compensate him for time spent on-call and from his subsequent dismissal. Specifically, plaintiff sets forth the following claims: (1) failure to pay overtime compensation in violation of § 7(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (2) retaliatory dismissal in violation of § 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3); (3) violation of Pennsylvania's Minimum Wage Act of 1968 ("PMWA"), 43 P.S. §§ 333.101 *et seq.;* (4) violation of Pennsylvania's Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.2 *et seq.;* (5) unjust enrichment; (6) promissory estoppel; and (7) breach of an implied covenant of good faith and fair dealing. [FN2]

> FN1. Mercy Health Corporation of Southeastern Pennsylvania does business as Misericordia Hospital.

> FN2. In his response to defendant's motion, plaintiff acknowledges that defendant is entitled to judgment on the promissory estoppel claim. Specifically, he "admits in his testimony that his recollection of his conversation with Ms. Collins is incorrect and that she at no time guaranteed him that he should have been paid for on-call time." Pl.'s Mem. at 38. Accordingly, with respect to Count VI, I shall grant defendant's motion as unopposed and enter judgment for defendant and against plaintiff.

Presently before me are defendant's motion for summary judgment and plaintiff's response thereto. For the reasons discussed below I will grant defendant's motion in part and deny it in part.

I.

The following facts are uncontested. Plaintiff was hired by defendant in February 1978 as the coordinator / clinical manager of its Addictive Services Unit ("ASU"), a subdivision within the department of psychiatry. Beginning in August 1998, plaintiff was given a pager so that he could respond to admissions and insurance reimbursement issues which arose at the ASU after regular business hours. At the time that plaintiff was first presented with the pager, he approached the hospital's assistant administrator and inquired whether carrying the pager would entitle him to additional compensation. In response, plaintiff was told that as an exempt, management-level employee he was not entitled to on-call compensation. In early 1995, after obtaining a copy of defendant's policy regarding on-call compensation, plaintiff approached Dr. Carmen Irizarry, the Hospital's then director of the department of psychiatry and again requested compensation for time spent on-call. Dr. Irizarry also informed plaintiff that as an exempt employee he was not entitled to such compensation. On August 19, 1996, Dr. Heather Hall, the then interim director of the department of psychiatry, imposed a one-day disciplinary suspension without pay upon plaintiff. On November 7, 1996, the ASU was disbanded, and plaintiff was laid off. A revamped Detox Center was opened in April 1997; plaintiff was not offered a position there.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 2
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

II.

Summary judgment is appropriate if the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Thus, a court's responsibility is not to resolve disputed issues of fact but to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49 (1986). The moving party bears the initial burden of identifying those portions of the record which it believes indicate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party must then point to specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). It must raise "more than a mere scintilla of evidence in its favor" to defeat the summary judgment motion; it must produce evidence on which a jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251. Though the non-moving party may not rely upon unsupported allegations or mere suspicions, *id.* at 248, it is entitled to have all reasonable inferences drawn in its favor. *Id.* at 255.

III.

*2 Defendant first argues that it is entitled to summary judgment on plaintiff's statutory claims for overtime compensation (Counts I, III, and IV) because plaintiff was an exempt employee under the FLSA and the PMWA. [FN3] Under the FLSA an employer must pay an employee overtime compensation for all hours worked by the employee in a given week in excess of forty (40) hours. *See* 29 U.S.C. § 207(a)(1). However, the FLSA provides an exemption from overtime compensation for any employee employed in a "bona fide executive, administrative, or professional capacity" as defined by the Secretary of Labor. 29 U.S.C. § 213(a)(1). The PMWA also provides an exemption for employment in a bona fide executive, administrative, or professional capacity. *See* 43 P.S. § 333.105(a)(5). [FN4]

> FN3. Defendant contends that if I find that, as an employee, plaintiff was exempt from the FLSA and the PMWA, then plaintiff is not entitled to any overtime compensation and thus has no claim under the PWPCL. The relevant provisions of the FLSA and the PMWA establish a fixed minimum wage and overtime rates for employees. *See* 29 U.S .C.A. §§ 206, 207; 43 P.S. § 333.104. The PWPCL creates no right to compensation but merely creates a statutory right to enforce payment of compensation to which an employee is otherwise entitled. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800-01 (3d Cir.1990).

> FN4. Defendant appears to argue that if plaintiff falls within the executive, administrative, or professional exemption under the FLSA, then plaintiff is also exempt under the PMWA's corresponding exemption. Accordingly, defendant's brief analyzes only the FLSA exemption.

Because the FLSA is a remedial act, its exemptions, such as the exemptions for bona fide executives, administrators and professionals claimed here, are narrowly construed; the employer bears the burden of proving that its employees fall within an exempted category. *See Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991). Accordingly, to succeed in its motion for summary judgment, defendant must show that no genuine issue of material fact exists as to whether plaintiff falls within an exempted category.

Under regulations promulgated by the Secretary of Labor, one requirement for exempt status under § 213(a)(1) is that the employee earn a specified minimum amount on a "salary basis." 29 C.F.R. §§ 541.1(f), 541.2(e), 541.3(e). [FN5] An employee is considered to be paid 'on a salary basis' within the meaning of the regulations:

> FN5. The regulations provide both a "short test" and a "long test" for determining whether an employee is employed in an executive, administrative, or professional capacity. *See* 29 C.F .R. §§ 541.1(f), 541.2(e), 541.3(e). At present, the long test applies to employees who are compensated on salary basis at a rate of not less than

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

> $155 per week, while the short test is used when an employee earns a salary of more than $250 per week. *See* 29 C.F.R. §§ 541.1(f), 541.2(e), 541.3(e).
> Though the parties dispute whether plaintiff was compensated on a salary basis, they both apply the short test to determine whether plaintiff was employed in an executive, administrative, or professional capacity. Additionally, payroll records show that plaintiff was compensated at a rate in excess of $250 per week. *See* Def.'s Mem., Ex. I, J.

if under his employment agreement he regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
29 C.F.R. § 541.118(a). This standard is commonly known as the 'salary basis test.' As evidence that plaintiff meets the salary basis test, defendant relies primarily upon plaintiff's payroll records. Plaintiff points to the same evidence to support his contention that he was an hourly employee.

Upon review I find that the payroll records do provide conflicting evidence. An applicant referral and interview summary shows that when plaintiff was interviewed by hospital administrators, he was offered a salary of $18,000. Def.'s Mem., Ex. I. Additional payroll records from February 21, 1994 to September 16, 1996 show that plaintiff was credited for eight hours of work each day and do not record plaintiff's "clock in" or "clock out" time. Def.'s Mem., Ex. L. At the time of plaintiff's discharge, an employee information report states that plaintiff was earning a salary of $45,859.84. Def.'s Mem., Ex. J. However, that same report includes an hourly rate of compensation of $22.048 and classifies plaintiff as an hourly employee. [FN6] *Id.* In addition, the report provides different hourly rates of pay for day, evening and night hours. Plaintiff's hourly rate of pay was $22.048 during the day, $22.848 during the evening, and $23.048 at night. *Id.*

> FN6. Under the heading "Salary Data" in the "Sal/Hrly" field, an "H" has been entered, presumably to indicate an hourly employee.

*3 Defendant argues that the presence of an hourly rate on plaintiff's compensation records simply reflects payroll management policies. In support of this contention, defendant offers the deposition testimony of Mary Pat Jones, a Mercy Health System compensation manager, and the affidavit of Catherine Byrne, the hospital's vice president of human resources for acute and ambulatory services. According to both individuals, the payroll management software used by defendant requires that an hourly rate of pay be designated for all employees, salaried and non-salaried alike. *See* Def.'s Mem., Ex. N at 39-40; *see also* Def.'s Reply, Ex. E at ¶ 4. Defendant does not address plaintiff's apparent classification as an hourly employee on the employee information report or the differing hourly rates provided for day, evening and night work.

After reviewing the record before me, I find that genuine issues of material fact exist as to whether plaintiff was compensated on a salary basis. A jury could reasonably find for plaintiff on this issue based on the employment records alone. [FN7] Though defendant presents payroll records for a period of more than two years suggesting that plaintiff was not required to "clock-in" or "clock-out," which presumably an hourly employee would be required to do, plaintiff's employee information report arguably designates him as an hourly employee and records various hourly rates of pay. As plaintiff is entitled to have all reasonable inferences drawn in his favor, I cannot say that as a matter of law plaintiff was a salaried employee who falls within the executive, administrative, or professional exemption under the FLSA.

> FN7. Another issue addressed by both parties is the one-day disciplinary suspension without pay imposed upon plaintiff in November 1996. Plaintiff argues that this action shows that he was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00414-SLR    Document 44-3    Filed 05/02/2005    Page 5 of 11

Not Reported in F.Supp.2d                                                                                             Page 4
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
(Cite as: 2000 WL 1130098 (E.D.Pa.))

not compensated on a salary basis since his compensation was in fact "subject to reduction because of variations in the quality or quantity of work performed." *See* 29 C.F.R. § 541.118(a). Defendant contends that in *Auer v. Robbins,* 519 U.S. 452 (1997), the Supreme Court held that such one-time salary deductions will not result in the loss of exempt status under FLSA. 519 U.S. at 463-64. While not dispositive for the purposes of this motion, this issue nevertheless deserves consideration. After reading *Auer,* I find the Court's holding to be more nuanced than-- but ultimately supportive of--defendant's position. Adopting the Secretary of Labor's interpretation of the salary basis test, *Auer* held that exempt status is unavailable "when employees are covered by a policy that permits disciplinary or other deductions in pay." *Id.* at 461. In other words, "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions," then the salary basis test is not met, and employees fall outside the exemption. *Id.* Though defendant is correct that the Court held that a one-time deduction does not establish the existence of a general employment policy which creates a significant likelihood of such deductions, *id.* at 462, that issue is not before me. Here, plaintiff has suffered an actual deduction.

To determine the effect of an actual one-time deduction, the Court again looked to the regulations put forth by the Secretary of Labor. Based on these regulations, the Court held that if deductions inconsistent with the salary basis test--such as a one-time salary deduction--are made in circumstances showing that "there is no intention to pay on a salary basis," then exemption is not applicable. *Id.* at 463, *quoting* 29 C.F.R. § 541.118(a)(6). Conversely, " 'where a deduction not permitted by [the salary basis test] is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." *Auer,* 519 U.S. at 463, *quoting* 29 C.F.R. § 541.118(a)(6). As this corrective provision does not state that reimbursement must be made immediately upon discovery of an improper deduction, the Court reasoned that the employer could still preserve the exemption by complying subsequent to the issuance of it opinion. *Auer,* 519 U.S. at 463-64. This holding would presumably allow a defendant to take the necessary corrective measures after the commencement of a lawsuit and thereby preserve any exemption which would otherwise be applicable. However, as defendant has neither made nor promised to make any reimbursement nor promised to comply in the future, any issue involving this "window of correction" is not yet ripe.

IV.

Defendant next argues that even if plaintiff is found to be a non-exempt employee, the time he spent on-call is not compensable under the FLSA. In *Ingram v. County of Bucks,* 144 F.3d 265 (3d Cir.1998), the Court of Appeals set forth a four factor analysis to be used when determining whether time spent by an employee waiting on-call is compensable under the FLSA. Those four factors are:

> first, whether the employee may carry a beeper or leave home; second, the frequency of calls and the nature of the employer's demands; third, the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and fourth, whether the employee actually engaged in personal activities during on-call time.

*Ingram,* 144 F.3d at 268. If application of these four factors reveals burdensome on-call policies and significant interference with an employee's personal life, time spent on-call is compensable. *Id.*

Plaintiff was allowed to carry a beeper and to leave

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 5
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

his home. [FN8] He was also allowed as Clinical Manager under the hospital's admissions policy to delegate after-hours on-call duties to other ASU counselors. *See* Def.'s Mem., Ex. R, Hospital Policy 76708-03 at 5. Plaintiff testified that he did not attempt to delegate his after-hours, on-call responsibilities because he could not ask his counselors to do this when he believed they would not be compensated for it. *See* Pl.'s Mem., Ex. A; Def.'s Mem., Ex. C at 198-99 ("Harris Dep.").

> FN8. As the beeper's range was limited to a radius of fifty (50) miles, plaintiff would make periodic calls to the ASU when he left that fifty-mile radius. *See* Harris Dep. at 102-03.

*4 The frequency and urgency of the pages and/or calls made to plaintiff is unclear. The ASU apparently had a twenty-four hour admissions policy which was applicable seven days a week. In his affidavit, plaintiff asserts that as a result of that policy he was on-call whenever he left the ASU, 24 hours a day, seven days a week. *See* Pl.'s Mem., Ex. C at ¶ 12 ("Harris Aff."). While on-call, he stated that he received and handled at least fifty calls per week. *Id.* He also testified at his deposition that each page required him to spend from 10 to 40 minutes determining whether a particular patient's insurance would cover admittance to the ASU. Harris Dep. at 112. If he did not respond to these pages within 15 to 20 minutes, plaintiff testified that despite the lack of any stated policy concerning response time complaints would be registered with his supervisors. *Id.* at 50-52.

Defendant contends that plaintiff received only five or six calls per week and supports this contention with the deposition testimony of Susan Budnick, a former night nurse at the ASU who worked the 11:30pm to 8:00am shift, Monday through Friday, from August 10, 1987 through November 7, 1996. *See* Def. Mem., Ex. Q, at 11, 52 ("Budnick Dep."). At her deposition, Ms. Budnick testified that she probably paged plaintiff at least five or six times a week. Budnick Dep. at 53. As plaintiff points out, however, Ms. Budnick also testified that before the rise of managed care in the early 1990s, she had to page plaintiff more frequently -approximately 15 times a week. *Id.* at 54-55. In addition, Ms. Budnick's testimony does not address the number of calls made from 5:00pm to 11:30pm, Monday through Friday, or during the weekend. Finally, plaintiff also points out that Dr. Carmen Irizarry, the director of the department of psychiatry, testified that it was possible that plaintiff could have been called as many as fifty times per week. *See* Pl.'s Mem., Ex. D at 119 ("Irizarry Dep.").

Applying the fact-specific analysis laid out in *Ingram* to this case, I find that summary judgment is inappropriate. In *Ingram* the Court of Appeals found that all four factors weighed in favor of finding the on-call time at issue non-compensable. 144 F.3d at 268-70. That is not the case here. Genuine issues of material fact exist concerning the frequency of calls or pages made to plaintiff and thus the extent to which the on-call policy interfered with his private life. The record before me contains nothing which would preclude a reasonable jury from finding that plaintiff was paged, on average, fifty times a week as he contends. Fifty pages over the course of a week means that plaintiff received, on average, over seven pages a day, each requiring him to spend anywhere from ten to forty minutes of his time.

Such interference with an employee's personal life, if proved, could reasonably be deemed 'significant,' even in light of plaintiff's ability both to carry a beeper and to shift, on occasion, his on-call duties to a designee. [FN9] In *Renfro v. City of Emporia,* 948 F.2d 1529 (10th Cir.1991), a case cited by *Ingram,* the Tenth Circuit held that the on-call time at issue there was compensable because the frequency of calls--three to five times a day--significantly restricted an employee's personal schedule. 948 F.2d at 1537. By contrast, the Court of Appeals noted that the plaintiffs in *Ingram* "were not able to demonstrate that the frequency of calls approached three to five calls to duty per day like *Renfro.*" 144 F.3d at 269. For these reasons, I cannot find that the time plaintiff spent on-call was non-compensable as a matter of law.

> FN9. In addition, the ease with which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 6
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

plaintiff could delegate on-call duties appears to present an issue of material fact. Given plaintiff's testimony that budgetary constraints would have prevented any designee from receiving compensation for such duties, see Harris Dep. at 198-99, and the amount of time such duties allegedly consumed, see id. at 112, a jury could reasonably infer that potential designees would prove unwilling.

V.
*5 Alternatively, defendant argues that plaintiff's claims for on-call compensation are limited by the applicable statutes of limitations. The FLSA provides that an action for overtime compensation must be commenced within two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A separate cause of action accrues each payday when the employer excludes compensation which employees claim. See Biggs v.. Wilson, 1 F.3d 1537, 1540 (9th Cir.1993) (collecting cases). The limitations period under the PMWA and the PWPCL is three years and begins to run from the date delinquent payment was due. See 43 P.S. § 260.9a(g); see also Friedrich v. U.S. Computer Services, Inc., 833 F.Supp. 470, 477 (E.D.Pa.1993) (applying limitations period laid out in 43 P.S. § 260.9a(g) to claim asserted under the PMWA).

Plaintiff contends that since defendant failed to raise the statute of limitations as a defense in its Answer to the First Amended Compliant, that defense has been waived. Rule 8© of the Federal Rules of Civil Procedure lists the statute of limitations as an affirmative defense which must be set forth affirmatively in pleading to a preceding pleading. Fed.R.Civ.P. 8(c). Here, defendant raised the statute of limitations defense in its motion to dismiss the original complaint, but failed to assert that defense again in its answer to the amended complaint.

To find waiver on this record would clearly be inappropriate. Though failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in waiver, it does not always lead to that result. See Charpentier v. Godsil, 937 F.2d 859, 863-64 (3d Cir.1991). Under Rule 15(a) of the Federal Rules of Civil Procedure a responsive pleading may be amended at any time by leave of court to include an affirmative defense, and "leave shall be freely given when justice so requires." Fed.R.Civ .P. 15(a). Moreover, the Court of Appeals has instructed that "a defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in his ability to respond.' " Charpentier, 937 F.2d at 864, quoting Lucas v. United States, 807 F.2d 414, 418 (5th Cir.1985) (citations omitted). In the present case, plaintiff does not and--given that he argued against the limitations defense in his brief in opposition to defendant's motion to dismiss the original complaint-- presumably could not make any claim of surprise or prejudice. Accordingly, I find that defendant has not waived its statute of limitations defense and may amend its answer to assert this affirmative defense.

Alternatively, plaintiff contends that the three-year-limitations period applicable to willful violations should apply to his FLSA claims. The Supreme Court has held that an employer's violation of the FLSA will be deemed willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). It is the plaintiff who bears the burden of proof on this issue. Id. at 135.

*6 Plaintiff, however, fails to point to any evidence which supports the conclusion that defendant acted wilfully when it rejected his claims for on-call compensation. [FN10] In his brief he simply contends that he requested on-call compensation when first given a pager in 1988 and again in 1995 when he obtained a copy of defendant's on-call compensation policy and that his requests were refused. See Pl.'s Mem. at 34. Such allegations are clearly insufficient to withstand defendant's motion. As plaintiff has failed to show that there is a genuine issue of material fact, I find that defendant is entitled to judgment as a matter of law with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 7
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

respect to the issue of wilfulness. Accordingly, the standard, two-year limitations period under the FLSA applies to plaintiff's claims.

> FN10. To the contrary, the only evidence of record shows that hospital personnel made a good faith determination based on a review of plaintiff's position that he was an exempt employee and thus not entitled to compensation for time spent on-call. Mary Pat Joyce, a Mercy Health System compensation manager, testified as follows:
> Q: To the extent that you had to make a determination as to whether or not a position was exempt or non-exempt, to what extent would you base your determination on the title of the position?
> A: The title? It--a title doesn't necessarily determine what someone's status is. You have to look at what their primary function is and what their job duties are as they are outlined in the job description. That's what we used as our basis.
> Q: What other factors did you take into account ... ?
> A: Well again, if it's--some of them you just know are going to be non-exempt positions, secretary, etc. They do not meet any of the exemptions as outlined by the Fair Labor Standards Act. The other ones, if a position did come across as manager, then you would look to see if they met any of the criteria for either of the executive, administrative, or professional exemptions under the [Act].
> Q: What were those standards as best as you can recall? [....]
> A: Well, basically for the executive exemption their primary duty would have to be--I believe it was at least 50-percent of their work had to be related to the management or direction of an entity or a department whatever. They had to have authority in hiring employees, firing, recommendations for promotions, discretionary authority in the department. For health care, I believe that no more than 40-percent of their work could be due to non-exempt--be in non-exempt areas.
> Def.'s Mem., Ex. N at 21-23 ("Joyce Dep.").

Here, plaintiff initiated this action on December 23, 1996 with the filing of a complaint in the United States District Court for the District of New Jersey. [FN11] As a result, plaintiff's claim for overtime compensation under the FLSA (Count I) is limited to a two-year period lasting from December 23, 1994 to December 23, 1996. As I do not know whether plaintiff included his PMWA and PWPCL claim (Counts III and IV) in that complaint or first raised it in his filings in this court, I cannot make a similar determination with respect to this claim and will instruct the parties to brief the issue.

> FN11. This complaint was subsequently dismissed by the United States District Court for the District of New Jersey based on a finding that the court lacked personal jurisdiction over defendant. Following plaintiff's unsuccessful appeal of the dismissal to the Court of Appeals for the Third Circuit, this matter was refiled in the United States District Court for the Eastern District of Pennsylvania on or about November 28, 1997.

VI.

Defendant next argues that it is entitled to judgment as a matter of law on plaintiff's claim for retaliation in violation of § 15(a)(3) of the FLSA, 29 U.S.C.A. § 215(a)(3). In the First Amended Complaint plaintiff asserts that defendant's retaliation consisted of Dr. Irizarry's "less than satisfactory rating" and "critical evaluation" of plaintiff's work performance in an annual review dated June 1, 1995, First Am. Compl. at ¶ 17, and the termination of plaintiff's employment on November 7, 1996 "under the guise of the disbanding of the ASU." *Id.* at ¶ 20. As evidence plaintiff relies on the fact that defendant established a revamped Detox Unit in April of 1997 approximately five months after the closing of the ASU and did not offer him an opportunity to work there. *See id.* at ¶ 20(B); *see also* Harris Dep. at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                           Page 8
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

174-75.

In retaliation claims brought under the FLSA, courts have applied the shifting burdens framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See e.g. Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir.1988). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case. To meet that burden a plaintiff must show: (1) that he engaged in a protected activity; (2) that an adverse employment action was taken against him subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the adverse action. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989). Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* At this point the burden again shifts to the plaintiff to submit evidence from which a fact finder could reasonably disbelieve the employer's articulated reasons or find that such reasons were merely a pretext. *Id.*

*7 Plaintiff offers no evidence--nor apparently makes any allegation--that the "critical evaluation" given to plaintiff by Dr. Irizarry had any materially adverse effect on the terms and conditions of plaintiff's employment. A critical performance rating which does not alter an employee's salary or responsibilities does not constitute an adverse employment action. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300-1301 (3d Cir.1997).

At his deposition plaintiff testified that the closing of the ASU and his resulting layoff from employment were done for the sole purpose of retaliating against him for seeking on-call compensation. Harris Dep. at 174-75. The primary bases for this assertion are the timing of these actions and the fact that plaintiff, unlike other employees at the ASU, was never offered a job at the Detox Center. *Id.* at 176.

With regard to the timing of these actions, plaintiff asserts in the First Amended Complaint that he first broached the subject of on-call compensation with Dr. Irizarry "at about the same time" that she submitted a critical evaluation of him. First Am.Compl. at ¶ 17. That evaluation was dated June 1, 1995. *See* Def.'s Mem ., Ex. T. The ASU was disbanded, and plaintiff was laid off on November 7, 1996. *See* First Am. Compl. at ¶ 20(A). Thus, approximately seventeen (17) months passed from the date upon which plaintiff first requested on-call compensation and his allegedly retaliatory discharge. Such a long interval between the protected activity and the alleged retaliation is clearly insufficient to establish a causal link between the two events. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997) (timing must be "unusually suggestive of retaliatory motive before a causal link will be inferred."). *See also Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir.1992) (holding that a disciplinary letter issued four months after plaintiff's charge of discrimination "does not sufficiently raise the inference that [plaintiff]'s filing was the reason for the adverse action"); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) (holding that plaintiff's discharge four months after filing a discrimination charge did not create an inference of a causal link).

Even if the failure to offer plaintiff a job at the revamped Detox Center were sufficient to establish a causal link, defendant has offered legitimate, non-discriminatory reasons for the closure of the ASU and the decision not to rehire plaintiff. Kathleen Conallen, the hospital's vice president of patient services, testified that the reasons for the ASU's closure were fiscal. Def.'s Mem., Ex. V at 50-52 ("Conallen Dep."). More specifically, the ASU was no longer capable of "paying for itself" because of a significant drop in the patient occupancy rate. *Id.* at 51. Plaintiff himself testified that in the months leading up to the closure of the ASU, the patient occupancy rate was "low" and that he believed that this low rate of occupancy was a result of insurance companies tightening their admissions criteria. *See* Harris Dep. at 415-416. As opposed to the 80 to 85% occupancy rate which plaintiff testified had been normal, *id.* at 416,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 9
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

patient census reports show that from January 1995 through march 1996, the occupancy rate in the ASU dropped to an average of approximately 50%. *See* Def.'s Mem., Ex. H.

*8 With regard to the opening of a revamped Detox Unit in April 1997, Ms. Conallen stated that the decision was made in response to repeated requests from the community. She explained that:

> We have a monthly governance board meeting where we are all in attendance. The board is consist[s] of community members, local political figures. And one of the community activists, Julia Chin, ... would tell us how we were not meeting the community need, that a lot of the neighborhood was floundering with their drug and alcohol problems, that we had made a mistake to close [the ASU,] that we needed to reopen it. [....] We have four core values at [the hospital] that [guide our decision-making.] One of them is community, so we make special efforts to listen to the needs of our community.

Conallen Dep. at 55. To ensure that the new Detox Unit would be fiscally sound, it was designed to be a level 4A unit which would care for medically managed detox patients. *Id.* at 56-57. As such patients are "the sickest type of patient you could have in a detox unit"--needing treatment for significant medical problems as well as substance abuse counseling--the hospital would receive a higher reimbursement for their care than what it had been receiving at the ASU. *Id.*

As for plaintiff not being offered a position at the Detox Center, Ms. Conallen testified that the redesign of the unit resulted in the elimination of plaintiff's position. *Id.* at 76. Specifically, the Department of Psychiatry as a whole was restructured, and the duties and responsibilities of the coordinator / clinical manager for each of the department's subdivisions were consolidated in a new position--administrative director for the department of psychiatry. *Id.* at 76-77. According to Ms. Conallen, plaintiff was not qualified to hold this new position. *Id.* at 77.

Plaintiff offers no evidence suggesting that defendant's asserted reasons for its actions concerning the revamped Detox Unit were either objectively false or merely pretextual. In his affidavit plaintiff admits that "[r]evenue was the driving factor in the unit" but contends that "it was not determined by census or occupancy, but by volume" and that "any decrease in census was not important so long as the volume of patients on the unit remained steady." Harris Aff. at ¶ 14. He does not explain the difference between the terms "volume" and "occupancy" or point to any evidence showing that "volume" did in fact remain steady. To the contrary, the hospital records cited by defendant list the occupancy rate as one of three "volume indicators" and show that by that indicator volume did decrease. *See* Def.'s Mem., Ex. H. Plaintiff also contends in his memorandum that the new administrative director, Curtis Livingston, "was an individual of comparable skill and training to [plaintiff,]" Pl.'s Mem. at 35, but offers no evidentiary support for this contention. Such unsupported allegations are insufficient to defeat defendant's motion.

*9 As I find that no issues of material fact remain with respect to plaintiff's retaliation claim and that defendant is entitled to judgment as a matter of law, I shall grant defendant's motion and enter judgment for defendant on Count II.

VII.

Defendant next argues that it is entitled to summary judgment on plaintiff's unjust enrichment claim. Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written or express contract." *Benefit Trust Life Ins. Co. v. Union Nat. Bank,* 776 F.2d 1174, 1177 (3d Cir.1985), quoting *Schott v. Westinghouse Elec. Corp.,* 259 A.2d 443, 448 (Pa.1969). Here, the relationship between plaintiff and defendant--employee and employer--is based on an express, employment contract. Accordingly, I will grant judgment for defendant and against plaintiff on Count V.

VIII.

Lastly, defendant argues that plaintiff has failed to put forth evidence of bad faith and that it is thus

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 10
2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971
**(Cite as: 2000 WL 1130098 (E.D.Pa.))**

entitled to judgment on plaintiff's claim for breach of an implied covenant of good faith and fair dealing (Count VII). [FN12] After reviewing the record, I agree. In his brief plaintiff simply claims that he requested on-call compensation when first given a pager in 1988 and again in 1995 when he learned of defendant's on-call compensation policy and that his requests were refused. *See* Pl.'s Mem. at 34. He offers no evidence that defendant acted in bad faith. As plaintiff has failed to put forth any evidence in support of this claim, I find that defendant is entitled to judgment with respect to Count VII as well.

> FN12. In ruling on defendant's motion to dismiss, I held that though plaintiff denotes his claim as one for breach of an implied covenant of good faith and fair dealing, I would construe the claim as one for breach of contract. *See* Order of Nov. 20, 1998 at 4. Read in this light, Count VII avers that defendant breached contractual duties to compensate him for services rendered.

An appropriate Order follows.

### ORDER

AND NOW this ___ day of August, 2000, upon consideration of defendant's motion for summary judgment and plaintiff's response thereto, IT IS HEREBY ORDERED that:

 1.) As to Counts I, III, and IV, defendant's motion for summary judgment is DENIED.

 2.) As to Counts II, V, and VII, defendant's motion is GRANTED, and judgment is entered for defendant Mercy Health Corporation and against plaintiff James L. Harris on those claims.

 3.) As to Count VI, defendant's motion is GRANTED AS UNOPPOSED, and judgment is entered for defendant Mercy Health Corporation and against plaintiff James L. Harris on that claim.

IT IS FURTHER ORDERED that in accordance with the applicable statute of limitations, plaintiff's claim for unpaid compensation under the FLSA is limited to the two-year period lasting from December 23, 1994 to December 23, 1996. The parties are instructed to file briefs concerning the issue of when plaintiff first raised his claim for unpaid compensation under the PMWA and the PWPCL so that the effect of the applicable three-year limitations period on such claims can be assessed.

2000 WL 1130098 (E.D.Pa.), 141 Lab.Cas. P 34,146, 6 Wage & Hour Cas.2d (BNA) 971

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.