4



69 Fed.Appx. 633                                                                                                          Page 1

69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.))

(Cite as: 69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.)))

C

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.
Terri JONES, Plaintiff-Appellant,
and
Beatrice Moon, Plaintiff,
v.
VIRGINIA OIL COMPANY, INCORPORATED,
Defendant-Appellee.
No. 02-1631.

Argued June 4, 2003.
Decided July 23, 2003.

Employee sued employer, seeking unpaid overtime wages under the Fair Labor Standards Act (FLSA). The United States District Court for the Western District of Virginia, Norman K. Moon, J., granted the employer's motion for summary judgment, and employee appealed. The Court of Appeals, Per Curiam, held that employee's primary duty consisted of carrying out managerial tasks, and thus, she fell under the FLSA's executive exemption.

Affirmed.

West Headnotes

**Labor and Employment** ⚖2262
231Hk2262 Most Cited Cases

(Formerly 232Ak1203 Labor Relations)
Employee's primary duty consisted of carrying out managerial tasks, and thus, she fell under the executive exemption from the overtime wage protections of the Fair Labor Standards Act (FLSA), even though she spent well over half of her time performing nonmanagerial work; while she was doing line-worker tasks, she also engaged in the supervision of employees, handled customer complaints, dealt with vendors, and completed daily paperwork, and moreover, she acknowledged that she "was in charge of everything," she had the discretion to hire, train, schedule, discipline, and fire employees, and she was making more, or at least the same, in her management positions as nonexempt employees. Fair Labor Standards Act of 1938, §§ 7(a)(1), 13(a)(1), 29 U.S.C.A. §§ 207(a)(1), 213(a)(1); 29 C.F.R. §§ 541.1(f), 541.103.

*634 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, District Judge. (CA-01-88-3).

**ARGUED:** John Edward Davidson, Davidson & Kitzmann, Charlottesville, Virginia, Appellant. David Patrick Corrigan, Harman, Claytor, Corrigan & Wellman, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Jeremy D. Capps, Harman, Claytor, Corrigan & Wellman, P.C., Richmond, Virginia, for Appellee.

Before MICHAEL and MOTZ, Circuit Judges, and BEEZER, Senior Circuit Judge of the United States Court of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by unpublished PER CURIAM opinion.

**OPINION**

PER CURIAM:

**\*\*1** Terri Jones and Beatrice Moon sued Virginia

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 Fed.Appx. 633                                                                                                   Page 2
69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.))
**(Cite as: 69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.)))**

Oil Company, Inc. (Virginia Oil) in the U.S. District Court for the Western District of Virginia seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA). The district court granted Virginia Oil's motion for summary judgment after concluding that Jones and Moon were exempt as "bona fide executives" under the FLSA. Jones and Moon filed this appeal. Moon's claim has been resolved, so only Jones's appeal is before us for decision. For the reasons that follow, we affirm the judgment of the district court in Jones's case.

I.

Because Jones was the nonmovant in the summary judgment proceedings, we construe the facts in the light most favorable to her and draw all justifiable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Jones is a former employee of Virginia Oil. On December 30, 1998, Virginia Oil hired Jones as an assistant manager at its combination Dairy Queen and convenience store (together, "Dairy Queen") in Stanardsville, Virginia, after Virginia Oil bought the store from Jones's prior employer. Jones's initial weekly salary with Virginia Oil, which she *635 had received under the store's previous ownership, was $403.85. After one month, Virginia Oil raised Jones's salary to $495 per week. Jones was transferred briefly to Virginia Oil's Dairy Queen in Ruckersville, Virginia; she returned to the Stanardsville store in May 1999. On July 30, 1999, Jones was promoted to manager and began receiving $550 per week. In January 2000 she received another raise to $585 per week, and she was paid that amount until she left her employment in February 2001. For hourly employees, the average starting pay was $6 per hour. Jones testified that employees often wanted $8 per hour, but she just "couldn't afford to pay them that." The highest paid hourly employee at Jones's store, a "semi in-charge person," earned $8.25 per hour. As part of the company's management team, Jones was eligible for, and received, bonuses based on her store's performance. Jones worked approximately 60 hours per week throughout her employment with Virginia Oil. She was never paid for her overtime.

Jones testified that even after she was promoted to a manager, she spent approximately 75-80 percent of her time carrying out basic line-worker tasks. These tasks included cooking burgers and other fast food, serving ice cream, cleaning the store and its bathrooms, working the cash register, stocking shelves, and sweeping the parking lot. At times Jones was the only person in the store when it opened, "which literally meant [she] would take the customer's order up front, run to the back, and prepare their food, and then take it up front and give it to the customer." In addition to her line-worker tasks, Jones carried out management-related duties. These duties included: the daily cigarette count, the daily sales paperwork, the invoice paperwork, the monthly fast food inventory, the monthly gas and lottery inventory, the weekly schedule and payroll, the weekly truck order, the daily drawer change, and the close out of drawers and the running of reports. She changed gas prices on the computer, greeted vendors, conducted convenience store inventory and ordering, and handled customer complaints. Jones also was responsible for hiring, training, evaluating, and firing employees. She set salaries for the hourly employees and made recommendations to upper management about employee raises. Jones had a key to the store; she also had access to the safe, which was only available to persons in management. James Miller, the director of operations, referred to Jones as a "working manager." Jones referred to herself as the "captain of the ship" at her store. According to Jones, she "was in charge of everything, but [she] also was out there in the daily grind with all of the employees doing everything else. [She] didn't spend too much time on paperwork, it was mainly being out there in the field."

**\*\*2** As a manager, Jones generally worked an opposite shift from an assistant manager and worked alongside four to six regular employees. Tom Singleton, the district manager, would stop by the store one to four times a week to check on things, and he would stay anywhere from five minutes to all day depending on the store's needs. The Stanardsville Dairy Queen was often short-staffed, and the store would not have been able to serve its customers if Jones had not stepped

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 Fed.Appx. 633																					Page 3
69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.))
**(Cite as: 69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.)))**

in to help the regular employees. In fact, Jones's Dairy Queen was so short-staffed that at times Singleton would come to the store to help out with Jones's paperwork. At other times, Jones called upper management to request additional help. Over the course of her employment with Virginia Oil, Jones became increasingly dissatisfied with her position, in large part because she (and some other females in management positions) felt that they were being paid less than *636 men in the same positions. For instance, one male colleague earned $650 per week as an assistant manager and then $675 per week as a manager, nearly $100 more than what Jones earned in those positions. Jones eventually gave notice and left her employment with Virginia Oil on February 28, 2001.

Jones (and Moon) filed a complaint in the district court on August 29, 2001, seeking unpaid overtime wages under FLSA. After discovery, Virginia Oil filed a motion for summary judgment, arguing that the undisputed evidence showed that the plaintiffs were exempt executives under the Act. The district court granted Virginia Oil's motion, and the two plaintiffs appealed. With Moon's case resolved and dismissed with prejudice, we address only Jones's appeal.

II.
A.

We review the district court's grant of summary judgment de novo. Because FLSA is a remedial statute, exemptions from coverage are construed narrowly against those asserting them. *Haines v. S. Retailers, Inc.*, 939 F.Supp. 441, 445 (E.D.Va.1996). An employer bears the burden of establishing by clear and convincing evidence that an employee qualifies for an exemption from FLSA's requirements. *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir.1993).

B.

FLSA requires employers to pay their employees time and a half for work over forty hours a week. 29 U.S.C. § 207(a)(1). But the Act provides exemptions from the overtime requirement for persons "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). The accompanying regulations provide both a "long test" and a "short test" for determining whether an employee falls within the exemption. 29 C.F.R. § 541.1. The parties agree, as do we, that the short test applies in this case. *Id.* § 541.1(f) (short test used when employee is paid more than $250 per week). An employee is exempt under the executive exemption's short test if: (1) the employee's primary duty consists of the management of the enterprise or of a customarily recognized department or subdivision thereof, and (2) the employee customarily and regularly directs the work of two or more other employees. *Id.* § 541.119(a); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 250 (4th Cir.2000).

**3 In this case the parties agree that Jones supervised two or more employees; the only issue on appeal is whether she meets the "primary duty" requirement. The record is clear that Jones performed managerial duties as those duties are defined in 29 C.F.R. § 541.102(b) (exempt work includes interviewing, selecting, training, disciplining, and supervising employees, and setting pay rates and hours of work). The question is whether her *primary* duty as an employee consisted of carrying out these managerial tasks. The regulations accompanying FLSA set forth five factors for determining whether management is an employee's primary duty: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee's relative freedom from supervision; and (5) the relationship between the employee's salary and the wages paid other employees for non-exempt work. 29 C.F.R. § 541.103; *Shockley*, 997 F.2d at 26. The district court concluded that under *637 these five factors, Jones was exempt as a matter of law from FLSA's overtime pay requirements. Our consideration of these factors in light of the undisputed facts leads us to agree with the district court's conclusion.

The first factor of the "primary duty" test--the time spent on managerial duties--is an important one. *See Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

286 n. 2 (4th Cir.1986). The regulations state that as a "rule of thumb," an employee who spends over 50 percent of her time in management has management as her primary duty. 29 C.F.R. § 541.103. *But* "[t]ime alone ... is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." *Id.* Thus, the amount of time spent on nonmanagement tasks is not dispositive, "particularly when non-management duties are performed simultaneous to the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial." *Horne v. Crown Central Petroleum, Inc.,* 775 F.Supp. 189, 190 (D.S.C.1991). In other words, an employee will have management as her primary duty if while engaged in nonexempt work, the employee also "supervises other employees, directs the work of warehouse and delivery men, ... handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require." 29 C.F.R. § 541.103. *See also Smith,* 202 F.3d at 250-51. Indeed, "a number of federal courts have disregarded the time factor of the short test where the manager is in charge of a separate facility such as a convenience store or restaurant chain." *Haines,* 939 F.Supp. at 449 (internal quotation marks and citation omitted). *See, e.g., Murray v. Stuckey's, Inc.,* 939 F.2d 614, 618-20 (8th Cir.1991) (Stuckey's manager met the "primary duty" test even though 65-90 percent of the manager's time was spent on nonmanagerial duties); *Donovan v. Burger King Corp.,* 675 F.2d 516, 521-22 (2d Cir.1982) (relying on § 541.103 example to hold that Burger King assistant managers had the "primary duty" of management despite the fact that over 50 percent of their time was spent on routine matters); *Donovan v. Burger King Corp.,* 672 F.2d 221, 226-27 (1st Cir.1982) (same). *But see Cowan v. Treetop Enters., Inc.,* 120 F.Supp.2d 672, 690-91 (M.D.Tenn.1999) (noting foregoing line of cases but holding nonetheless that unit managers at franchise restaurant were not bona fide executives).

**\*\*4** Viewed in the light most favorable to Jones, the record demonstrates that Jones spent well over half of her time performing nonmanagerial work. In fact, she testified that she spent as much as 75-80 percent of her time performing basic line-worker tasks. However, even assuming that Jones spent the bulk of her time performing such line-worker tasks as cooking, cleaning the store, and manning the cash register, the record reflects that Jones could simultaneously perform many of her management tasks. That is, while Jones was doing line-worker tasks, she also engaged in the supervision of employees, handled customer complaints, dealt with vendors, and completed daily paperwork. Time alone then is not determinative in Jones's case but must be considered in light of the other factors in the "primary duty" test. *See* 29 C.F.R. § 541.103.

The second factor to consider is the relative importance of an employee's managerial tasks to nonmanagerial work. "[C]ourts frame[ ] this query as a measure of the significance of the managerial tasks to the success of the facility." \*638*Haines,* 939 F.Supp. at 450. In *Donovan v. Burger King* the Second Circuit noted that the restaurant in question could not have operated successfully in the absence of the tasks carried out by the assistant managers. In that case, the management tasks included determining the amount of food to be prepared, running cash checks, scheduling and supervising employees, and checking inventory. *Donovan,* 675 F.2d at 521. In this case Jones was responsible for a number of managerial tasks, including hiring, scheduling, training, and disciplining employees, checking inventory and ordering supplies, handling customer complaints, counting daily receipts, and making bank deposits. *See Murray,* 939 F.2d at 618. Jones acknowledged that she was "the captain of the ship" at the store, and that she "was in charge of everything." "The [regular employees] merely rowed the boat; [Jones] charted and steered its course." *Horne,* 775 F.Supp. at 191. *See also, e.g., Murray,* 939 F.2d at 619-20; *Donovan,* 675 F.2d at 521; *Haines,* 939 F.Supp. at 450; *Stricker v. E. Off Road Equip.,* 935 F.Supp. 650, 654 (D.Md.1996) ("Store managers are frequently held to be exempt under the executive category."). The undisputed facts in the record

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 Fed.Appx. 633  Page 5
69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.))
**(Cite as: 69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.)))**

demonstrate that Jones's managerial functions were critical to the success of the Dairy Queen. That is, the Dairy Queen could not have operated successfully unless Jones performed her managerial functions, such as ordering inventory, hiring, training, and scheduling employees, and completing the daily paper-work.

The third and fourth "primary duty" factors--discretionary powers and freedom from supervision--overlap to a certain extent and are easily examined together. *See Haines,* 939 F.Supp. at 450. With regard to these two factors, Jones makes no real argument of her own but asserts that Virginia Oil failed to identify undisputed evidence in the record that would establish by clear and convincing evidence that these factors are met. The exercise of "discretionary powers" is displayed by "the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-to-day performance of his duties." 29 C.F.R. § 541.107(b). Virginia Oil points to uncontradicted evidence that Jones exercised discretionary powers. For example, Jones had the discretion to hire, train, schedule, discipline, and fire employees. And she had the discretion to handle customer complaints. The record also reflects that Jones's discretion in running the day-to-day operations of the store was not constrained by supervisors. The only favorable evidence cited by Jones is that Singleton, her district manager, sometimes relieved her of paperwork so that she could concentrate on line duties. But while Singleton stopped by the store on a regular basis and sometimes helped Jones out with management tasks when the store was understaffed, the record does not reflect that upper management heavily supervised Jones's work. Rather, Jones was usually the senior-most person on the job site. Thus, Jones was "vested with enough discretionary power and freedom from supervision to qualify for the executive exception." *Haines,* 939 F.Supp. at 450. *See also Meyer v. Worsley Cos., Inc.,* 881 F.Supp. 1014, 1020-21 (E.D.N.C.1994); *Horne,* 775 F.Supp. at 191; *cf. Murray,* 939 F.2d at 619 ("Like other courts that have considered the question, we believe that the manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity.").

**\*\*5** Finally, we look at the relationship between Jones's salary and that of a nonexempt worker. Jones argues on appeal that the district court improperly looked at the $6 per hour average wage when calculating **\*639** salary differentials. But Jones herself testified that the average starting salary was $6 per hour and that she could not afford to pay employees more than $8 per hour. The only employee who ever made that much was "a semi in-charge person there for a while" who made $8.25 per hour. Using the $6 per hour figure, if an hourly employee worked 60 hours per week (what Jones typically worked), her pay would be $420 per week; 55 hours worked would equal $375 per week. Jones earned more than these wages throughout her employment with Virginia Oil. In fact, she earned $585 per week--$165 more than an average hourly employee working 20 hours of overtime--during her last year at the Dairy Queen. Even at $8.25 per hour (the highest hourly wage in Jones's store), an employee working 60 hours per week would earn $577.50, still less than what Jones was earning in the last year of her employment. The fact that Jones made less per week than some other managers is not relevant to the salary inquiry; the issue is how her salary compares to that of nonexempt employees, not other managers. *See* 29 C.F.R. § 541.103. The undisputed evidence shows that Jones was making more, or at least the same, in her management positions as nonexempt employees. *See Haines,* 939 F.Supp. at 451; *Horne,* 775 F.Supp. at 191 ("The difference in pay brings this factor in line with finding that [the plaintiff] is within the executive exemption.").

In sum, we conclude that when the five factors relevant to determining whether an employee's primary duty is management are applied to the undisputed facts in this case, it is clear that Jones's primary duty was management. In other words, we conclude that Virginia Oil offers evidence sufficient as a matter of law to prove that Jones was a "bona fide" executive under the FLSA. We note finally

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 Fed.Appx. 633                                                                                       Page 6

69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.))
**(Cite as: 69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.)))**

that, contrary to her argument, Jones does not fall under the "working foreman" exception to the bona fide executive exception. The regulations "distinguish between the bona fide executive and the working foreman or working supervisor who regularly performs production work or other work which is unrelated or only remotely related to his supervisory activities." 29 C.F.R. § 541.115. We have said that where an individual's responsibilities extend "to the evaluation of ... subordinates" and include "the exercise of considerable discretion," the working foreman exception does not apply. *Shockley,* 997 F.2d at 27. *See also West v. Anne Arundel County,* 137 F.3d 752, 763-64 (4th Cir.1998). Because Jones's responsibilities included both the evaluation of subordinates and the exercise of considerable discretion, the working foreman exception is inapplicable in her case.

III.

We affirm the district court's order awarding summary judgment to Virginia Oil on Terri Jones's claim.

**6 *AFFIRMED.*

69 Fed.Appx. 633, 2003 WL 21699882 (4th Cir.(Va.))

**Briefs and Other Related Documents (Back to top)**

• 2002 WL 32727813 (Appellate Brief) Brief of Appellee (Oct. 28, 2002)Original Image of this Document with Appendix (PDF)

• 2002 WL 32727812 (Appellate Brief) Brief of Appellant (Sep. 25, 2002)Original Image of this Document with Appendix (PDF)

• 02-1631 (Docket)
                    (Jun. 12, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I certify that on May 2, 2005, I caused a copy of the **Compendium Of Unreported Cases For The Opening Brief In Support Of Defendants' Motion For Summary Judgment** to be served by first class mail, postage prepaid, upon the following:

> Jeffrey K. Martin, Esquire
> Timothy J. Wilson, Esquire
> 1509 Gilpin Avenue
> Wilmington, DE 19806

> Matthew F. Boyer (Bar No. 2564)
> Connolly Bove Lodge & Hutz LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302)-658-9141

#394417