## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WILLIE DAVIS, JR., *et al.,*     *

                    *

        Plaintiff,     *     Civil Action No. 04-414-KAJ

     v.                *

                    *

MOUNTAIRE FARMS, INC., *et al.* *

                    *

       Defendants.     *

_____/

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Matthew F. Boyer (Del. Bar. No. 2564)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302)-884-6585
*Attorneys for Defendants*
*Mountaire Farms, Inc.*


Arthur M. Brewer
Shawe & Rosenthal, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201
(410)-752-1040
*Attorneys for Defendants*
*Mountaire Farms, Inc.*

DATED:  May 23, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ..................................................................................... 2

STATEMENT OF UNCONTESTED ISSUES ............................................................... 3

    A.  Plaintiffs' Complaint Allegations .......................................................... 3

    B.  The FLSA's Executive Exemption/FLSA Regulations .......................... 5

CONTESTED ISSUES ................................................................................................. 6

    A.  The Authority to Hire, Fire, Promote and Recommend Change of Status ............. 6

    B.  The Caselaw Supports Plaintiffs' Are Covered By the Executive Exemption ........ 8

    C.  Plaintiffs' Retaliation Claims .............................................................. 10

CONCLUSION .......................................................................................................... 12

i

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Baldwin v. Trailer Inns, Inc.,
266 F.3d 1104 (9th Cir. 2001) ............................................................................10

Debrecht v. Osceola County
243 F. Supp. 2d 1364 (M.D. Fla. 2003) ............................................................10

Haines v. Southern Retailers
939 F.Supp. 441 (E.D. Va. 1996) ......................................................................9

Hays v. City of Pauls Valley,
74 F.3d 1002 (10th Cir. 1996) ...........................................................................10

Jalil v. Ardel Corp.,
873 F.2d 701 (3rd Cir. 1989) .............................................................................11

Kastor v. Sam's Wholesale Club
475 U.S. 574 (1986) ........................................................................................9, 10

Martin v. Merrell Dow Pharmaceuticals, Inc.
851 F.2d 703 (3rd Cir. 1988) ..............................................................................7

Moore v. Tractor Supply Co.
2004 WL 3128028 *1, *1-3, *5-9, (S.D. Fla. 2004) ........................................10

Perma Research and Devt. Co. v. Singer Co.
410 F.2d 572 (2d Cir. 1969) ...............................................................................7

Scott Scherer v. Compass Group USA, Inc.
340 F. Supp. 2d 942 (W.D. Wisc. 2004) ............................................................9

## STATUTES

29 U.S.C. §§ 207................................................................................................................1, 5

29 U.S.C. §§ 213.............................................................................................................2, 5, 9

29 U.S.C. §§ 215...................................................................................................................1

## REGULATIONS

29 C.F.R § 541.102.............................................................................................................2

29 C.F.R. §§ 541.207...........................................................................................................9

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed a three count Complaint against Mountaire Farms Inc., Mountaire Farms of Delmarva Inc., and Mountaire Farms of Delaware Inc. (hereinafter collectively referred to as Mountaire) alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207 and 215(a)(2) and the Delaware Wage Payment and Collection Act, 19 Del. C. § 1102(b)(1). The Plaintiffs claim that Mountaire failed to pay them overtime while they were employed as Crew Leaders. Plaintiffs also allege retaliation for filing this lawsuit.

As discussed in Defendant's Motion for Summary Judgment filed on May 3, 2005[1], and as discussed more fully below, Crew Leaders are executive employees within the meaning of the FLSA and the Delaware wage law. Additionally, the Plaintiffs have failed to offer any evidence of retaliation.

Plaintiffs filed a cross-motion for Summary Judgment on May 2, 2005. The Parties agreed, with this Court's approval, that the Parties' Answering Briefs were to be filed, today, on May 23, 2005.

---

[1] In order to avoid duplication and overburdening the record in this case, the Defendant's arguments are set forth more fully in Defendant's Motion for Summary Judgment and are incorporated herein by reference.

## SUMMARY OF ARGUMENT

The undisputed record evidence reflects that Plaintiffs' duties as Crew Leaders meet the criteria for the "executive exemption" under the FLSA. 29 U.S.C. § 213(a) and the Delaware wage payment law.

Plaintiffs, as Crew Leaders, were responsible for the management of their respective Crews. Their primary duties included selecting and training their crews; directing their work; maintaining managerial records which are used to compute the wages of the Crew; appraising the productivity and efficiency of crew members for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary up to and including termination. They also planned the Crew work, determined the techniques to be used, and apportioned the work among the Crew members.

The duties set out above are managerial functions as defined by the Department of Labor interpretative regulations, 29 CFR § 541.102, and applicable case law. Plaintiffs fail to offer any evidence that would, as a matter of law, constitute grounds for a retaliation claim.

Accordingly, and for the reasons set forth below, and for the reasons in Mountaire's Motion for Summary Judgment, Mountaire respectfully requests that Plaintiffs' Motion for Summary Judgment be denied and summary judgment be granted in Defendant's favor.

2

## STATEMENT OF UNCONTESTED ISSUES

**A.    Plaintiffs' Complaint Allegations**

The Complaint alleges in paragraph 23 that Mountaire required the Crew Leaders to "submit a daily time sheet broken down for each day of the week." All of the Plaintiffs testified, however, that they were required to submit time sheets only for their Crew, not their own time. Briddell Depo. B041; Davis Depo. B063; Gibbs Depo. B027, B028-B029. The Plaintiffs' Motion for Summary Judgment does not dispute or attempt to counter this testimony.

In paragraph 26 of Plaintiffs' Complaint the Plaintiffs alleged that Mountaire took a deduction from Plaintiffs' pay for:

> ...partial day deductions, in that any partial time taken off from normal working hours by any of Plaintiffs, other than established work holidays, is/was deducted from their pay, charged to their vacation or sick time or made up at times other than normal work hours.

Each Plaintiff denied that any deductions for partial day absences were made from their salaries. Garrison Depo. B017-B018; Walters Depo. B056-B057; Briddell Depo. B042; Davis Depo. B064; Gibbs Depo. B030-B031. Plaintiff Garrison, in fact, testified that he received his full salary when he took a half day off for a doctor's appointment. Garrison Depo. B017-B018. This sworn testimony of the Plaintiffs was not addressed in their Motion for Summary Judgment.

Paragraph 27 of the Complaint alleges that Crew Leaders received a reduction in salary which was based on the quantity of the work they performed. This claim was not substantiated by the Plaintiffs' deposition testimony nor was it addressed in the Plaintiffs' Motion for Summary Judgment. Walters Depo. B057; Briddell Depo. B043; Gibbs Depo. B031.

3

Paragraphs 35 and 26 of Plaintiffs' Complaint allege that Plaintiffs were subjected to "verbal harassment," were "issued final warnings," were "threatened," "coerced," "intimidated," and "cornered by various management personnel and questioned individually regarding their discussion with counsel and the nature of this action." The deposition testimony of Plaintiffs does not support these allegations. Mr. Walters, Mr. Gibbs and Mr. Briddell testified, in fact, that they were not harassed, cornered, or threatened by management. Walters Depo. B058; Briddell Depo. B044-B045; Gibbs Depo. B032-B036.

The claims set out above, with the exception of the final warning, were not mentioned in the Plaintiffs' Motion for Summary Judgment. Lastly, Plaintiffs allege in paragraph 27 of their Complaint that someone from Mountaire management spied on them while they met with counsel at Doyles' restaurant on a Saturday morning. Mr. Garrison testified that he recognized the gray vehicle of Mountaire Upper Management driving in and then out of the restaurant parking lot and that Mr. Owen, Human Resources Director, was driving. Garrison Depo. B019-B020; Walters Depo. B059. Mr. Briddell and Mr. Davis testified that the vehicle was a tan Crown Victoria and that they knew it was a Mountaire car but could not see the person driving the car. Briddell Depo. B046; Davis Depo. B065. Mr. Lynch testified that he had no knowledge about the Crew Leaders meeting their counsel at the restaurant and it was not his vehicle circling the parking lot. Lynch Depo. B067-B068.

When asked what Mr. Garrison thought the person driving the car had to do with this lawsuit he responded, "I don't know, good question." Garrison Depo. B019. Mr. Walters testified that he did not feel harassed by this person driving through the parking

lot. Walters Depo. B061. Mr. Walters did not see who was driving, but said that it was

not Mr. Owen. Walters Depo. B059-B060.

The allegations in paragraph 37 were not discussed in the Plaintiffs Motion.

The Plaintiffs' failure to address the allegations contained in the various

paragraphs of the Complaint set out above should, we respectfully submit, be viewed by

this Court as concession that there is no evidence to support these claims.

**B.      The FLSA's Executive Exemption/FLSA Regulations**

The FLSA prohibits an employer from employing any worker "for a workweek

longer than forty hours unless such employee receives compensation . . . at a rate not less

than one and one-half times the [worker's] regular rate" for the excess hours. 29 U.S.C.

§207(a)(1). "[A]ny employee employed in a bona fide executive . . . capacity . . ." is,

however, exempt from the time and one half provision. 29 U.S.C. §213(a)(1).

FLSA Regulations state that:

(a)     The term "employee employed in a bona fide executive capacity" in
        section 13(a)(1) of the Act shall mean any employee:
    (1)     Compensated on a salary basis at a rate of not less than $455 per
            week . . . exclusive of board, lodging or other facilities;
    (2)     Whose primary duty is management of the enterprise in which the
            employee is employed or of a customarily recognized department
            or subdivision thereof;
    (3)     Who customarily and regularly directs the work of two or more
            other employees; and
    (4)     Who has the authority to hire or fire other employees or whose
            suggestions and recommendations as to the hiring, firing,
            advancement, promotion or any other change of status of other
            employees are given particular weight.

The Plaintiffs do not dispute that they are compensated on a salary basis of not

less than $455 per week. They also do not contend that their salary is equal to or less

than that of the wages received by the Catchers. In fact, there is a significant disparity

between the salary received by the Crew Leaders and the wages paid to the Catchers.
Crew Leaders received an average annual salary of $41,636 in 2004 and were eligible for
performance bonuses. The 2004 annual wages received by the Catchers total $29,161.70,
on average. Thus, Plaintiffs concede that Section (a)(1) of the regulation is satisfied.[2]

The Plaintiffs concede that the requirements of Sections (a)(2) and (3) are met.
Plaintiffs Motion for Summary Judgment p. 11.

**CONTESTED ISSUES**

**A.    The Authority to Hire, Fire, Promote and Recommend Change of Status**

The sole thesis for the Plaintiffs' contention that are Crew Leaders are non-
exempt is their lack of authority to hire/fire, etc., as required by Section (a)(4) of the
Department of Labor's regulations. The Plaintiffs' position, as we show below, and as
set out more fully in Defendant's Motion for Summary Judgment, is without a basis in
fact or law.

The Defendant does not recruit catchers. Lynch Depo. B070-B071. It is the
responsibility of the Crew Leaders to staff and maintain full crews. Garrison Depo. B014.
This includes recruiting Catchers and recommending that they be hired by the Company.
Garrison Depo. B014-B016; Lynch Depo. B069; Briddell Depo. B038. Messrs. Lynch
and Nuse are not involved with the selection and/or hiring of Catchers. Lynch Depo.
B072.

Despite the attempt by the Plaintiffs to downplay and minimize their role in hiring
Catchers, the record is clear that they have effectively recommended the hiring of
Catchers. Plaintiff Garrison testified in his deposition that he recommended three (3)

---

[2] The Plaintiffs Motion for Summary Judgment does not discuss the salary requirement.

6

different people for hire.  Garrison Depo. B016.  Mr. Garrison described the process as

follows:

> Q.    How did you go about making that recommendation to Mr.
>        Lynch?
>
> A.    I just asked him that I probably needed another man, and I like
>        you look to hire this guy.
>
> Q.    Okay.
>
> A.    And he asked me just hiring him in, <u>get him signed</u> up.

Garrison Depo. B016.  (Emphasis added)

Plaintiff Briddell testified that he selected at least four (4) catchers to work on his crew.

Messrs. Bagwell, Parnell, Taylor, and Howell.  Briddell Depo. B038-B039.  Larry Gibbs,

a named Plaintiff, went to work for Mountaire and brought his entire crew of Catchers to

the Company.  Gibbs Depo. B024.  He also effectively recommended that the Company

hire Arthur Belfeld, and possibly two(2) or three (3) others.  Gibbs Depo. B025-B026.

The affidavits submitted by the Plaintiffs as part of their Motion for Summary

Judgment do not square with their sworn deposition testimony.  They should not, we

submit, be afforded any weight by the Court.    As the Third Circuit recognized, this

disregard is permissible where there are flat contradictions of previous sworn testimony

with no explanation for the contradictions.  *See Martin v. Merrell Dow Pharmaceuticals,*

*Inc.*, 851 F.2d 703 (3rd Cir. 1988).  The Third Circuit stated:

> If a party who has been examined at length on deposition
> could raise an issue of fact simply by submitting an
> affidavit contradicting his own prior testimony, this would
> greatly diminish the utility of summary judgment as a
> procedure for screening out sham issues of fact.

*Id.* (*quoting Perma Research and Devt. Co. v. Singer Co.* 410 F.2d 572 (2d Cir. 1969).

The Third Circuit noted that all other Circuit courts considering the issue reached the

7

same conclusion. In the present case, there is no way to reconcile the deposition testimony of the Plaintiffs and their affidavits. Thus, this Court may disregard Plaintiff's affidavit for purposes of determining whether there is a material dispute of fact.

The Plaintiffs' Motion should also fail because they consciously omitted any discussion of the supervisors' authority which they effectively exercised. For example, the record reveals that Plaintiffs Garrison and Briddell each had effectively recommended the termination of a Catcher on their crews. Lynch Depo. B073-B076; Briddell Depo. B040. Plaintiff Gibbs recommended that Ray Walters be promoted to a forklift driver. Gibbs Depo. B022-B023. The Plaintiffs' Motion for Summary Judgment makes no mention of these facts.

Also conspicuous by its absence is any reference or discussion of the disciplinary action imposed by the Crew Leaders. Garrison Depo. Exh. 5 - B001-B006; Walters Depo. B051-B055, Walters Depo. Exh. 2 - B007-B012. Clearly, we submit, the imposition of disciplinary action ". . .change[s] [the] status of other employees. . . ."

Thus, the facts show that the requirements of Section (a)(4) have been met.

**B.    The Caselaw Supports Plaintiffs' Are Covered By the Executive Exemption.**

It is noteworthy that Plaintiffs fail to cite a single case in support of their position that Plaintiffs are not covered by the Executive exemption. This is particularly telling when contrasted with the numerous cases cited by the Defendant in its Motion for Summary Judgment. Defendant will not reargue those cases here, but incorporate them by reference.

Additionally, Plaintiffs argue that Plaintiffs must have the authority to hire or fire. That simply is not the standard. The standard requires that the Crew Leaders'

8

"suggestions and recommendations as to the hiring, firing...are given particular weight." 29 U.S.C. § 213(a)(1)(a)(4). The caselaw makes clear that discretion does not require final decision making authority. "[T]he term 'discretion and independent judgment' ... does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. " 29 C.F.R. § 541.207(e). *Scott Scherer v. Compass Group USA, Inc.*, 340 F. Supp. 2d 942 (W.D. Wisc. 2004).

In *Haines v. Southern Retailers,* 939 F.Supp. 441 (E.D. Va. 1996), the court rejected Haines assertion that she lacked discretionary power and relative freedom from supervision because "she was closely supervised...could not hire or fire without outside management's approval, she performed many of her duties pursuant to strict guidelines...she was not permitted to discipline employees without the approval of her supervisor, and she was subject to rigid supervision and regular visits by upper management." Id. at 879.

The court in *Kastor v. Sam's Wholesale Club,* 475 U.S. 574 (1986), was equally unimpressed with plaintiff's contention he lacked the requisite discretion.

> Kaster contends that he could not schedule employees to work more than 37.5 hours per week without first receiving supervisor approval; that he could not independently hire or fire employees; that in maintaining the department's inventory, he simply ordered items in predetermined quantities according to the Crew's specifications; that he did not have the authority to increase an employee's rate of pay; that he performed employee evaluations based on the company's defined standards and policies; and that he did not have independent authority to purchase equipment for the bakery or to rearrange the bakery department.
>
> Plaintiff seems to be arguing that because he did not have final decision-making or supervisory authority in the

operation of the bakery department, he does not qualify for executive exemption. The court finds this argument unavailing. Kastor, 131 F. Supp. at 867.

Where an employee's suggestions and recommendations as to the hiring and firing and other major decisions are given particular weight, they constitute management duties. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001) (Court found that plaintiffs were executive employees relying in part on the fact that, in one instance, they recommended firing an assistant manager); *Hays v. City of Pauls Valley*, 74 F.3d 1002,1007 (10th Cir. 1996) (employee qualified for the executive exemption where he kept financial records, made recommendations on hiring and firing, and was responsible for the general operation); *Moore v. Tractor Supply Co.*, 2004 WL 3128028 *1, *1-3, *5-9, (S.D. Fla. 2004) (same); *Debrecht v. Osceola County*, 243 F. Supp. 2d 1364 (M.D. Fla. 2003) (Battalion chiefs who gave input to Fire Chiefs regarding employee promotions had management as their primary duty). In this case, to the extent any of the Crew Leaders consulted with Mr. Lynch or Human Resources regarding the hiring of their Crew, it is undisputed that their suggestions and recommendations were given particular weight, if not generally accepted, therefore, displacing any doubt that they exercised the requisite discretionary powers.

### C.    Plaintiffs' Retaliation Claims

The Plaintiffs' Motion for Summary Judgment states that the Crew Leaders were providing a thirty (30) minute non-paid lunch break to their crews. Plaintiffs' Motion at p. 16. If this is the case, then, as Mr. Owen testified in his deposition, ". . .they didn't have a thing to worry about." Owen Depo. B049

The record shows that Mountaire was a defendant in a collective action involving overtime pay for Catchers in 2002. The case was settled and all eight (8) of the Crew Leaders (only three (3) of whom are Plaintiffs) were instructed to provide their Crews with a thirty (30) minute unpaid lunch break. Owen Depo. B048. The three (3) Plaintiffs employed as Crew Leaders at the time that the Final Warning was issued acknowledged that they were aware of the Catchers lawsuit and admitted that the purpose of the Final Warning was to make sure that all Crew Leaders were giving their crews their lunch break. These facts, in addition to those set out in the record, demonstrate that the Plaintiffs have failed to meet the hurdles articulated by the Third Circuit in *Jalil v. Ardel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989).

## CONCLUSION

The Defendant respectfully requests that its Motion for Summary Judgment be granted in full and that the Plaintiffs' Motion for Summary Judgment be denied in its entirety.

/s/

Matthew F. Boyer (Del. Bar No. 2564)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1000 Orange Street
P. O. Box 2207
Wilmington, DE  19899
(302) 884-6585

Arthur M. Brewer (admitted *Pro Hac Vice*)
Laura A. Pierson Scheinberg
SHAWE & ROSENTHAL, LLP
Sun Life Building, 11th Floor
20 S. Charles Street
Baltimore, MD  21201
Telephone: (410) 752-1040
Facsimile: (410) 752-8861

12

Westlaw.

352 F.Supp.2d 1268                                                                                            Page 1

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

C

**Motions, Pleadings and Filings**

United States District Court,
S.D. Florida.
Brandon P. MOORE, on behalf of Himself and all
others similarly situated,
Plaintiff,
v.
TRACTOR SUPPLY COMPANY, Defendant.
**No. 03-81070-CIV.**

Dec. 10, 2004.

**Background:** Former store manager brought action under Fair Labor Standards Act (FLSA) to recover unpaid overtime. Employer moved for summary judgment.

**Holding:** The District Court, Ryskamp, J., held that manager was exempt from FLSA's overtime provision.
Motion granted.

West Headnotes

**[1] Labor and Employment** ☞2251
231Hk2251 Most Cited Cases

**[1] Labor and Employment** ☞2385(6)
231Hk2385(6) Most Cited Cases
Exemptions to Fair Labor Standards Act (FLSA) are construed narrowly, and employer bears burden of demonstrating that employee is exempt. Fair Labor Standards Act of 1938, § 13, as amended, 29 U.S.C.A. § 213.

**[2] Labor and Employment** ☞2262
231Hk2262 Most Cited Cases
Store manager's primary duty was management, and

thus he was exempt from FLSA's overtime provision, even if he spent 95 percent of his time performing non-exempt tasks, worked under close supervision of his district manager, and was paid at hourly rate equal to or less than rate paid non-exempt employees, where manager was responsible for ensuring that store was presentable and in good condition, manager's annual bonus depended on store's performance, manager supervised six or seven employees, manager delegated managerial functions to hourly employees, manager had authority to hire, fire, and set wages, district managers visited store approximately once per week for "walk thru," and manager made nearly twice as much as hourly employees. Fair Labor Standards Act of 1938, §§ 7(a), 13(a)(1), 29 U.S.C.A. §§ 207(a), 213(a)(1); 29 C.F.R. §§ 541.102(b), 541.103.

**[3] Federal Civil Procedure** ☞2539
170Ak2539 Most Cited Cases
Party opposing summary judgment may not substitute affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary judgment. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[4] Labor and Employment** ☞2262
231Hk2262 Most Cited Cases
Manager's delegation of managerial functions to non-exempt does not render manager's duties any less managerial, for purposes of determining manager's non-exempt status under Fair Labor Standards Act (FLSA). Fair Labor Standards Act of 1938, § 13, as amended, 29 U.S.C.A. § 213.
***1269** Joe Bilotta, Vassallo & Bilotta, Palm Springs, FL, for plaintiff.

Patrick G. DeBlasio, III, Nikki M. Setnor, Jackson Lewis LLP, Miami, FL, for defendant.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                                                    Page 2

· · 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour. Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

### *ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

RYSKAMP, District Judge.

**\*1** THIS CAUSE comes before the Court pursuant to Defendant Tractor Supply Company's ("Defendant") Motion for Summary Judgment, filed October 8, 2004. Plaintiff Brandon P. Moore ("Plaintiff") responded on October 21, 2004. Defendant replied on October 29, 2004. The Court heard oral argument on this motion on December 7, 2004. This motion is ripe for adjudication.

Plaintiff worked as a store manager for Defendant's Sebring, Florida store from May 2002 through February 18, 2003. Defendant is a retailer selling farm and ranch-related equipment and products to the general public. (Pl.Depo., p. 36.) Defendant operates a number of stores in Florida, including stores in Sebring and Okeechobee. *Id.,* at 37. Each store has a manager and team members who report to the store manager. *Id.,* at 64-65. Managers report to a district manager, who, in turn, reports to a regional manager. *Id.,* at 59.

Plaintiff began his employment with Defendant in late July 2001 as a manager trainee. *Id.,* at 37. The training program required trainees to demonstrate competence in handling every aspect of a store's operations. *Id.,* at 38-39. [FN1] Plaintiff became manager of Defendant's Sebring store in May of 2002. When Plaintiff became a store manager, his salary increased to $35,500 per year, or $682.69 per week, and he was converted to exempt classification for purposes of Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207(a) overtime provisions. *Id.,* at 72, 210-11. Plaintiff understood that he would receive the same salary every week regardless of the quality of his work or the number of hours worked in a given workweek. *Id.,* at 211. Plaintiff was also eligible for a year-end bonus based on the store's sales. *Id.,* at 211-12. Plaintiff supervised from six to seven team members at any given time in the Sebring store, all of whom were paid an hourly rate of no more than $9.00 per hour. None of the team members were eligible for the year-end bonus. *Id.,*

at 213.

> FN1. Manager trainees are not subject to the Fair Labor Standards Act and are paid overtime wages. Plaintiff does not dispute that he was paid for all overtime hours he worked during his tenure as a trainee *Id.,* at 209.

As store manager, Plaintiff was responsible for managing the store's team members and overall operations. *Id.,* at 47. Plaintiff was responsible for developing the "right team" and ensuring that team members received proper training. *Id.,* at 86-87. Plaintiff admitted in his deposition that he routinely performed managerial duties including, but not limited to, the following:
• Performing 90 day and annual evaluations of his team members and resolving team member disputes and grievances at his store. Id., at 90, 94, 113; *Id.* Ex. 6 (90 day evaluation form Plaintiff completed).
• Coaching, counseling and/or disciplining team members in his store. Id., at 101-03; *Id.* Ex. 7 (corrective action forms reflecting Plaintiff's discipline of two team members).
**\*1270** • Partnering with Human Resources in terminating team members. *Id.,* at 104-10; Id., at Ex. 8 (forms reflecting Plaintiff's termination of three team members). [FN2]

> FN2. Plaintiff attempts to downplay his role in terminations because, on one occasion, Human Resources requested that he obtain their input prior to effecting the termination. Prior review of termination decisions by Human Resources, even if true, does nothing to diminish Plaintiff's managerial role in making termination decisions.

**\*\*2** • Creating and maintaining a harassment-free work environment and continually monitoring the work floor to ensure that it remained harassment-free. *Id.,* at 110-11. [FN3]

> FN3. Plaintiff asserts that the phone

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                                                    Page 3

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

number for Defendant's Human Resources office was posted in the store and that employees were to call the number with questions. The posting of this phone number does not change the fact that Plaintiff was responsible for resolving in-store conflict among his team members.

• Performing the initial administration of workers' compensation claims arising out of his store. *Id.,* at 111-13.
• Ensuring that new hires were trained, even if, as Plaintiff now claims, the training consisted of video demonstrations and training manuals. *Id.,* at 81- 82, 86-87, 97.
• Making recommendations for temporary transfers of employees to other stores for additional training. *Id.,* at 97.
• Ensuring that the store and its team members operated according to company standards and policies. *Id.,* at 47-48.
• Addressing issues such as team member compensation, scheduling and vacations, even if, as Plaintiff now claims, store associates also performed those functions. *Id.,* at 185.
• Conducting team meetings, even though less frequently than Defendant prescribed. *Id.,* at 175.
• Managing payroll and other expenses for the store. *Id.,* at 130, 162.
• Performing other managerial duties such as monitoring and containing shrinkage. [FN4] opening and closing the store, making bank deposits, investigating suspicious activity reflected on sales reports and being a contact person for team members who called in sick to work, even if, as Plaintiff now claims, store associates also performed several of these functions. *Id.,* at 47, 123, 126-27, 150, 151, 155, 159, 162, 166, 168.

FN4. Plaintiff's performance reviews indicate that he was evaluated, in part, on the financial health of his store, including sales, gross margin, shrinkage, total expenses, operating profit and turnover. *Id.,* at Ex. 9 (Plaintiff's mid-year performance review). Plaintiff was also

evaluated on his professional skills, including integrity/ethics, teamwork and communication with team members. *Id.*

Plaintiff had a private office in the Sebring store and a business card reflecting his position as store manager. *Id.,* at 133, 140. Plaintiff also was invited to and attended an annual weeklong management meeting in Tennessee for managers and executives to discuss operational and management issues. *Id.,* at 180-81. Plaintiff was expected to and routinely participated in teleconferences with other managers in the district and their district manager to discuss similar issues. *Id.,* at 177.

In addition to managing the Sebring store, Plaintiff also managed the Okeechobee store from November 2002 through January 2003 due to the termination of store manager William Purcell ("Purcell"). *Id.,* at 183. Plaintiff performed the same functions at the Okeechobee store that he *1271 performed at the Sebring store. *Id.,* at 182-85.

As store manager, Plaintiff reported to the district manager for that area, Alan Blackard ("Blackard"). Blackard managed Plaintiff until August of 2002, when he was terminated for reasons unrelated to this action. (Blackard Depo., p. 4, 58-59.) Plaintiff then reported to C.R. Gaines. (Gaines Depo., p. 7-8.) Plaintiff's regional manager was Charlie Chacon ("Chacon") (Chacon Depo., p. 6.) Neither Blackard nor Gaines worked out of a specific store, but instead spent most of their time traveling to the stores in their district. District managers visited the Sebring store approximately every seven to ten days for a "walk-thru." (Pl.Depo., p. 56, 134.) They would assess the condition of the store to determine whether it met company standards and provide feedback in that regard to Plaintiff either in person, via telephone or via email. *Id.,* at 134. Plaintiff was "responsible for taking care of that store one hundred percent," however. (Chacon Depo., p. 22.)

**3 Plaintiff resigned on February 18, 2003, after it was discovered that he falsified employment-related

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                                  Page 4

· · 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

test scores of a job applicant. (Pl. Depo., p. 22, Exs. 1 and 12.) Plaintiff now seeks to recover unpaid overtime pursuant to the FLSA on the grounds that he spent 95 percent of his time performing non-managerial functions.

## II. *LEGAL STANDARD*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant must inform the Court of the grounds for the motion, after which the burden shifts to the non-movant to demonstrate why summary judgment is not warranted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party has an affirmative burden to proffer evidence for each of his claims such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). The non-movant "may not rest upon the mere allegations or denials" of its pleading. Fed.R.Civ.P. 56(e).

## I. *BACKGROUND*

In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the non-movant fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," the Court must enter summary judgment for the moving party. *Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1294 (11th Cir.1998).

## III. *DISCUSSION*
### A. Legal Standard for FLSA Executive Exemption

[1] The FLSA provides that
[n]o employer shall employ any of his employees

who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee **\*1272** receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
29 U.S.C. § 207(a). The FLSA exempts from this requirement employees employed in a bona fide "executive" or "administrative" capacity. 29 U.S.C. § 213(a)(1); *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 965 (11th Cir.1997). Exemptions to the FLSA are construed narrowly, and the employer bears the burden of demonstrating that an employee is exempt. *Id. See also Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) (employer must prove application of FLSA exemption).

To determine whether an employee is a bona fide executive, an employer must establish the exemption under one of two tests. If the employee earns at least $250.00 per week, the employer must satisfy a two-prong test. Pursuant to this test,
**\*\*4** an employee who is compensated on a salary basis of not less than $250 per week...and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.
In other words, Plaintiff is exempt from the FLSA if (1) his "primary duty" is management, and (2) he "regularly directs the work of two or more other employees."

The short test controls because it is undisputed that Plaintiff earned a yearly salary of $35,500.00, or $682.69 per week. Additionally, there is no dispute that Plaintiff "regularly and customarily directed the work of at least two employees." (Pl. Depo., p. 62, 64-65.) Thus, the central question regarding application of the executive exemption is whether Plaintiff's "primary duty" was "management."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

The regulations further define the terms "primary duty" and "management." "Management" involves [i]nterviewing, selecting, and training of employees, setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property. 29 C.F.R. § 541.102. 29 C.F.R. § 541.103 sets forth the standard for determining whether "management" is an employee's "primary duty":

[A] determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary *1273 case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors include the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercised discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty. [FN5]

> FN5. Effective August 23, 2004, the primary duty regulation was slightly modified and is now found at 29, C.F.R. § 541.700. Its application is prospective only.

**5 Defendant argues that it is entitled to summary judgment because Plaintiff's duties as store manager rendered him exempt from FLSA protections. Plaintiff asserts that Defendant has failed to meet its burden of proving that his primary duty was management for three reasons. First, Plaintiff claims that, although he was the store manager, he spent 95 percent of his time on non-exempt duties and shared managerial duties with several associates. Second, Plaintiff claims that he lacked power to exercise his discretion regarding store management decisions and always worked under the close supervision of his district manager. Finally, Plaintiff argues that, when his $35,500.00 yearly salary is reduced to an hourly rate, he often made less than $9.00 per hour, a rate equal to or less than the wages paid non-exempt employees.

**B. 50 Percent Test**

Plaintiff argues that management was not his primary duty because he spent 95 percent of his time performing non-exempt tasks. These tasks included waiting on and selling products to customers; loading customer vehicles with purchases; affixing price tags; receiving and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                    Page 6

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

unloading new products from the delivery truck; restocking merchandise on the sales floor; moving trailers, hitch equipment and cattle feeders; moving freight to the sales floor; moving items around the store; rearranging items on the side and front lots; cleaning the floor, shelves, bathrooms and yards; resetting feed, assembling log splitters, riders, go-carts and drill presses; rotating batteries and holding car wash and pressure washer demonstrations to generate sales.

Defendant does not dispute that Plaintiff spent 95 percent of his time performing **\*1274** non-exempt tasks. Rather, Defendant stresses that time spent performing non-exempt tasks does not necessarily determine whether an employee is exempt. While the regulations provide that an employee who spends more than 50 percent of his time performing managerial duties has management as his primary duty, this measure is only "a good rule of thumb," and an employee who spends less than half of his time on managerial duties may still be classified as a "manager." 29 C.F.R. § 541.103. For instance, in *Donovan v. Burger King Corp.,* 672 F.2d 221 (1st Cir.1982) ("*Burger King I*") and *Donovan v. Burger King Corp.,* 675 F.2d 516 (2d Cir.1982) (" *Burger King II*"), the First and Second Circuits ruled that assistant managers of Burger King restaurants satisfied the short test even though they spent more than 50 percent of their time performing non-exempt tasks such as preparing and serving food. *Burger King I,* 672 F.2d at 226; *Burger King II,* 675 F.2d at 520. The assistant managers supervised other employees, scheduled employees, assigned work, oversaw production quality, spoke with customers, trained employees, determined the quantity of food to be produced at any given time, and performed various recordkeeping, inventory and cash reconciliation duties. *Burger King I,* 672 F.2d at 223; *Burger King II,* 675 F.2d at 521. Thus, even though the assistant managers spent the majority of their time performing non-exempt work, management was still their primary duty because it was a significant part of their job. *Burger King I,* 672 F.2d at 226-27; *Burger King II,* 675 F.2d at 520-21. "[O]ne can still be 'managing' if one is in charge, even while physically doing something

else[.]" *Burger King I,* 672 F.2d at 226. *See also Debrecht, Bell & Jackson v. Osceola County,* 243 F.Supp.2d 1364, 1370 n. 11, 1370-72 (M.D.Fla.2003) (battalion chiefs of emergency services department who supervised day-to-day operations of personnel, prepared performance evaluations and made strategic decisions regarding allocation of personnel during emergency operations satisfied short test despite claim that they spent 85 percent of their time performing non-exempt tasks); *Haines v. Southern Retailers, Inc.,* 939 F.Supp. 441, 450 (E.D.Va.1996) (store manager exempt despite spending majority of her time on non-exempt tasks because managerial tasks were so important that she "received praise or blame over whatever happened at the store, good or bad."); *Thomas v. Jones Restaurants, Inc.,* 64 F.Supp.2d 1205, 1212 (N.D.Ala.1999) (fast food restaurant manager exempt although she often performed non-exempt work when crew was behind, where evidence showed management was her primary duty); *Jones v. Virginia Oil Co., Inc.,* 69 Fed.Appx. 633, 635 (4th Cir.2003) (manager of combination fast food and convenience store exempt despite claim of spending 75--80 percent of her time performing non-exempt work where shown that management was her primary duty); *Baldwin v. Trailer Inns, Inc.,* 266 F.3d 1104, 1113, 1115-16 (9th Cir.2001) (managers of recreational vehicle park responsible for "making the relatively important day-to-day decisions of the facility and providing for the safety of those in the property" had management as their most important duty despite claim of spending 90 percent of their time performing non-exempt tasks); *Murray v. Stuckey's,* 939 F.2d 614, 618-20 (8th Cir.1991) (manager of combination gas station and convenience store met the primary duty test despite performing non-exempt tasks 65--90 percent of the time); **\*1275***Kastor v. Sam's Wholesale Club,* 131 F.Supp.2d 862, 866-67 (N.D.Tex.2001) (manager of bakery department who claimed to spend 90 percent of his time performing non-managerial tasks not entitled to overtime pay because "purpose" of his employment was management); *Meyer v. Worsley Cos., Inc.,* 881 F.Supp. 1014, 1019 (E.D.N.C.1994) (manager of Scotchman store who

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                                              Page 7

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

claimed he spent less than 50 percent of his time on management duties exempt from FLSA because employer considered him to be "responsible" for the store and "in charge" of its daily operations). Since Plaintiff spent less than 50 percent of his time performing managerial duties, it is necessary to examine the "other pertinent factors" listed in 29 C.F.R. § 541.103 to determine whether Defendant has carried its burden of demonstrating that Plaintiff is an exempt employee.

**C. Relative Importance of Managerial Duties**

**\*\*6** [2] Plaintiff's own deposition testimony demonstrates the importance of his role as store manager. Plaintiff does not dispute that he was ultimately accountable for the store's success or failure. (Pl. Depo., p. 47- 48.) Plaintiff alone was responsible for increasing margins and profits and for devising ways to increase foot traffic and, in turn, sales. *Id.,* at 47, 131-33, 150, 155, 159, 162. The better the store performed, the higher Plaintiff's year-end bonus. *Id.,* at 213; *Id.,* at Ex. 9. The condition of the store prior to Plaintiff's coming on as manager underscores the importance of the managerial role. Plaintiff testified that, when he began work as manager, "[n]othing had been put on the floor." The store "was dirty," and the "side lot was stacked to the top of the chain-link--I guess eight-foot chain-link fence stacked with stuff." Even the "lawn mowers hadn't been put together." "Nothing had occurred in the store as far as cleaning, freight, resets, nothing." *Id.,* at 52. Plaintiff admitted that his priority as manager was to get the store cleaned up and back into shape and that "Blackard wanted [him] to turnaround the Sebring store..." *Id.,* at 52; Pl. Aff. ¶ 13. Defendant placed such a high value on having managers in all of its stores that it had Plaintiff manage the Okeechobee store temporarily. Plaintiff believed that he had a positive impact on the Okeechobee store, testifying that his working there "made a difference." (Pl.Depo., p. 185.)

Defendant's publications also confirm that a manager's role is to lead the store. Defendant's "Winning in 2002" brochure describes the function

of store manager in no uncertain terms: "Build the Team[.] Your # 1 Job--LEADERSHIP! [,] Hire the best[,] Train the best." (Pl.Aff.Ex. 4.) Although an Internet advertisement for the company stresses its customer service focus, Chacon testified that "[t]here is a large range when it comes to operating and serving our customers and team." (Chacon Depo., p. 34.) According to Chacon, customer service encompasses a variety of duties, including managing the store and team, hiring and training the team, managing the operations and ensuring that the store is presentable and in good condition. *Id.,* at 33-34.

[3] Plaintiff attempts to create a factual question regarding the nature of his responsibilities by introducing an affidavit in which he fashions himself as a "working foreman," claiming that his most important duties were akin to those of his team members: serving customers and selling product. A party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary **\*1276** judgment. *See McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 (11th Cir.2003) (court may disregard affidavit submitted for sole purpose of defeating summary judgment motion when deposition testimony directly contradicts affidavit) (quoting *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir.1984) ("when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony")). Plaintiff may not create a factual dispute by attempting to recharacterize the nature of his position. Plaintiff's affidavit is stricken from the record insofar as it is inconsistent with Plaintiff's deposition testimony

**\*\*7** The Court has nevertheless reviewed the affidavit and has concluded that it fails to create a factual question regarding the relative importance of Plaintiff's managerial duties. The affidavit describes an inverted management structure in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                      Page 8

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

which sales associates performed management tasks and Plaintiff performed non-exempt tasks. For instance, associates had the authority to review sales reports, close the store, make the schedule and review employee time records. Pl. Aff. ¶ 6, 24--26. Plaintiff claims he had difficulty delegating tasks to his team members because they were not able to perform their jobs. Plaintiff describes one of his team members as an elderly individual unable to lift heavy objects. *Id.* ¶ 31. Plaintiff also explains that many of his part-time team members did not work during peak business hours. *Id.* Plaintiff claims that he needed to hire more team members, but that his payroll constraints kept him from doing so. As a result, he performed many non-exempt functions himself. *Id.* ¶ 3.

Plaintiff cites *Sack v. Miami Helicopter Service, Inc.,* 986 F.Supp. 1456 (S.D.Fla.1997) for the proposition that the Court should ignore his title and responsibilities as store manager and focus on the actual work he performed. *Sack* held that Plaintiff, a maintenance director who spent less than 50 percent of his time performing managerial tasks, was non-exempt. 986 F.Supp. at 1468. The director's primary purpose was performing non-managerial inspection work, and he lacked discretion with regard to hiring and firing. *Id. Sack* did not involve a managerial employee creating a lawsuit by delegating his exempt tasks and then claiming to be a non-exempt employee. Courts discount managerial titles in favor of actual work performed where employers give non-exempt employees titles as managers or supervisors in attempts to evade the FLSA. *See Meyer,* 881 F.Supp. at 1019 (citing *Cohn v. Decca Distributing Corp.,* 50 F.Supp. 270, 273 (E.D.Pa.1943) ("[T]he plaintiff was given the empty title of 'assistant manager' to circumvent the provisions of the Fair Labor Standards Act.")). *Sack* is distinguishable from the instant case because Plaintiff's primary purpose was to perform non-managerial inspection work. Such is not the case here, where the record demonstrates that management was Plaintiff's primary duty.

[4] Although Plaintiff delegated managerial functions to store associates, such delegation does not render the duties any less "managerial." *See Baldwin,* 266 F.3d at 1115; *Murray,* 939 F.2d at 619 (irrelevant whether manager delegated managerial duties or whether subordinates were capable of performing such duties). Nor did Plaintiff's choice to delegate managerial duties minimize the importance of the duties or render them non-exempt. *See \*1277 Baldwin,* 266 F.3d at 1115 (Plaintiffs' performance "of some of the same tasks as their subordinates is not in and of itself evidence that [they] do not qualify for the exemption.").

**\*\*8** Blackard's testimony confirms the importance of Plaintiff's management duties. Blackard testified that it would only have been acceptable for Plaintiff to fill in for an employee who called in sick if it "didn't hinder his job as the store manager or it didn't hinder the store's function." (Blackard Depo., p. 16.) Blackard often reminded Plaintiff to delegate non-managerial tasks to sales associates. When Plaintiff informed Blackard that he planned to move some equipment, Blackard informed him that he should instruct team members to perform the task and, if necessary, hire additional help. Pl. Aff. ¶ 18. Blackard also explained that "delegating tasks and following up on those assigned tasks will make [Plaintiff's] team more efficient and effective." *Id.* ¶ 22.

**D. Frequency of Exercise of Discretion and Relative Freedom from Supervision**

Plaintiff claims that he was too closely supervised and too often unable to exercise managerial discretion to be classified as an exempt employee. As to managerial discretion, Plaintiff claims that on one occasion when he attempted to fire an employee, Human Resources chastised him for not checking with them first. Plaintiff also argues that he lacked the freedom to hire employees of his own choosing, claiming that Gaines always wanted to be present during job interviews, either in person or over the telephone. Plaintiff claims that Gaines, not he, set new hires' hourly wages.

Plaintiff's claims are not an accurate reflection of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268　　　　　　　　　　　　　　　　　　　　　　　Page 9

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

the record. Blackard testified that Plaintiff had the authority to hire, fire and set wages. (Blackard Depo., p. 33, 38-44.) The Court need not resolve this dispute to enter summary judgment because even "suggestions and recommendations as to the hiring or firing, if given particular weight," constitute management duties. 29 C.F.R. § 541.1. See also 29 C.F.R. § 541.106 ("no employee...can be considered as employed in a bona fide executive capacity unless he is directly concerned with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those who [sic] the hiring and firing functions are delegated."). Plaintiff admits that he had the discretion to send a team member to another store for additional training, even though Blackard thought the training would require less time than Plaintiff had budgeted. On at least two occasions, Plaintiff disciplined team members for failure to follow company policy. Plaintiff claims that he lacked discretion to control the store's inventory, as all inventory ordering was computerized. A manager's reliance on computers to perform a task does not remove the task from the manager's purview, however. *See Haines,* 939 F.Supp. at 447 n. 6 ("[Plaintiff's] assertion... that she did not actually have to account for gasoline usage because that function was conducted by a computer is irrelevant and does not raise a material issue of fact. The fact that she was aided in her responsibilities by modern technology does not in any way alter the fact that gasoline orders were her sole responsibility."). Furthermore, Plaintiff's delegation of non-exempt tasks is an example of managerial discretion.

**\*\*9** The record also dispels Plaintiff's argument that he was subject to exacting supervision. Plaintiff's district managers **\*1278** visited the store approximately once a week for a "walk thru," and any other communication Plaintiff had with his district managers was via telephone or email. (Pl.Depo., p. 56, 134, 136.) Plaintiff's regional manager only visited the store a couple of times during Plaintiff's tenure as store manager. *Id.,* at 60.

Plaintiff's level of independence was greater than

described in other cases where courts concluded that managers were sufficiently independent so as to be exempt. In *Haines,* the manager argued that she was closely supervised by senior managers and could not hire, fire or discipline employees without her manager's approval, that she performed many of her duties subject to strict guidelines and that the was subject to rigid supervision and regular visits by higher level management. 939 F.Supp. at 450. Nevertheless, she also prepared the weekly schedule, completed evaluation forms for employees, was partly responsible for hiring, ordered supplies and was ultimately responsible for everything that happened in the store. *Id.,* at 447-48. The Court ruled that "[n]otwithstanding the existence of close supervision by upper management, manager positions similar to that held by [Plaintiff] are vested with enough discretionary power and freedom from supervision to qualify for the executive exemption." *Id.,* at 450. *See also Baldwin,* 266 F.3d at 1115 (park managers had to adhere to company policies, record completed tasks on checklists and were subject to monthly inspections but were nevertheless substantially free from supervision); *Murray,* 939 F.2d at 619 (although regional managers actively supervised store by traveling to each store from time to time and communicating with managers weekly by phone, "the local store manager's job [was not] any less managerial for FLSA purposes simply because he or she has an active regional manager boss."); *Thomas,* 64 F.Supp.2d at 1206 n. 4 (exempt Plaintiff's manager "was a very hands-on supervisor, calling Thomas at work ten to 15 times a day and stopping by the restaurant three to seven days a week."). Plaintiff, though he was to follow company policy as dictated by written and oral instructions, was not micromanaged to the extent that he became a non-exempt employee.

**E. Relationship Between Salary and Wages**

The final factor in determining whether Plaintiff's "primary duty" was management is the relationship between his salary and the wages paid to non-exempt employees. While courts have not prescribed a formula for determining where an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

352 F.Supp.2d 1268                                                                         Page 10

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**(Cite as: 352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.))**

exempt employee's salary is sufficiently higher than a non-exempt employee's wage to support invocation of the exemption, courts have found a sufficient ratio where the manager made at least $250 more per month than the assistant manager and was the only worker eligible for a bonus, where the department manager's salary was 42 percent higher than the weekly salary of the highest paid associate and the manager alone received a bonus and where the manager made twice as much as the hourly employees. *See Baldwin,* 266 F.3d at 1115-16, *Kastor,* 131 F.Supp.2d at 868-69, *Haines,* 939 F.Supp. at 445. Here, Plaintiff's annual salary was $35,500, or $682.69 per week. Plaintiff was also eligible for a yearly bonus based on the store's sales. In contrast, the associates were paid an hourly rate of $9.00 per hour, or $360.00 per week, and were not entitled to the year-end bonus. Plaintiff, relying on the Fourth Circuit's decision in *Jones v. Virginia Oil Co.,* has proposed a novel means of comparing his salary to an associate's *1279 wages, claiming that if his pay were divided by the number of hours he worked and reduced to an hourly rate, his hourly rate was not much higher that, or, in some cases, even lower than, that of the team members. The Fourth Circuit performed no such mathematical gymnastics in deciding *Jones,* however. *Jones* simply compared the manager's weekly salary with the highest possible non-exempt weekly wage, concluding that the pay differential was sufficient to render the manager exempt. 69 Fed.Appx. at 639.

**\*\*10** Application of each factor indicates that Plaintiff's primary duty was management within the meaning of the regulations Plaintiff is exempt from FLSA overtime provisions by virtue of the executive exemption, and Defendant is entitled to summary judgment on this basis. The potential application of the administrative exemption is thus moot, and the Court declines to address it.

### IV. *CONCLUSION*

THE COURT, having considered the pertinent portions of the record and having heard oral argument from the parties, hereby

ORDERS AND ADJUDGES that Defendant Tractor Supply Company's Motion for Summary Judgment, filed October 8, 2004 is GRANTED. Final judgment shall be entered by separate order.

352 F.Supp.2d 1268, 2004 WL 3128028 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 596, 18 Fla. L. Weekly Fed. D 260

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23811084 (Trial Pleading) Defendant's Answer and Statement of Defenses to Plaintiff's Complaint (Dec. 19, 2003)

• 2003 WL 23811076 (Trial Pleading) Complaint (Nov. 21, 2003)

• 9:03CV81070 (Docket)
(Nov. 21, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.