# TAB 3

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                IN AND FOR THE DISTRICT OF DELAWARE
 2

 3   WILLIE DAVIS, JR.,              )
     NATHANIEL BRIDDELL,             )
 4   GEORGE W. FEDDIMAN,             )
     JOSEPH GARRISON,                )
 5              Plaintiffs,          )
       -vs-                          )   C.A. No. 04-0414
 6                                   )
     MOUNTAIRE FARMS, INC.,          )
 7   MOUNTAIRE FARMS OF              )
     DELMARVA, INC., and             )
 8   MOUNTAIRE FARMS OF              )
                Defendants.          )
 9                                       - - - - - - -

10           Deposition of JOSEPH GARRISON, taken before

11   Pamela C. Washington, Registered Professional Reporter

12   and Notary Public, at the law offices of Young,

13   Conaway, Stargatt & Taylor, 110 West Pine Street,

14   Georgetown, Delaware, on January 14, 2005, beginning

15   at 10:00 a.m.

16                           - - - - - - -

17   APPEARANCES:

18        On behalf of the Plaintiffs:
             Margolis Edelstein
19           BY:  JEFFREY K. MARTIN
             and  KERI L. WILLIAMS, ESQ.
20           1509 Gilpin Avenue
             Wilmington, Delaware 19806
21
          On behalf of the Defendants:
22           Shawe Rosenthal
             BY:  ARTHUR M. BREWER, ESQ.
23           and  LAURA A. PIERSON SCHEINBERG, ESQ.
             20 South Charles Street   11th Floor
24           Baltimore, Maryland  21201

25
```

FIRST STATE REPORTING SERVICE        (302
                          Pamela C. Washington,
            P.O. Box 99              Milford, Dela

56
Garrison - Brewer

1       A    Yes.

2       Q    Okay.  You're also responsible for

3  maintaining the full crew, aren't you?

4       A    Yes, I am.

5       Q    You also have responsibility for

6  maintaining a good relationship with the growers,

7  aren't you?

8       A    Yes.

9       Q    And you basically are telling the

10 catchers, we went through this, how to go about

11 setting up the house and catching them, and watching

12 for smothers and everything else, right?

13      A    Yes.

14      Q    Okay, that's fine.  All right, now, who

15 hires the catchers?

16      A    Doug Lynch.

17      Q    Doug Lynch?  Okay.  Have you ever

18 recommended to Mr. Lynch that a catcher be hired?

19      A    Yes.

20      Q    And has the catcher been hired?

21      A    Sometime.  Sometime he not.

22      Q    Can you give me the name of catchers

23 that you have recommended to Mr. Lynch who have not

24 been hired?

25      A    Yes.

FIRST STATE REPORTING SERVICE        (302)
                    Pamela C. Washington, R
      P.O. Box 99            Milford, Delaw

57

Garrison - Brewer

1      Q      Okay.

2      A      I'm trying to think.  I mean it's not

3  that many I know of right off.  I know the only thing

4  I know maybe one of them, one of them like Woodell

5  Foreman, I recommend him one time, but it's -- he's

6  just been there before and he just didn't hire him

7  back, that's all.

8      Q      Let me sort of zero in on this now a

9  little.  The time that I'm referring to about

10  referring somebody, that's only since you have been a

11  crew leader, I'm not interested in when you were a

12  catcher, okay?  So since you have been a crew leader,

13  you recommended Mr. Foreman?

14     A      At one time I have, yes.

15     Q      And he had worked at the company

16  previously?

17     A      Before, yes.

18     Q      And how did he come not to be employed

19  by the company, if you know?

20     A      Repeat that.

21     Q      Was he fired?

22     A      I don't know.

23     Q      But he worked before and Mr. Lynch said

24  no?

25     A      Right, yes.

FIRST STATE REPORTING SERVICE       (302)
                Pamela C. Washington, RI
        P.O. Box 99              Milford, Delawa

**B015**

58

Garrison - Brewer

1       Q    How many people have you recommended to

2  Mr. Lynch be hired and he has hired them?

3       A    Rough guess, maybe three.

4       Q    Three?  Okay.  Three or four, something

5  like that?

6       A    Yes.

7            MR. MARTIN:  For the record, he said

8  three.

9            MR. BREWER:  He said three, all right.

10  BY MR. BREWER:

11       Q    Is it three, or could it be more?

12       A    No, definitely couldn't be more.

13       Q    How did you go about making that

14  recommendation to Mr. Lynch?

15       A    I just asked him that I probably needed

16  another man, and I like you look to hire this guy.

17       Q    Okay.

18       A    And he asked me just bring him in, get

19  him signed up.

20       Q    That's what he told you?

21       A    Yeah.

22       Q    So in the three cases that we have

23  talked about, you have needed a man, gone to Mr. Lynch

24  and said, "I need a man, and I have this fellow," and

25  you have given him a name, and he has said, "Okay,

FIRST STATE REPORTING SERVICE      (302)
                Pamela C. Washington, RP
        P.O. Box 99         Milford, Delawa_

**B016**

Garrison - Brewer

210

```
 1          A    Got you.

 2          Q    If you go to paragraph 26, please,

 3    which is on the next page.

 4          A    Yes.

 5          Q    It speaks to, in paragraph 26th, it

 6    says the defendant, which again is the company,

 7    followed and enforced and continued to follow and

 8    enforce a corporate policy and practice of partial day

 9    deduction in that any partial time taken off from

10    normal working hours by any of the plaintiffs, such as

11    yourself, okay, other than established holidays was

12    deducted from their pay.  All right, let's stop at

13    that point.

14          A    All right.

15          Q    Can you tell me, this is a partial day,

16    this is if you're going to take off a half a day,

17    shall we say, okay?

18          A    Yes.

19          Q    You need to take off a half a day, and

20    it's not a holiday and it's not a sick day.

21          A    Right.

22          Q    Is it your testimony that you do not

23    receive your full salary for that week if you take

24    half a day off?

25          A    No.
```

FIRST STATE REPORTING SERVICE        (302) 424-4541
                     Pamela C. Washington  RPR
     P.O. Box 99                  Milford, De

B017

211

Garrison - Brewer

1       Q       That's not your testimony?

2       A       No.

3       Q       You do receive your full salary if you

4    take a half a day off?

5       A       If I have to go to the doctor or

6    something like that, yes.

7       Q       You get your full salary?

8       A       Yes.

9       Q       Okay.  And if you have to do something

10   else, if it's not the doctor, if it's something else,

11   if you take any less than a full day off, your salary

12   for the week remains the same, does it not?  Your

13   paycheck for the two weeks that you get paid remains

14   the same?

15      A       Yes, yes.

16      Q       Thank you.  Okay.  Let's see, let's go

17   to the next one which would be paragraph 27 of the

18   Complaint.  This speaks to, and you can read it, I

19   won't read it into the record, it's part of the

20   record, this says that you would receive a reduction

21   in the amount of your compensation because of

22   violations in the quantity of the work performed.

23             Was your salary ever reduced because of

24   the quantity of the work you performed?

25      A       I'm trying to think.  What are you on,

231

Garrison - Brewer

```
 1          Q    What time?

 2          A    I'm thinking it was 9:00 o'clock, I

 3   think.

 4          Q    Now, did you recognize a vehicle owned

 5   by the defendant's upper management circling the

 6   parking lot?

 7          A    Yes.

 8          Q    Did you see that?

 9          A    Yes.

10          Q    Who was driving the vehicle?

11          A    Phil Owens.

12          Q    Phil Owens was driving the vehicle?

13          A    Yes.

14          Q    And you saw him circling in the parking

15   lot?

16          A    Yes.

17          Q    Now, what makes you think it was about

18   your lawsuit?

19          A    I don't know, good question.

20          Q    This is prior to Mr. Martin's letter,

21   isn't it?

22          A    Right.

23          Q    Mr. Owens had no idea anything was

24   going on?

25          A    I don't know that.
```

FIRST STATE REPORTING SERVICE         (302) 424-4541
                        Pamela C. Washington, RPR
              P.O. Box 99          Milford, Delaware  19963

Garrison - Brewer

1        Q      Well, it's prior to Mr. Martin's

2   letter?

3        A      Yes.

4        Q      So what you see is Mr. Owens driving

5   around --

6        A      Yes.

7        Q      -- at a diner that is open to the

8   public?  People can come in there and have breakfast,

9   anybody?

10        A      Yes.

11        Q      Okay.  So what you see is him driving

12   around, and that's what you're referring to here?

13        A      Yes.

14        Q      You're sure it was Mr. Owens?

15        A      I think it was Mr. Owens, yes.

16        Q      Is that the only time that this is

17   referring to?

18        A      Yes.

19        Q      Okay.  What kind of car did you see

20   Mr. Owens driving?

21        A      I think it was a gray car.

22        Q      What kind?

23        A      Ford, Mountaire Ford.

24        Q      A gray Mountaire Ford?

25        A      Yes.