# TAB 4

ORIGINAL

# Transcript of the Testimony of
# Larry E. Gibbs

**Date:** January 20, 2005
**Volume:** 1

Printed On: January 31, 2005

---

Zeve Reporting & Videoconferencing
11032 Nicholas Lane
Suite A201
Berlin, Maryland  21811
Phone: (410)208-4566
Fax: (410)208-4767
Email: info@kathyzeve.com
Internet: www.zevereporting.com

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 45

1  Q   All right. Did you have a say in it? Did you say
2  to anybody in the company, Waters is doing a good job. This
3  guy ought to be a forklift operator?
4  A   No. I didn't say that.
5  Q   What did you say to anybody?
6  A   I was asked --
7  Q   Okay.
8  A   -- how was he doing.
9  Q   By whom?
10 A   I think Mr. Lynch asked me.
11 Q   And what did you say?
12 A   I said, he was doing well.
13 Q   Okay. So you advised Mr. Lynch based on the fact
14 that you were observing Mr. Waters that he was doing well?
15 A   Yes.
16 Q   Okay. And he subsequently became, then, a
17 forklift operator?
18 A   Yes.
19 Q   And a forklift operator is a step above a catcher,
20 isn't he?
21 A   His pay scale is, yes.

Zeve Reporting & Videoconferencing
(410)208-4566 Fax(410)208-4767

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 46

1   Q   So it's pretty much considered a promotion, isn't
2   it?
3   A   I wouldn't say that.
4   Q   He's making more money?
5   A   (Witness nods.)
6   Q   And you wouldn't consider that a promotion?
7   A   If you say making more money is a promotion, then
8   I guess it would be.
9   Q   Okay. Let's just cover a couple of things in your
10  position now as a crew leader and since you -- basically
11  since you started. You are -- you have responsibilities,
12  and we just discussed some of them a little bit with respect
13  to training the people on your crew, isn't that true? You
14  have to answer yes or no for the court reporter.
15      MR. MARTIN: Objection. He can answer yes or no
16      or say he doesn't understand the question.
17  BY MR. BREWER:
18  Q   I thought he was nodding his head. He was shaking
19  his head, yes, and that's why I said what I said.
20  A   I was thinking, really. I wasn't --
21  Q   I didn't mean to misinterpret your nodding.

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 53

1     MR. BREWER:  I'll tell you, it's a few minutes
2  early, but this might be a good time to take a break.
3  Why don't we take about a five- or ten-minute break and
4  come back.
5     MR. MARTIN:  Okay.
6     (Off the record.)
7  BY MR. BREWER:
8     Q  Mr. Gibbs, when you left Hudson Foods, did you and
9  your entire crew come to work for Mountaire?
10    A  Yes.
11    Q  Okay.  Thank you.  Sir, I'm going to show you an
12 exhibit to Mr. Garrison's deposition.  It's Garrison Exhibit
13 No. 1.  I'll give you that.  This is an exhibit to
14 Mr. Garrison's deposition.  Do you recognize this document?
15    A  Yes.
16    Q  Okay.  Tell me what it is.
17    A  It's a -- we call it a farm ticket which the crew
18 leaders fill out.
19    Q  Okay.  So you would fill this out?
20    A  Yes.
21    Q  And up at the top, I see it says, date.  Would you

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 78

1    Q    Directing -- okay. All right. From time to time,
2 new catchers have come on to your crew?
3    A    Yes.
4    Q    Okay. Have you ever suggested to anybody at
5 Mountaire that they hire a particular person as a catcher?
6    A    Yes.
7    Q    Okay. Who, if you can remember?
8    A    The last one was Arthur, Arthur Belfield.
9    Q    And was he hired?
10    A    Yes.
11    Q    Okay. And without -- and I don't mean to stretch
12 your memory, but have there been others like Mr. Belfield
13 that you recommended the company hire?
14    A    That's it. I think I said maybe two or three.
15    Q    Okay. And were they hired?
16    A    I think all but one, I think.
17    Q    Okay.
18    A    I think two out of the three, yes, I think they
19 were hired.
20    Q    Who was it -- do you remember the person who
21 wasn't?

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 79

1   A   No, I can't remember him.

2   Q   Okay. There are other crew leaders employed at
3   Mountaire, we know, right?

4   A   Yes.

5   Q   Have other crew leaders asked you if you could
6   spare a member of your crew to come work on their crew
7   because they were short?

8   A   Yes.

9   Q   Okay. And when they've asked that, what have you
10  done?

11  A   If I have a catcher available, I let him go catch
12  with that crew leader.

13  Q   So you would tell someone from your crew to go
14  work for somebody's crew, for example, Mr. Garrison's crew,
15  if he needed it?

16  A   It would be up to him. I would ask him, would he
17  want to go work with Mr. Garrison or whoever. Then that
18  would be up to him whether he would go catch with that crew
19  or not.

20  Q   Okay. If you asked every one of the catchers and
21  they all said, no, what would you do?

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 86

1   don't turn one in, she'll call me.
2       Q    Okay.
3       A    Mostly just about the daily time sheets.
4       Q    So your conversations with her are about daily
5   time sheets?
6       A    Yes.
7       Q    Anything else?
8       A    Yes. We talk about something else.
9       Q    Okay. What is that?
10      A    Family, just general conversations.
11      Q    Personal type business?
12      A    Yes.
13      Q    But with respect to your dealings with her at
14  work, it just only deals with time sheets, nothing else?
15      A    That's all I can recall -- that's all I can recall
16  right now, most of the time sheets, yes.
17      Q    That's fine. During the course of a -- if -- let
18  me put the question this way. You can authorize your crew
19  to work overtime, can't you?
20      A    Can I authorize my crew to work overtime?
21      Q    You've got a number of houses that have to be

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 147

1  Q   If they didn't. But you were giving them the half
2  an hour lunch?
3  A   I was.
4  Q   Do you know if the other crews were getting their
5  half an hour lunch?
6  A   I don't know.
7  Q   You have no idea?
8  A   No.
9  Q   Let's take a look at -- this is the complaint in
10 this case. It's an exhibit to Mr. Garrison's deposition.
11 And what I would like to do is to go to paragraph 23 of the
12 complaint. It's on the third page. Do you see paragraph
13 23?
14 A   Yes.
15 Q   And what this says is that the company is
16 following and continues to follow a policy which requires
17 you, being the Plaintiff, to submit a daily time sheet
18 broken down for each day of the week. Is the time sheet
19 that you're submitting for the time that your catchers work?
20 A   That's correct, yes.
21 Q   Is it not a time sheet for the hours that you

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 148

1  work, is it?

2  A  No.

3  Q  Okay. Let's go to the next paragraph, and it says
4  that there's compensation -- you're only paid from the time
5  you start at the farm and you end at the farm. But you're
6  being paid for all the time; are you not? Your salary is
7  for everything that you do, picking up, going to the farm
8  and everything else, isn't it?

9  A  I don't know.

10 Q  Okay. What is your salary for?

11 A  It doesn't include my vehicle, buying gas and
12 insurance.

13 Q  But you receive a separate check for that every
14 week, don't you?

15 A  I receive a separate check every week, yes.

16 Q  You receive a separate check. How much is that
17 check?

18 A  Now it's 250. Could I -- excuse me a minute. I
19 think that's my daughter.

20     MR. MARTIN: Let's go off the record.

21     (Off the record.)

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 153

1  day?

2          MR. MARTIN:  Object to the form of the question.

3          THE WITNESS:  I never took a partial day off.

4  BY MR. BREWER:

5      Q   Okay.  Well, let me ask the question this way.  Is

6  the checks that you receive in your salary once every two

7  weeks, is that amount always the same?

8      A   Yes.

9      Q   Whether you're on vacation or not on vacation?

10     A   That's correct.  Yes, it is.

11     Q   Whether you've been sick or not sick?

12     A   Yes.

13     Q   And that's the same.  Okay.  And while you may not

14  have a present recollection of taking a half a day off, if

15  that did happen, your check was the same?

16         MR. MARTIN:  Objection.

17         THE WITNESS:  Like I said, I'm quite sure I

18     didn't take a partial day off.

19  BY MR. BREWER:

20     Q   I understand, Mr. Gibbs.  And I'm not trying to

21  trick you at all.  And I understand that you -- it's

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

B030

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 154

1  difficult for you to go back now in 2005 to think back to
2  2002 and did you ever take part of the day off.  I
3  understand that.  All I'm simply trying to suggest or to
4  find out is, if you did, you're basically telling me your
5  checks have been the same since you've been salaried?
6     A    Yes.
7     Q    If you take it off -- and I'm not saying you did,
8  maybe you didn't, but if you did, there was no change in
9  your check?
10    A    No.
11    Q    That's all.  Okay.  Let's see.  Let's go to
12 paragraph 27.  And what paragraph 27 says is that the
13 company has a policy, which has been described earlier,
14 where your paycheck would be reduced because of the quantity
15 or quality of the work performed -- or quantity, I should
16 say, of the work performed.  But you just basically said to
17 me that your checks are the same regardless?
18    A    They are.
19    Q    Okay.  Thanks.  Thanks.  Now we go to paragraph
20 32.  We've already had some discussion about this.  The
21 vehicle that you use in -- to pick up the people, that is

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

B031

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 160

1   A   No.

2   Q   What equipment to have on it?

3   A   No.

4   Q   Leather seats, radios, that was up to you to
5   decide?

6   A   They told me not to --

7   Q   So whatever you bought, you bought because that's
8   what you wanted to buy?

9   A   Yes.

10  Q   Okay. Now, you are responsible for maintaining
11  the vehicle and repairing it?

12  A   Yes.

13  Q   Okay. And I think we've gone over this, but just
14  to be sure, we'll tie it up with this point here. You are
15  receiving monies from the company every week to -- for those
16  expenses?

17  A   Yes.

18  Q   All right. Let's go to -- I need my letter at
19  this point. Final warning, we've covered that. Let's go to
20  paragraph 36 of the complaint, sir. Okay. Paragraph 36
21  says, many of the Plaintiffs have been cornered by various

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 161

1  management personnel and questioned individually regarding
2  their discussions with counsel and the nature of this
3  action. Okay. That's what it says. Have you been cornered
4  by anybody from management?
5      A   I haven't been cornered, no. I haven't been
6  cornered by anyone from management.
7      Q   Okay. Have you been questioned by anybody from
8  management regarding your discussions with Mr. Martin?
9      A   I'm not -- I don't know exactly how to answer
10 that.
11     Q   Well, I'll see if I can rephrase it a little
12 differently. I'm not sure I know how to. This is
13 basically -- the claim here is that people from management,
14 and there are no names, so I can't give you a name because I
15 don't know the name, but the allegation here is that people
16 from management have questioned -- may have questioned you
17 individually about discussions you've had with your
18 attorney, Mr. Martin. And I guess I want to know, has
19 anybody from management asked you about any discussions
20 you've had with Mr. Martin?
21     A   Not about discussions I had with Mr. Martin.

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

B033

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 162

1   Q   Okay. The next paragraph says that there was a --
2   you say not with Mr. Martin. Did anybody question you
3   about -- anybody from management now, because I understand
4   you had conversations with Mr. Davis and others that we
5   talked about earlier. Has anybody from management
6   questioned you about this lawsuit?
7   A   Yes.
8   Q   Who?
9   A   David Nuse.
10  Q   Okay. And when did he question you about the
11  lawsuit?
12  A   I couldn't tell you. I'm not sure what the date
13  was. I'm not sure of the date.
14  Q   I don't need an exact date. I understand that
15  would be difficult. Would it be before, let's say -- do you
16  remember the time sheets that you were keeping that your
17  daughter drew up for you that started in February of '04?
18  Would it have been before you started keeping your time
19  sheets?
20  A   I think not because I think it was hot. It was
21  during the summer months, I'm quite sure.

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 163

1   Q   So it would have been, then, sometime after the
2   lawsuit was filed in June?
3   A   Yes.
4   Q   Okay. And what did Mr. Nuse say to you?
5   A   Just asked me what was up with the lawsuit against
6   the company.
7   Q   Okay. And what did you say?
8   A   I told him we're trying to get our overtime paid.
9   Q   Okay. And what did Mr. Nuse say?
10  A   That was the end of the conversation.
11  Q   Okay. So that's the entire conversation?
12  A   (Deponent nods.)
13  Q   Was anybody else present?
14  A   Yeah. The catchers, forklift driver, yes, someone
15  else was present.
16  Q   So they were all in a group when he asked you this
17  question?
18  A   No, they were working.
19  Q   Was there anybody else who was part of the
20  conversation standing next to you or something?
21  A   No.

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767

B035

Deposition of Larry E. Gibbs
Conducted on Thursday, January 20, 2005

Page 164

1   Q   So you were working. I gather you were on a farm
2   when this occurred?
3   A   Yes.
4   Q   Do you remember what farm offhand?
5   A   Yes. But I can't recall the name. I have to look
6   in my records. I can't recall the name, but I know where it
7   was at, yes.
8   Q   Okay. I'm going to ask you to do that for me,
9   please. Anybody else besides Mr. Nuse have a conversation
10  with you about this case?
11  A   Anybody besides Mr. Nuse?
12  Q   Anyone outside of him, that's right.
13  A   You mean from Mountaire?
14  Q   Yes, from management.
15  A   No.
16  Q   Mr. Nuse is the only one?
17  A   Yes.
18  Q   And how many times did Mr. Nuse and you discuss
19  this lawsuit, just that one time?
20  A   Yes.
21  Q   Okay. The next paragraph in the complaint says

Zeve Reporting & Videoconferencing
(410)208-4566  Fax(410)208-4767