# TAB 5

1

```
          IN THE UNITED STATES DISTRICT COURT
          IN AND FOR THE DISTRICT OF DELAWARE

WILLIE DAVIS, JR.,                    ) CA No 04-0414-KAJ
NATHANIEL BRIDDELL,                   )
GEORGE W. FEDDIMAN,                   )
JOSEPH GARRISON,                      )
LARRY E. GIBBS,                       )
ROY H. WALTERS,                       )
                                      )
ALL SIMILARLY-SITUATED CURRENT AND    )
FORMER EMMPOYEES OF MOUNTAIRE         )
FARMS, INC., MOUNTAIRE FARMS OF       )
DELMARVA, INC., and MOUNTAIRE FARMS   )
OF DELAWARE, INC.,                    )
                                      )
               Plaintiffs,            )
                                      )
          v.                          )
                                      )
MOUNTAIRE FARMS, INC.,                )
MOUNTAIRE FARMS OF DELMARVA, INC.,    )
and MOUNTAIRE FARMS OF                )
DELAWARE, INC., all Delaware          )
corporations,                         )
                                      )
               Defendants.            )
```

- - - - - -

Deposition of NATHANIEL BRIDDELL, taken pursuant to notice, on Thursday, January 27, 2005 at 10:00 a.m. at Young, Conaway, Stargatt & Taylor, Georgetown, Delaware, reported by Lorena J. Hartnett, a Registered Professional Reporter and Notary Public.

- - - - - -

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

46

```
 1   sure they were trained properly?
 2       A.   Yes.
 3       Q.   Did you ever select any of these
 4   catchers to come onto your crew?
 5       A.   Yes.
 6       Q.   Okay, who did you select?
 7       A.   Zarina Bagwell.
 8       Q.   Okay.  Now, I understand the period of
 9   time I am asking was a long time, so --
10       A.   Yes.
11       Q.   -- I wouldn't expect you to have
12   perfect recall.  Anybody else that you can think
13   of?
14       A.   Can you ask me that question again?
15       Q.   Sure, from September of '89, again
16   this is the timeframe, until April of '03, my
17   question is did you select any employees to
18   become part of your crew?
19           You have mentioned Mr. Bagwell, and I
20   guess my question is anybody else you can
21   remember?
22       A.   Yes, Warren Purnell.
23       Q.   Okay.
24       A.   Leroy Taylor.  Lawn Howell.
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

```
 1      Q.    Is that Howell?
 2      A.    Howell, H-O-W-E-L-L.
 3      Q.    Okay, thank you.
 4      A.    That's about it, as far as I can
 5   remember.
 6      Q.    Okay.  There may have been more, but
 7   you just can't remember?
 8      A.    I am sure.
 9      Q.    Okay, that's fine.  Let me ask you
10   this:  This is a document.  I don't have -- You
11   have copies of these.
12            This is a document, sir, that has been
13   introduced as an exhibit to Mr. Garrison's
14   deposition.  It's Garrison Exhibit 2.  Okay, do
15   you see that?  I am just going to keep that in
16   front of you so I can ask you a couple questions
17   about this document.
18            Okay, it talks about, in roman numeral
19   two on page one, the crew leader's general
20   duties, and I am just going to go through some of
21   these.
22            MR. MARTIN:  Excuse me for a moment.
23   Did you ask whether he was familiar with it,
24   the document?
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

```
1   BY MR. BREWER:
2       Q.   Okay, let's go.  Mr. Briddell, let me
3   ask you this question, if I may:  Could you
4   recommend the promotion of one of the catchers to
5   be a forklift operator?
6       A.   No.
7       Q.   You couldn't do that?
8       A.   Could I?  Oh, let me rephrase it.  You
9   said could I recommend?
10      Q.   Yes.
11      A.   Yes, I could ask Doug about it, yes.
12      Q.   We had talked earlier about your
13  giving some oral reprimands to people for various
14  reasons.  Did you ever give anybody anything more
15  than an oral reprimand?
16      A.   Yes.
17      Q.   Okay, do you remember who, by any
18  chance?
19      A.   Charles Hitchens.
20      Q.   Okay.  Do you remember when that was?
21      A.   No.
22      Q.   Okay.  Anybody else you can think of?
23  And I understand -- Again, I understand I am
24  asking you to go back in time.  There may have
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

```
 1   continues to follow a corporate policy and/or
 2   practice that requires/required plaintiffs to
 3   submit a daily time sheet broken down for each
 4   day of the week."
 5           Were you required to keep a time sheet
 6   of your time broken down for each day of the
 7   week?
 8       A.  At a point in time, yes, that I had to
 9   turn in a time sheet ever day of each catcher.
10       Q.  Each catcher?
11       A.  Yes.
12       Q.  But it was for the catchers you were
13   keeping a time for?
14       A.  Yes.
15       Q.  You were not keeping a time for
16   yourself?
17       A.  No.
18       Q.  Okay, and you have never kept time for
19   yourself as a crew leader?
20       A.  No.
21       Q.  Go to the next paragraph, which is
22   Paragraph 26.  You can take a moment and read
23   that, if you want.
24           Okay, this basically says that the
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

1   defendant, which is the company, follows a
2   practice of partial-day deductions, and it says
3   in that, "Any partial time taken off in working
4   hours by the plaintiffs," which is you, "was
5   deducted from their pay."
6           Were any deductions made from your pay
7   when you took less than one full day off?
8       A.   That depends.  Now, if I took off when
9   I got paid by the thousand --
10      Q.   Uh-huh.
11      A.   -- and I got somebody in my place, the
12  company did not pay.  I paid it out of my pocket.
13      Q.   Correct.  I am talking about -- Let's
14  talk about the times from June of '02 when you
15  became salary.  Okay?
16      A.   In June of '02?
17      Q.   In June of '02 when you first became
18  salaried until April of '03 when you stopped
19  being a crew leader?
20      A.   No.
21      Q.   There were no partial-day deductions
22  taken from your pay?
23      A.   No.
24      Q.   Okay.  Go to the next paragraph,

| | |
|---|---|
| 1 | Paragraph 27. You can take a moment, sir, and |
| 2 | read that. I just have a couple questions about |
| 3 | that for you. |
| 4 | Okay, what this paragraph basically |
| 5 | says is that the defendants have a policy, |
| 6 | defendants being the company, have a policy of |
| 7 | again the partial-day deductions, which you said |
| 8 | did not happen when you were salaried, whereby |
| 9 | your pay was reduced because of violations in the |
| 10 | quantity of the work performed or directly |
| 11 | received a reduction in the amount of |
| 12 | compensation in the event they chose to charge |
| 13 | time off from normal hours. |
| 14 | Was your compensation reduced because |
| 15 | of violations of the quantity of work performed |
| 16 | at all? |
| 17 | A.   No. |
| 18 | Q.   When you were salaried, there |
| 19 | basically weren't any deductions taken from your |
| 20 | work or anything else, were there? |
| 21 | A.   No. |
| 22 | Q.   Take a look, sir, at that same |
| 23 | document and turn to Paragraph 32, please. Let |
| 24 | me know when you are finished. |

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

```
 1   Paragraph 34.  This says, "When the defendant,"
 2   which is the company, "learned of plaintiff's
 3   intention to seek counsel, defendant immediately
 4   retaliated against plaintiffs, threatened them
 5   with termination of employment if they continued
 6   to pursue these issues."
 7            Did anybody threaten you with
 8   termination?
 9       A.   No.
10       Q.   Did anybody retaliate against you,
11   sir?
12       A.   No.
13       Q.   Okay.  And I think I asked you, and
14   you said no one threatened you with termination
15   from employment?
16       A.   No.
17       Q.   Let's see.  Go to the next paragraph,
18   which I would like to read, Paragraph 36.  And
19   this says, "Many of the plaintiffs have been
20   cornered by various management personnel and
21   questioned individually regarding their
22   discussions with counsel and the nature of their
23   action."
24            Were you cornered by any member of
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

```
 1   management about this lawsuit?
 2        A.   Cornered me and questioned me?
 3        Q.   Cornered? Well, this is what it says.
 4   It says, "Many of the plaintiffs have been
 5   cornered."
 6        A.   No, I don't remember being cornered.
 7        Q.   By anybody from management?
 8        A.   No.
 9        Q.   It also says they questioned many of
10   the plaintiffs, and it may not be you, "Many of
11   the plaintiffs have been questioned individually
12   regarding their discussions with counsel."
13             Have you been questioned by any member
14   of management regarding your discussions with
15   Mr. Martin?
16        A.   Yes.
17        Q.   Who?
18        A.   David Nuse said, "I heard your name
19   was on the lawsuit."
20        Q.   Uh-huh. Okay.
21        A.   "And you won't receive anything."
22   That's all I got on that.
23        Q.   David Nuse said, "I heard your name
24   was on the lawsuit."
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661

```
 1   owned and operated by the defendant's upper
 2   management personnel circling the parking lot of
 3   the diner at which they were assembled for a
 4   meeting.
 5         Can you tell me anything about that?
 6   A.    Yes, I do remember seeing that company
 7   vehicle.
 8   Q.    Which vehicle did you see?
 9   A.    I seen a tan Crown Victoria.
10   Q.    And whose car was that?
11   A.    I don't remember. I can't recall. I
12   did not see that person.
13   Q.    You did not see the person?
14   A.    No.
15   Q.    But you are sure it was a company car?
16   A.    I know it was.
17   Q.    And what occurred? The car, it said,
18   circled?
19   A.    Just circled around the parking lot
20   real slow and drove on off.
21   Q.    So the car came into the parking lot?
22   A.    Yes, it did.
23   Q.    Circled around slowly and drove off?
24   A.    Yes.
```

LORENA J. HARTNETT, R.P.R.
(302) 426-1007 or 736-3661