# TAB 6

```
                                                          COPY
 1              IN THE UNITED STATES DISTRICT COURT
                IN AND FOR DISTRICT OF DELAWARE
 2

 3   WILLIE DAVIS, JR.,              )
     NATHANIEL BRIDDELL,             )
 4   GEORGE W. FEDDIMAN,             )
     JOSEPH GARRISON,                )
 5   LARRY E. GIBBS,                 )
     ROY H. WALTERS,                 )
 6                                   )
     ALL SIMILARLY SITUATED CURRENT  )
 7   AND FORMER EMPLOYEES OF         )
     MOUNTAIRE FARMS, INC.,          )
 8   MOUNTAIRE FARMS OF DELMARVA,    )
     INC., and MOUNTAIRE FARMS OF    )
 9   DELAWARE, INC.,                 )
                  Plaintiffs,        )
10        -vs-                       ) C.A. No. 04-0414
                                     )
11   MOUNTAIRE FARMS, INC.,          )
     MOUNTAIRE FARMS OF              )
12   DELMARVA, INC., and             )
     MOUNTAIRE FARMS OF              )
13   DELAWARE, INC., all Delaware    )
     corporations,                   )
14                Defendants.        )
                              - - - - - -
15        Deposition of PHILLIP OWEN, taken before
     Pamela C. Washington, Registered Professional Reporter
16   and Notary Public, at the law offices of Young,
     Conaway, Stargatt & Taylor, 110 West Pine Street,
17   Georgetown, DE, on February 1, 2005, beginning at 1:00
     p.m.
18
     APPEARANCES:
19       On behalf of the Plaintiffs:
             Margolis Edelstein
20           BY: JEFFREY K. MARTIN, ESQ.
             and KERI L. WILLIAMS, ESQ.
21           1509 Gilpin Avenue
             Wilmington, Delaware 19806
22
         On behalf of the Defendants:
23           Shawe & Rosenthal
             BY: ARTHUR M. BREWER, ESQ.
24           20 South Charles Street
             Baltimore, Maryland 21201
25
```

FIRST STATE REPORTING SERVICE              (302)
                        Pamela C. Washington, RPI
P.O. Box 99                     Milford, Delawa:

65

Owen - Martin

1  it?
2  A   Of the document, prior to its being
3  issued, so it must have been right about the start of
4  March or the end of February.
5  Q   Did you have anything to do with the
6  issuance of that document?
7  A   Yes, I did.
8  Q   And what did you do?  What did you have
9  to do with it?
10 A   Discussed the need for this
11 circumstance with Al Z., Doug and Dave.
12 Q   All right, what do you mean by the need
13 for the circumstance?
14 A   Prior to my coming on board, there had
15 been a number of requests made to the crew leaders to
16 assure that the catchers were taking scheduled lunch,
17 30-minute lunch.  And that derived in part due to a
18 previous lawsuit from catchers having to do with
19 taking lunch.
20     So in Al Z.'s visits and discussions
21 with Dave Nuse, there was no consistency in taking
22 lunch.  And it had been talked about, there had been
23 documents issued, requesting each crew take 30-minute
24 lunch.  And after a while, you get to the point where
25 you have talked and talked and talked and talked, and

FIRST STATE REPORTING SERVICE    (30
                  Pamela C. Washington,
P.O. Box 99           Milford, Del.

B048

70

Owen - Martin

1      Q    And you're not sure whether that's a
2 threat?
3      MR. BREWER:    I'm going to object, the
4 document speaks for itself; his interpretation of it
5 is not relevant.
6 BY MR. MARTIN:
7      Q    You may answer.
8      A    The intent of the document is to make
9 very serious the requirement to have the lunches. And
10 loss of one's employment is a serious situation.
11     Q    It's probable to believe that the crew
12 leaders receiving that would have felt that it was a
13 very serious situation?
14     A    If they weren't having lunches, they
15 might be concerned. But those who were doing the
16 lunches, if there were crew leaders who did the lunch
17 situation, they didn't have a thing to worry about.
18     Q    So in other words, they could just tear
19 it up as if it never happened?
20     A    I don't know that I'd want to tear it
21 up per se. But if I am, in my -- I'm the crew leader,
22 and I know that I'm having a daily scheduled 30-minute
23 lunch, this doesn't -- this is not a concern for me;
24 it's someone else's concern and it's not necessarily
25 mine because I'm already doing what I have been

FIRST STATE REPORTING SERVICE    (30
                         Pamela C. Washington,
P.O. Box 99               Milford, Del

B049