IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JUN 28  AM 10: 52

| | |
|---|---|
| WILLIE DAVIS, JR., NATHANIEL BRIDDELL, JOSEPH GARRISON, LARRY E. GIBBS, ROY H. WALTERS, and ALL SIMILARLY-SITUATED CURRENT AND FORMER EMPLOYEES OF MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA, INC., and MOUNTAIRE FARMS OF DELAWARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOUNTAIRE FARMS, INC., a Delaware corporation, MOUNTAIRE FARMS OF DELMARVA, a Delaware corporation, and MOUNTAIRE FARMS OF DELAWARE, INC., a Delaware corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 04-414-KAJ |

## MEMORANDUM OPINION

_____

Jeffrey K. Martin, Esquire, Keri L. Morris, Esquire, Margolis Edelstein, 1509 Gilpin Avenue, Wilmington, Delaware, 19806; Counsel for Plaintiffs.

Matthew F. Boyer, Esquire, Connolly Bove Lodge & Hutz, LLP, The Nemours Building, 1007 N. Orange Street, Wilmington, Delaware, 19899, Arthur M. Brewer, Esquire, Laura A. Pierson Scheinberg, Esquire, Shawe & Rosenthal, LLP, Sun Life Building, 20 S. Charles Street, Baltimore, Maryland, 21201; Counsel for Defendants.

_____

June 28, 2005
Wilmington, Delaware 19807

JORDAN, District Judge

## I.    Introduction

This suit was brought pursuant to the Fair Labor Standards Act (the "FLSA" or

the "Act"), 29 U.S.C. § 201 *et. seq.*  Presently before me is a Motion for Summary

Judgment (Docket Item ["D.I."] 43; "Defendants' Motion") filed by Mountaire Farms, Inc.,

Mountaire Farms of Delmarva, Inc., and Mountaire Farms of Delaware, Inc.

(collectively, "Defendants").  Also before me is a Motion for Summary Judgment (D.I.

41; "Plaintiffs' Motion") filed by Willie Davis, Jr., Nathaniel Briddell, Joseph Garrison,

Larry E. Gibbs, and Roy H. Walters (collectively, "Plaintiffs").[1]  For the reasons that

follow, Defendants' Motion will be granted and Plaintiffs' Motion will be denied.

## II.    Background[2]

On June 21, 2004, Plaintiffs commenced this action filing a three count complaint

asserting violations of the FLSA by Defendants for misclassifying Plaintiffs as exempt

employees, failing to pay overtime, and retaliation;[3] the complaint also asserts a state-

law claim under the Delaware Wage Payment and Collection Act ("Wage Act"), 19 Del.

C. § 1101 *et seq.* (*See* D.I. 1.)  The Defendants answered on July 9, 2004, denying

liability.  (D.I. 5. at ¶¶ 17-49.)  On May 2, 2005, Plaintiffs and Defendants filed cross

---

[1]Plaintiffs also purport to represent "all similarly-situated current and former employees" of Mountaire Farms, Inc., Mountaire Farms of Delmarva, Inc., and Mountaire Farms of Delaware, Inc. (D.I. 1 at ¶ 1.)

[2]The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the Plaintiffs.

[3]The complaint alleges violations of "Sections 7 and 5(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2) ..." (D.I. 1 at ¶ 42.), while Plaintiffs' Opening Brief refers to 29 U.S.C. §215(a)(3). (D.I. 42 at 15.)

motions for summary judgment on each count of the complaint. (D.I. 41; D.I. 43.) The issues presented are relatively straightforward: (1) whether, as crew leaders of chicken catchers at Defendants' farms, Plaintiffs fall within the FLSA's executive exemption and thus are not entitled to overtime pay, and (2) whether Defendants retaliated against Plaintiffs after Plaintiffs indicated that they intended to file this suit.

Defendants are engaged in the business of producing, processing, and distributing poultry products for consumers. (D.I. 5 at ¶ 19.) Defendants contract with over 300 farmers (referred to as "Growers") to grow chickens. (*Id.* at B0065-66.) Plaintiffs are or were employed by Defendants.[4] (D.I. 5 at ¶ 20.) They worked as the leaders of chicken catching crews. (D.I. 52, Ex. 9 at B0075; Ex. 3 at B0013; Ex. 6 at B0049; D.I. 45, Ex. 22 at A00367; Ex. 31 at A00805-06.) A chicken catching crew consists of one crew leader, seven or eight catchers and one forklift operator. (*Id.*, Ex. 5, Garrison Dep., at B0035; Ex. 6, Gibbs Dep., at B0049; Ex. 4, Davis Dep., at B0028.) Defendants' human resource department is not involved in recruiting and hiring chicken catchers and does not advertise for chicken catcher positions. (D.I. 45, Ex. 32 at A00838-39.)

A crew leader supervises the catchers and the forklift driver in the catching process (D.I. 45, Ex. 22 at A00392), and is responsible for staffing and maintaining a full crew. (D.I. 52, Ex. 5 at B0035.) A crew leader is also responsible for properly training the members of his crew. (*Id.*, Ex. 32 at A00882; Ex. 26 at A00556-57, 581;

---

[4]As of the time the cross motions for summery judgment were filed, Plaintiffs Walters, Briddell, and Gibbs were still employed by Defendants. (D.I. 52, Ex. 9 at B0075; Ex. 3 at B0013; Ex. 6 at B0049.) Plaintiff Garrison and Davis resigned in 2004 and Dec. 2003 respectively. (D.I. 51 at 4.)

Ex. 22 at A00470, A00373.) A crew leader transports members of his crew to and from

the assigned farm each work day. (D.I. 52, Ex. 5 at B0032; Ex. 3 at B0021.) On the

farm, a crew leader directs and observes the catching process, and is responsible for

ensuring compliance with the Live Haul Guidelines, which generally describe the

Growers' responsibilities, the crew leaders' duties, and the catching methods and

ventilation procedures. (Id., Ex. 13 at B0115-18.) (See, e.g., id., Ex. 5 at B0034-35;

Ex. 9 at B0077; Ex. 3 at B0014-15.) The crew leader decides when the crew takes a

break. (D.I. 45, Ex. 22 at A00409; Ex. 23 at A00474, A00511-12; Ex. 29 at A00725.)

Furthermore, crew leaders are responsible for the safety of their crew (id., Ex. 26 at

A00611, 618; Ex. 23 at A00476), and for completion of the "farm ticket," which tracks

information on the conditions and particularities of each farm. (D.I. 52, Ex. 12 at

B0114; Ex. 5 at B0033; Ex. 9 at B0078-81; Ex. 3 at B0016; Ex. 6 at B0050-53; Ex. 4 at

B0028.) Additionally, crew leaders have the authority to discipline their crew members.

(Id., Ex. 5 at B0037-39; Ex. 9 at B0076, 82, 95; Ex. 3 at B0019-20; Ex. 6 at B0057.)

In April 2002, Defendants were involved in a previous class action law suit which

was settled. (D.I. 46 at 28.) As a result of that suit, Defendants mandated that all

catchers be provided with daily lunch breaks. (D.I. 45, Ex. 32 at A00833.) A number of

reminders were given to the crew leaders to ensure that their catchers were taking a

thirty minute lunch break. (Id., Ex. 28 at A00676; Ex. 32 at A00829-30.) Despite the

reminders, Al Zlotorzynski, the Human Resource Manager for Defendants, discovered

that there was no consistency among the crews in following the direction on lunch

breaks. (Id., Ex. 32 at A00829-30.) A final warning (D.I. 52, Ex. 14 at B0019) was

issued to all crew leaders, including those not involved in this action, to reinforce the

4

importance of the lunch break. (D.I. 45, Ex. 28 at A00678.) While the warning stated

that "not following the policy will be a willful and wanton disregard of the rules and you

will be terminated without further warnings[,]" Plaintiffs Garrison, Gibbs, and Walters

(the only crew leaders who remained employed by Defendants when the present the

motions were filed) understood that the purpose of the warning was to ensure that all

crew leaders required their crews to take lunch. (*Id.*, Ex. 23 at A00531; Ex. 22 at

A00447-48; Ex. 29 at A00796.)

## III.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary

judgment if a court determines from its examination of "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,"

that there are no genuine issues of material fact and that the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a

triable issue of material fact, a court must review the evidence and construe all

inferences in the light most favorable to the non-moving party. *Goodman v. Mead*

*Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make

credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the

non-moving party must "do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.    Discussion

The parties agree on the operative facts regarding the duties of a crew leader but dispute whether the crew leaders' responsibilities fall within the executive exemptions of the FLSA, 29 U.S.C. § 213(A). More specifically, they dispute whether their "primary duty" was management and whether "particular weight" was given to their suggestions and recommendations as to the hiring and firing, advancement, promotion or any other change in status of employees.

## A.    FLSA's Executive Exemption

Under the FLSA, an employer may not employ any worker "for a workweek longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). However, the Act exempts "any employee in a bona fide executive ... capacity ... ." 29 U.S.C. § 213(a)(1). The regulations promulgated to give effect to the Act state four elements defining an "employee in a bona fide executive capacity."

> The term "employee employed in a bona fide executive
> capacity" in section 13(a)(1) of the Act shall mean any
> employee:

> (1) Compensated on a salary basis at a rate of not less than
> $455 per week ... exclusive of board, lodging or other
> facilities;
> (2) Whose primary duty is management of the enterprise in
> which the employee is employed or of a customarily
> recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or
> more other employees; and
> (4) Who has the authority to hire or fire other employees or
> whose suggestions and recommendations as to the hiring,
> firing, advancement, promotion or any other change of
> status of other employees are given particular weight.

29 C.F.R. § 541.100. "An employer has the burden of establishing that the exemption

applies to its employee[s], and such exemptions are narrowly construed against the

employer." *Sansoucie v. Reproductive Associates*, Slip Op., 2005 WL 1075596 (D. Del.

2005) (*citing Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190 (1966); *Mitchell v.*

*Kentucky Finance Co.*, 359 U.S. 290 (1959)).

Plaintiffs concede that they were compensated on a salary basis sufficient to

satisfy section (a)(1) of the regulation. (D.I. 51 at 13.) Further, Plaintiffs concede that

they customarily and regularly directed the work of two or more employees and,

therefore, section (a)(3) of the regulation is satisfied. (*Id.*) Thus, at issue is whether

their primary duty was management, as required by section (a)(2), and whether their

"hire or fire" suggestions were given sufficient weight to satisfy section (a)(4) of the

regulation.

### 1. Plaintiffs' Primary Duty is Management

Plaintiffs, in their Opening Brief in Support of Their Motion for Summary

Judgment, concede that they "were involved in the management of the enterprise ..."

because they had to ensure that the requisite number of chickens were caught, properly

loaded, transported and delivered to Defendants' processing plant.  (D.I. 42 at 11.)

Plaintiffs assert, however, that management of the enterprise was not their primary

duty.  (D.I. 51 at 14-15.)  Defendants assert that Plaintiffs previously conceded that they

"were involved in the management of the enterprise ... " (D.I. 42 at 11) and that their

duties satisfied section (a)(2) and that, therefore, this issue is no longer in dispute.[5]

(D.I. 54 at 7.)  Because Plaintiffs' earlier statements on this point are insufficient to

warrant judicial estoppel, I will consider the merits of Plaintiffs' allegations.  Accepting

as uncontested that Plaintiffs were involved in management, the issue turns on whether

managerial tasks were the crew leaders' "primary duty."

Under the FLSA regulations, "primary duty" is defined as follows:

> The term "primary duty" means the principal, main, major or
> most important duty that the employee performs.
> Determination of an employee's primary duty must be based
> on all the facts in a particular case, with the major emphasis
> on the character of the employee's job as a whole. Factors
> to consider when determining the primary duty of an
> employee include, but are not limited to, the relative
> importance of the exempt duties as compared with other
> types of duties; the amount of time spent performing exempt
> work; the employee's relative freedom from direct
> supervision; and the relationship between the employee's
> salary and the wages paid to other employees for the kind of
> nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).  To determine whether Plaintiffs' primary duty was

management, a court must consider the listed factors, along with any "facts unique to

this case ... ."  See Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1113-14 (9th Cir. 2001).

---

[5]"Judicial estoppel precludes a party from asserting contrary positions in the
same or related proceedings."  Saes Getters S.p.A. v. Ergenics, Inc., 816 F. Supp. 897,
990 n.5 (D.N.J. 1992),

Plaintiffs' only argument in support of their claim that management was not their "primary duty" is that, despite their responsibilities of handling issues at the farms and interacting with the Growers, the "crew leaders [were] only following company guidelines and needed to obtain higher supervisory approval for any deviation from the company guidelines." (D.I. 51 at 15.) Defendants counter that crew leaders have substantial discretion over each step in the chicken catching process and that, "while the [c]rew [l]eaders are responsible for ensuring that the [c]rew follows [Defendants'] Live Haul Guidelines, the Plaintiffs testified that the procedure could not always be followed and that it was within their discretion to deviate from these procedures when they deemed necessary." (D.I. 46 at 41-42.)

That Defendants have "well-defined policies, and that tasks are spelled out in great detail," is insufficient to negate the conclusion that the Plaintiffs' primary duty was management. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 223, 226 (1st Cir. 1982) (holding that the assistant managers' primary duty was management despite their tasks being "governed by highly detailed, step-by-step instructions contained in Burger King's [manual]"). Indeed, "ensuring that company policies are carried out constitutes the very essence of supervisory work." *Id.* at 226 (internal quotations omitted).

Here, Plaintiffs confirmed that Defendants' Live Haul Guidelines describe the crew leaders' responsibilities. (D.I. 45, Ex. 22 at A00388-92; Ex. 23 at A00489-92; Ex. 26 at A00559-66; Ex. 29 at A00696-700; Ex. 31 at A00811-12.) Plaintiff Walters described that it was within his discretion to deviate from the guidelines "up to a point," that it was not always possible to follow the guidelines exactly, and that he deviated from the procedures depending on the circumstances encountered on the farm. (*Id.*,

9

Ex. 29 at A00700-05.)  Plaintiffs Briddell and Gibbs confirmed a crew leader's ability to deviate from the guidelines.  (*Id.*, Ex. 23 at A00493; Ex. 26 at A00559-66.)  A crew leader is "directing all the responsibilities on the farm ... " and is regarded "the leader out there [on the farm]."  (*Id.*, Ex. 32 at A00878-79.)  Thus the Plaintiffs' primary duty was management.  *See, e.g., Baldwin*, 266 F.3d at 1116 (concluding that defendant's "employment meets the primary duty requirement because [defendant] had authority and discretion to manage the park on a day-to-day basis without supervision and control from [management]");  *Donovan*, 672 F.2d at 226 (holding assistant manager' primary duty is management despite performing non-exempt tasks);  *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1144-47 (3d Cir. 1983) (holding coal mine's foremen primary duty is management because of their independence from supervision and their safety and supervisory responsibilities).

Even if Plaintiffs were generally required to follow company policies and thus had diminished discretionary freedom, they fell within the accepted definition of employees whose primary duty is management.  Therefore, section (a)(2) of the pertinent regulation is satisfied.  29 C.F.R. § 541.100(a)(2).

### 2. Plaintiffs' Input into Hiring and Firing

Plaintiffs contend that crew leaders are non-exempt under the FLSA because they lack the authority to hire or fire and that recommendations and suggestions made to Defendants were not given "particular weight" as required by section (a)(4).  (D.I. 42 at 11.)  Plaintiffs say that their job responsibilities did not include the hiring of chicken catchers and that their involvement with the hiring process was minimal because it was

limited to sending a potential candidate to a gentlemen named Lynch to go through

Defendants' hiring procedure. (D.I. 42 at 12.) Mr. Lynch is the Live Haul Manager for

the Mountaire Selbyville Plant where Plaintiffs are or were employed. (D.I. 52, Ex. 7 at

B0060.) Furthermore, Plaintiffs suggest that they "had no impact at all as to who was

hired by Defendant[s]," and that they did not have the authority to hire or fire or

recommend the promotion of a catcher to forklift driver. (D.I. 42 at 13.)

Defendants respond that those arguments are not supported by the facts in this

case.[6] (D.I. 49 at 6.) Plaintiff Garrison testified in his deposition that the crew leader is

responsible for staffing and maintaining a full crew, including suggesting new catchers

for hire to Mr. Lynch.[7] (D.I. 45, Ex. 22 at A00395.) Garrison, in need of additional crew

members, sent three people to Mr. Lynch telling him "I [would] like you [to] look to hire

this guy." (Id., Ex. 22 at A00397.) Defendants declined to hire one of the suggested

individuals because the individual had worked for Defendants in the past and did not

maintain a good work record. (Id., Ex. 32 at A00844-46.) Plaintiff Gibbs stated that he

brought his entire crew to work for Defendants when he was hired and that he also

---

[6]Defendants further suggest that the affidavits submitted by Plaintiffs in support of their motion for summary judgment "do not square with their sworn deposition testimony." (D.I. 49 at 7.) Plaintiffs almost exclusively cite to deposition testimony to support their claims, but did file additional affidavits in support of their motion. (D.I. 42 at 12-13; id., Ex. B.)

[7]Plaintiffs' affidavits in support of their motion for summary judgment states "[i]t was not a part of my job duties ... to hire or fire employees ..., [and] I was never required to recruit people ... ." (D.I. 42, Ex. B.) If previous, sworn testimony is subsequently contradicted without explanation, it is permissible for a court to disregard the later, contradictory testimony. See Martin v. Merrell Dow Pharms., Inc., 851 F.2d 703, 706 (3d Cir. 1988) ("[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit.").

11

suggested two or three other individuals to be hired, of whom all but one were actually hired. (*Id.*, Ex. 23 at A00478, A00496.) Gibbs also effectuated the promotion of a catcher to a forklift driver by affirming a catcher's performance upon an inquiry by Mr. Lynch. (*Id.*, Ex. 23 at A00471.) Plaintiff Briddell testified that he selected at least four individuals who joined his crew as catchers. (*Id.*, Ex. 26 at A00556-58.)

Even though catchers typically quit before they are terminated (*id.*, Ex. 32 at A00850), Garrison recommended that a catcher named Heath be terminated, and Heath was terminated. (*Id.* at A00846-47.) Briddell recommended the termination of a catcher named Hitchens, and Hitchens was terminated. (*Id.* at A00847-49; Ex. 26 at A00614.) Crew leaders also have the authority to discipline their crew members. (D.I. 52, Ex. 5 at B0037-39; Ex. 9 at B0076, B0082, B0095; Ex. 3 at B0019-20; Ex. 6 at B0057.) Plaintiffs Garrison and Walters each issued six disciplinary warnings.[8] (D.I. 45, Ex. 10 at A00177-82; Ex. 17 at A00270-75.) Defendants argue that the "imposition of disciplinary action" is equivalent to changing an employee's status. (D.I. 49 at 8.)

The question comes down to whether Defendants gave "particular weight" to Plaintiffs' suggestions and recommendations about hiring, firing, and discipline. The pertinent DOL regulations provide guidance on how to determine whether "particular weight" was given:

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such

---

[8]Defendants stated that Garrison issued seven warnings (D.I. 46 at 18), although the present record indicates that he only issued six. (D.I. 45, Ex. 10 at A00177-82.)

suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. *An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.*

29 C.F.R. § 541.105 (emphasis added).

In *Haines v. Southern Retailers*, 939 F. Supp. 441, 450 (E.D. Va. 1996), the plaintiff argued that her employment lacked discretionary powers because "she was closely supervised by senior management ...[,] could not hire or fire without outside management's approval ...[,] performed many of her duties pursuant to strict guidelines ...[,] was not permitted to discipline employees without the approval of her supervisor, and ... was subject to rigid supervision and regular visits by upper management." *Id.* The court rejected her argument, stating that employees in similar positions have been held "vested with enough discretionary power and freedom from supervision to qualify for the executive exemption," even if those employees have only limited ability to hire and fire and whose managerial duties are regulated by strict guidelines. *Id.*; *see also, Donovan*, 672 F.2d at 226; *Beauchamp v. Flex-n-gate LLC*, 357 F. Supp. 2d 1010, 1019 (E.D. Mich. 2005). The same is true for Plaintiffs in this case. *See* 939 F. Supp. at 451. In other words, "nothing in the governing regulations or relevant case law requires that a supervisor must have unfettered discretion in the performance of his

13

management duties in order to be deemed an executive."[9] *Beauchamp*, 357 F. Supp.2d at 1017 (holding that production supervisor qualifies for executive exemption despite limited authority to hire and fire because the defendant company was using a temporary worker agency as an initial source of new employees).

Viewing the record most favorably to the Plaintiffs, as I must while considering Defendants' motion for summary judgment, I nevertheless conclude that Plaintiffs' work as crew leaders satisfies the requirement of 29 C.F.R. § 541.100(a)(4). Thus, Plaintiffs, in their positions as crew leaders met all four of the regulatory prerequisites and were "employee[s] in a bona fide executive ... capacity ... ." Therefore, no overtime pay is owed to them pursuant to the FLSA. 29 U.S.C. § 213(a)(1).

**B.     Plaintiffs do not have a claim under the Wage Act**

Plaintiffs based their claim under Delaware's Wage Act, 19 Del. C. § 1101 *et seq.*, on the theory that they are non-exempt workers under the FLSA and, therefore, are entitled to overtime pay. (D.I. 51 at 18.) Because Plaintiffs have not established that they are non-exempt under the FLSA, their claim under the Wage Act must fail as well.

**C.     Plaintiffs' Retaliation Claim**

Lastly, Plaintiffs assert that Defendants intentionally retaliated against them because, after Plaintiffs' attorney complained to Defendants in a letter about the alleged

---

[9]Plaintiffs fail to cite a single authority in support of their argument that Plaintiffs' suggestions and recommendations regarding hiring, firing, advancement, promotion or any other change in status of employees were not given "particular weight." (D.I. 42 at 11-14; D.I. 51 at 15-17.)

violations of the FLSA (D.I. 52, Ex. 2 at B0009), Defendants gave Plaintiffs a "final

warning" threatening termination if they failed to provide thirty minute lunch breaks for

their crews.  (D.I. 42 at 14-17.)  Under the FLSA, it is unlawful "to discharge or in any

other manner discriminate against any employee because such employee has filed any

complaint or instituted or caused to be instituted any proceeding under or related to this

chapter, or has testified or is about to testify in any such proceeding ... ."  29 U.S.C. §

215(a)(3).  To establish a *prima facie* case, Plaintiffs must show (1) that they engaged

in a protected activity; (2) that they were thereafter subjected to an adverse

employment action; and (3) that a causal link exists between the protected activity and

the adverse action.  *Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996); *Jalil v. Avdel

Corp.*, 873 F.2d 701, 708 (3d Cir. 1989).  Plaintiffs may have satisfied the first

requirement with the letter Plaintiffs' counsel sent to Defendants.  *See Brock v.

Richardson*, 812 F.2d 121, 125 (3d Cir. 1987) (filing of an informal compliant is

sufficient to establish that an employee is engaged in a protected activity under the

FLSA).  However, Plaintiffs have not satisfied the remaining requirements.

To show that they have met the second and third requirements, Plaintiffs rely on

the issuance of the lunch break warning as an adverse employment action.  The

Supreme Court has defined an adverse employment action as "a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in

benefits."  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  Plaintiffs

must offer evidence that the employer's action had materially adverse effects on the

terms and conditions of their employment. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300-01 (3d Cir. 1997). "FLSA's ban on retaliating against an employee who engages in a protected activity is [not] the functional equivalent of a straightjacket which restrains an employer from responding on the basis of its business judgment ...," nor does "an employee [engaging in a protected activity] acquire immunity from the same risks that confront virtually every employee every day in every work place." *Blackie*, 75 F.3d at 723-24.

In this case, a final warning about lunch breaks was issued to all crew leaders, not just Plaintiffs. (D.I. 45, Ex. 28 at A00678.) Moreover, Plaintiffs Garrison, Gibbs, and Walters who remained employed by Defendants understood that the purpose of the warning was to ensure that all crew leaders required their crews to take lunch. (*Id.*, Ex. 23 at A00531; Ex. 22 at A00447-48; Ex. 29 at A00796.) While it is undisputed that the final warning was issued after Defendants had notice of Plaintiffs' allegations (D.I. 46 at 54), that does not prove causation. "[E]ven if timing alone can prove causation where the discharge follows only two days after the complaint, the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Robinson*, 120 F.3d at 1302. Thus, Plaintiffs have failed to establish that they were subjected to an adverse employment action that materially altered the terms and conditions of their employment, and that the final warning was issued in response to Plaintiffs' complaint.

To defeat summary judgment when Defendants have offered a legitimate reason for their actions, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiffs have failed to meet that burden, and, therefore, Defendants are entitled to judgment as a matter of law.

**D.    Plaintiff's Summary Judgment Motion**

Because Defendants' Motion will be granted, Plaintiffs' Motion will be denied.

**IV.    Conclusion**

For the reasons set forth herein, Defendants' Motion (D.I. 43) will be granted and Plaintiffs' Motion (D.I. 41) will be denied. An appropriate order will follow.