PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3982

———

WILLIE DAVIS, JR.;
NATHANIEL BRIDDELL;
JOSEPH GARRISON;
LARRY E. GIBBS;
ROY H. WALTERS,

Appellants

v.

MOUNTAIRE FARMS, INC., a Delaware Corporation;
MOUNTAIRE FARMS OF DELMARVA, INC.,
a Delaware Corporation;
MOUNTAIRE FARMS DELAWARE, INC.,
a Delaware Corporation

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 04-cv-00414)
District Judge: Honorable Kent Jordan

———

Argued June 15, 2006
Before: FISHER, CHAGARES and
REAVLEY,[*] *Circuit Judges*.

(Filed July 20, 2006)

JEFFREY K. MARTIN (ARGUED)
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE  19806
    *Attorney for Appellants*

ARTHUR M. BREWER (ARGUED)
Shawe & Rosenthal, LLP
Sun Life Building, 11th Floor
20 S. Charles Street
Baltimore, MD  21201
    *Attorney for Appellees*

OPINION OF THE COURT

---

[*]The Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation.

REAVLEY, *Circuit Judge*.

Employees of a chicken processing company challenge the District Court's grant of summary judgment to their employer on the employees' claims for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (FSLA), the court holding that the claimants qualified as exempt employees under the Act's Executive Exemption, 29 U.S.C. § 213(a)(1). We will reverse.

I.

Appellants are five "Crew Leaders" who are either currently or formerly employed by Mountaire Farms, Inc. ("Mountaire"). Crew Leaders are employed to supervise other employees known as "chicken catchers" who travel to various growers' farms to catch and crate chickens to be sent to the Mountaire processing plant. As part of their job responsibilities, the Crew Leaders are required to pick up each of seven or eight crew members (catchers and a forklift operator) at their respective homes, transport the crew to the farms where the chickens are harvested, and then transport the crew members back to their homes.

In addition to transporting the crew members, the Crew Leaders have certain other responsibilities for directing the crew's work including making sure that the crew arrives at a farm on time, checking in with the grower, checking the chicken "houses" for pre-catch dead birds and damage, dividing the houses into sections to facilitate the catching process, directing the placement of ventilation fans if needed, monitoring the catch

3

process to prevent any "smothers," checking that the proper number of birds are placed in each transport cage, ensuring that the cages are uniformly stacked in the live haul trucks, and filling out "farm tickets" to send with the live haul drivers.

Mountaire's written job description for crew leaders does not include hiring and firing, and the Crew Leaders testified that they did not have the authority to do either. The Crew Leaders occasionally issue disciplinary warning "write-up" forms to catchers for certain listed violations, e.g., failing to timely notify them that the catcher will not be working on a given day. Crew Leaders sign off on requests for holidays or for receipt of pay in lieu of vacation or holidays. They are also the first stop for any catcher wishing to report a grievance. The Crew Leaders are not tasked with ultimate decision making or action taking on any of these matters, as the write-ups, requests, and grievances are sent to Mountaire's administrative offices.

The Crew Leaders are salaried, but are subject to partial day deductions for partial time off from normal work hours with their vacation and holiday pay calculated based on an hourly rate. The Crew Leaders are required to use their own vehicles for crew transportation, but they are reimbursed for that use. The Crew Leader's testimony reflects that they are minimally educated and that they worked their way up to crew leader status from catcher or forklift operator positions.

The crew transportation part of the Crew Leader's responsibilities takes anywhere from two to six hours per day in addition to their work at the farms, often resulting in a work week exceeding forty hours. Mountaire has refused to pay any

4

overtime wages to the Crew Leaders because they claim that the Crew Leaders are "exempt" executive employees who are not entitled to overtime compensation. Prior to 2002, all Crew Leaders were hourly employees. The record contains a Department of Labor ("DOL") "audit review" dated March 21, 2001. The audit review, which was prepared by Mountaire based on oral statements of the DOL reviewers, notes that Crew Leaders (who were then still hourly paid) should be receiving overtime and that house-to-house travel is compensable for hours worked. Mountaire concedes that the Crew Leaders' duties and responsibilities did not change after they were switched to a salaried status.

II.

We review the District Court's grant of summary judgment de novo. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. Id. In determining whether a genuine issue of fact exists, we resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Id.

We construe FLSA exemptions narrowly against the employer. Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 183 (3d Cir. 2000). The burden of proof to establish that its employees come within the scope of an overtime exemption is on the employer. Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992).

5

III.

The FLSA provides generally that covered, nonexempt employees must receive not less than a stated minimum wage for all hours worked, and overtime premium pay for all hours worked over forty hours in a workweek. See 29 U.S.C. §§ 206(a)(1), 207(a)(1). Exemptions are made for certain "white collar" salaried employees.[1] Among the statutory exemptions from these requirements is the exemption contained at 29 U.S.C. § 213(a)(1) for persons employed in a bona fide executive capacity. This exemption, upon which Mountaire relies, is defined and explained in DOL regulations at 29 C.F.R. §§ 541.100 -.106 (2005).

The general rule for exemption of executive employees provides in relevant part that:

---

[1] See 29 C.F.R. § 541.3 (2005). ("The . . . exemptions and the regulations in this part do not apply to manual laborers or other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill and energy. Such nonexempt 'blue collar' employees gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists.").

6

    (a)    The term "employee employed in a bona fide executive capacity" . . . shall mean any employee:

        (1)    Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

        (2)    Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

        (3)    Who customarily and regularly directs the work of two or more other employees; and

        (4)    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other

7

> employees are given particular weight.

29 C.F.R. § 541.100 (2005).[2]

In dealing with all of the definitions issued since the enactment of the FLSA, courts have generally recognized that since the requisite characteristics of executive employment are stated in the conjunctive rather than the disjunctive, it is necessary, for an employee to be exempt as one employed in an "executive capacity," that the employee be shown to meet all of the administrative requirements for such exemption. See 131 A.L.R. FED. 1 § 2(a) (1996). There is no dispute on appeal that

---

[2]Both the parties and the District Court have proceeded on the assumption that this regulation applies to all the overtime at issue in this case. For purposes of this opinion, we will do the same. We note, however, that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988). The new section 541.100 did not become effective until August 23, 2004. See Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (April 23, 2004). But much of the overtime at issue in this case accrued prior to that date, and appellants Nathaniel Briddell and Willie Davis may have left Mountaire in 2003. We commend this issue to the attention of the District Court on remand.

8

the Crew Leaders satisfy the first three prongs for the exemption. The sole issue in this case is whether the District Court wrongly decided that the fourth prong was also satisfied as a matter of law.

## IV.

The District Court found convincing Mountaire's contention that the responsibilities of the Crew Leader's included crew staffing and, thus, that the fourth prong of the executive exemption was satisfied. We do not believe that Mountaire has established satisfaction of this prong as a matter of law. We note that the case law on this issue is very fact specific and not consistent. The parties have, of course, cherry-picked the cases for their respective positions, but all can be factually distinguished and are not particularly helpful. The DOL regulations, however, do offer us some additional guidance, providing in relevant part that:

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and

> regularly directs. It does not include an occasional suggestion with regard to the change and status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level management's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105 (2005).

In this case, as noted above, the written duties for crew leaders do not include recruiting, hiring and firing of crew members. Testimony from the five Crew Leaders indicates that, in their thirty-plus years of combined service for Mountaire in a crew leader capacity, they collectively recommended only ten crew members for hire. All of these candidates were referred to Mountaire administrators for a screening and testing process. Some were hired, some were not. Mountaire representatives testified that the Crew Leaders were required to "maintain a full crew at all times." The Crew Leaders testified, however, that this merely meant that, if they were going to be short-handed on any given day or farm run, they would arrange to "borrow" a catcher or forklift operator from another crew by notifying Mountaire's dispatcher or contacting a fellow Crew Leader.

With respect to disciplinary warnings issued by the Crew Leaders, the record reflects that these were fairly sparse (for example, one of the Crew Leaders issued three warnings during his four-plus years in the post). The record reflects that, during

the same thirty-plus years of combined service to Mountaire in a crew leader capacity, Mountaire showed the Crew Leaders collectively supported the termination of only two catchers for recurring absenteeism. The Crew Leaders disciplinary powers and freedoms thus appear quite limited.

We disagree with the suggestion of the District Court that the affidavit and deposition testimony of the Crew Leaders is contradictory, which would permit it to disregard the Leaders' averments by affidavit that their job responsibilities did not include recruiting, hiring, or firing. Review of the record reflects that the Crew Leaders consistently testified that they had no responsibility for recruiting catchers, no responsibility for making recommendations on the hiring or termination of individuals, and no power to hire or fire an employee, even within restricted guidelines. Rather, they had the limited power to borrow an employee from another crew when necessary and made only very limited referrals of potential catcher candidates to Mountaire. There are contradictions in the record evidence on this issue, but they lie between the testimony of the Crew Leaders and that of Mountaire, leaving material facts in dispute and precluding summary judgment.

V.

Reviewing the record in the light most favorable to the Crew Leaders, we find that genuine issues of material fact remain as to whether the Crew Leaders were either responsible for hiring and firing or their recommendations on these issues were given "particular weight" such that they may fall under the executive exemption to the requirements of the FSLA.

11

Accordingly, we will reverse the District Court's grant of summary judgment in favor of Mountaire and remand for further proceedings.