# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIE DAVIS, JR., NATHANIEL BRIDDELL, JOSEPH GARRISON, LARRY E. GIBBS, ROY H. WALTERS, and ALL SIMILARLY-SITUATED CURRENT AND FORMER EMPLOYEES OF MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA INC., and MOUNTAIRE FARMS OF DELAWARE, INC., | * * * * * * * * * * | |
| Plaintiffs, | * * | Civil Action No. 04-414 – KAJ |
| v. | * * | |
| MOUNTAIRE FARMS, INC., a Delaware Corporation, MOUNTAIRE FARMS OF DELMARVA, a Delaware Corporation, and MOUNTAIRE FARMS OF DELAWARE, INC., a Delaware Corporation, | * * * * * * * | |
| Defendants. | * | |

# APPENDIX TO
## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**MARGOLIS EDELSTEIN**
Jeffrey K. Martin (Del. Bar No. 2407)
1509 Gilpin Avenue
Wilmington, DE 19806
(302)-777-4680
Attorney for Plaintiffs

Dated: October 13, 2006

# TABLE OF CONTENTS

A       Opening Brief of Appellants filed December 21, 2005 with the U.S. Court
        of Appeals for the Third Circuit

B       Letter Brief from Jeffrey K Martin Esquire to U.S. Court of Appeals for
        Third Circuit dated May 19, 2006

C       Letter Brief from Arthur M. Brewer Esquire to U.S. Court of Appeals for
        Third Circuit dated May 18, 2006.

D       Appendix to Opening Brief of Appellants filed December 21, 2005 with
        the U.S. Court of Appeals for the Third Circuit.

A

USDC-EDPA
REC'D CLERK

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE THIRD CIRCUIT

05 DEC 21  PM 7:02

**Docket No.: 05-3982**

| | |
|---|---|
| **WILLIE DAVIS, JR.;** | ) |
| **NATHANIEL BRIDDELL;** | ) |
| **JOSEPH GARRISON;  LARRY E.** | ) |
| **GIBBS; ROY H. WALTERS,** | ) |
| | ) **Docket No. 05-3982** |
| **APPELLANTS,** | ) **District Court No. 04-0414(KAJ)** |
| **v.** | ) |
| | ) |
| **MOUNTAIRE FARMS, INC., a** | ) |
| **Delaware Corporation;** | ) |
| **MOUNTAIRE FARMS OF** | ) |
| **DELMARVA, INC., a** | ) |
| **Delaware Corporation;and** | ) |
| **MOUNTAIRE FARMS** | ) |
| **DELAWARE, INC., a Delaware** | ) |
| **Corporation,** | ) |
| | ) |
| **APPELLEES.** | ) |

## OPENING BRIEF OF APPELLANTS

On appeal from the United States District Court
for the District of Delaware

BY:    Jeffrey K. Martin, Esquire
       Lori A. Brewington, Esquire
       MARGOLIS EDELSTEIN
       1509 Gilpin Avenue
       Wilmington, DE  19806
       (302) 777-4680
       DE Attorney ID No. 2407
       DE Attorney ID No. 4522

DATED:  December 21, 2005

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ………………………………………… iii

Statement of Subject Matter Jurisdiction and Appellate
Jurisdiction …………………………………………………… 1

Statement of Issues ………………………………………… 2

Statement of Case ………………………………………….. 2

Statement of Facts ………………………………………….. 4

Statement of the Standard or Scope of Review …………….. 13

Summary of the Argument ………………………………… 14

Argument …………………………………………………… 15

    I.     The Court below Erred in its Determination
             that the Crew Leaders Are Exempt Employees
             Because the Evidence is Clear That the Crew
             Leaders Have No Authority To Hire Or Fire
             Other Employees Nor Do the Crew Leaders
             Make Recommendations or Suggestions
             Regarding the Status of Their Employees That
             is Given Particular Weight by Mountaire
             Management …………………………………… 15

Conclusion ………………………………………………… 23

Certification of Admission to Bar …………………………. 24

Certificate of Compliance ………………………………… 25

Verification of Identical Copies and Virus Check ………….. 25

Certificate of Filing and Service …………………………… 26

**Page**

Notice of Appeal, dated August 23, 2005 ……………. A-0001

Memorandum Order of U.S. District Court for
the District of Delaware, C.A. No. 04-414(KAJ), dated
July 29, 2005 …………………………………………. A-0006

Memorandum Opinion of U.S. District Court for
the District of Delaware, C.A. No. 04-414(KAJ), dated
June 28, 2005 ………………………………………….. A-0007

Order of U.S. District Court for the District of
Delaware, C.A. No. 04-414(KAJ), dated
June 28, 2005 ………………………………………….. A-0024

Civil Docket Sheet for U.S. District Court ……………. A-0025

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986) ………………………………………….   13

Angelo v. United States, 57 Fed. Cl. 100 114-15
(2003) …………………………………………….   17

Beers-Capital v. Whetzel, 256 F.3d 120, 130 n.6
(3d Cir. 2001) ……………………………………   13

Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190
(1966) …………………………………………….   16

Krouse v. American Sterilizer Company, 126 F. 3d 494,
500 (3d Cir. 1997) ………………………………….   13

Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295
(1959) …………………………………………...   16

Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.,
124 F. 3d 508, 515 (3d Cir. 1997) ………………………   13

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,
151 (2000) …………………………………………   13

## Statutes, Rules and Regulations

*Fair Labor Standards Act*, 29 U.S.C. § §201 *et seq*. ……….   1,2

Fed. R. Civ. P. 56(c) ………………………………………. 13

29 C.F.R. §541.100 ……………………………………… 16

29 C.F.R. §541.105 ……………………………………    21

28 U.S.C. §1291 ………………………………………….    1

29 U.S.C. §213(a)(1) ………………………………………    15

**Statement of Subject Matter Jurisdiction and Appellate Jurisdiction**

Plaintiffs-Appellants, Willie Davis, Jr., Nathaniel Bridell, Joseph Garrison, Larry E. Gibbs, and Roy H. Walters[1] (hereinafter "Appellants" or "Crew Leaders")[2] filed a civil action against Defendant-Appellee Mountaire Farms, Inc., Mountaire Farms of Delmarva, Inc. and Mountaire Farms of Delaware, Inc. (hereinafter "Appellee" or "Mountaire") in the United States District Court for the District of Delaware on or about June 18, 2004. The basis of the Complaint was Mountaire's failure to pay overtime compensation pursuant to the *Fair Labor Standards Act*, 29 U.S.C. § §201 *et seq.* (hereinafter "FLSA"). Therefore, jurisdiction was founded on the existence of a federal question under a federal statute (FLSA).

Appellate jurisdiction is founded under 28 U.S.C. §1291 because the District Court granted a Motion for Summary Judgment on June 28, 2005 in favor of Mountaire on the federal claims brought by the Crew Leaders. The Crew Leaders filed a Motion for Reargument from the Order granting Mountaire's Motion for Summary Judgment. The Crew Leaders' Motion for

---

[1] George W. Feddiman, was also initially named as a party-plaintiff until it was learned that his potential claim was time-barred. He was thereafter dismissed as a party-plaintiff in the action before the U.S. District Court.

[2] In addition to the five named Plaintiffs-Appellants in this action, the caption also names as Parties-Plaintiff "all similarly-situated current and former employees" of Defendant-Appellee.

Reargument was denied on July 29, 2005. A Notice of Appeal was filed with this Court on August 23, 2005. (A-0001).

## Statement of Issues

1.    Did the District Court err when it determined that Mountaire had the authority to hire or fire other employees or that the Crew Leaders' suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight?

2.    Did the District Court err when it determined that the Crew Leaders were exempt employees under the *Fair Labor Standards Act* and therefore not entitled to overtime compensation?

## Statement of Case

Appellants are five Crew Leaders who are either currently or formerly employed by Mountaire. Crew Leaders are employed to supervise other employees know as "chicken catchers" who travel to various farms on the Delmarva peninsula to catch and crate chickens prior to the chickens being sent to a Mountaire processing plant.

As part of their required job responsibilities, the Crew Leaders must pick up each of the seven or eight crew members (catchers and a forklift operator) and transport these employees to a farm where the chickens are harvested. Similarly, after the work is completed on the farm, the Crew Leaders must transport their crew members to their homes. The transportation part of the Crew Leader's daily responsibilities takes approximately six (6) hours each day in addition to their work at the farm. Although recognizing that transportation is part of the Crew Leaders' responsibilities, Mountaire has refused to pay any overtime wages to the Crew Leaders because they claim that the Crew Leaders are "exempt" employees who are not entitled to overtime compensation.

This case was filed in the U.S. District Court for the District of Delaware and was assigned to The Honorable Kent A. Jordan. A copy of the Complaint and Answer are found in the Appendix. Following the close of discovery, both parties filed cross-motions for summary judgment. Mountaire argued that the Crew Leaders satisfied all four criteria to qualify as exempt employees under the Executive Exemption of the FLSA. Because the burden of proof under the FLSA is on the employer, the Crew Leaders focused on the fourth element of the Executive Exemption and argued that they did not have the authority to hire or fire other employees or make

3

suggestions or recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.

District Judge Kent A. Jordan granted summary judgment in favor of Mountaire finding that the Crew Leaders did indeed have the authority to hire or fire other employees.

## Statement of Facts

The Statement of Facts will be narrowly tailored to the issues identified in this appeal. Therefore, the full extent of the duties and responsibilities of the Crew Leaders and their interactions with their Crews, and, in particular, the chicken catchers, will not be examined because the issues in this appeal relate solely to the Crew Leaders' ability to hire or fire or to suggest changes to the employment status of their crews.

It is undisputed that since July 2002, the Crew Leaders have received a salary from Mountaire. (A-0254). As such, they receive no extra compensation for hours worked in excess of forty hours per week. (A-0041). It is also undisputed that the Crew Leaders are responsible for picking up and transporting their crew members to the farms where they work each day and at the end of the farm time to take the crew members back to where they were picked up by the Crew Leader. (A-0040).

The following outlines the record facts for each Crew Leader. No attempt was made by the lower Court to view the Plaintiffs individually so as to determine each one's status under the applicable statute.

## A.    *Roy H. Walters*

Roy H. Walters joined Mountaire in 1982 and continues to this day to work for Mountaire. (A-0072). Walters was promoted to Crew Leader in 2001. (A-0073).

Walters testified at his deposition that he has nothing to do with hiring any members of his crew. (A-0074). Asked again, he repeated that he has absolutely no input into hiring. (A-0082). Walters explained that his catchers are hired by Mountaire and they are then placed by Mountaire. (A-0074). He has no control over the placement of these catchers in his crew; "[Mountaire] evaluates the man, they hire the man and they place the man." (A-0074).

As part of his Affidavit submitted with the Brief below, he stated, "It was not part of my job duties when I was a Crew Leader to hire or fire employees, or to make any recommendations as to their employment status... I was never required to recruit people to be employed by Mountaire Farms." (A-0060).

Roy Walters also denied having any involvement with the training of his crew. Roy Walters did acknowledge, however, that he can discipline his crew "to a point, according to the work. That's company policy that they allow me to follow." (A-0074). The defense introduced into the record below, three instances where Walters disciplined his crew members. (A-0109). Catcher Richard Sachell was given one day off for failing to call when he was unable to work. (A-0110). Catcher Leon Tucker was given three days off for failing to call or show at work. Tucker was also given a one-day suspension for failing to notify his supervisor that he was not working. (A-0113).

### B.    *Larry E. Gibbs*

Larry Gibbs was first employed by Mountaire as a Crew Leader in May 1994. (A-0118). To date, he has been employed as a Crew Leader for more than eleven and a half years.

Gibbs testified at his deposition that he has never trained any of the people on his crew. (A-0121). When questioned about recommendations as to hiring, he recalled that he suggested the company hire Arthur Belfield, which they did. (A-0128). During his ten plus years of service as a Crew Leader at Mountaire, he recalls maybe "recommending two or three other

6

catchers." (A-0128). He testified that one of his recommendations for hire was not hired. (A-0128).

Gibbs submitted an Affidavit in response to the Motions for Summary Judgment. (A-0062). In that Affidavit, Gibbs swore that it was not part of his job duties to hire or fire employees, or make any recommendations as to their employment status. (A-0062). He further swore that he, as a Crew Leader, was never required to recruit any of his crew. (A-0062). Instead, if he knew someone who wanted a job, he would have them complete an application and send that person to Doug Lynch, the Live Haul Manager. (A-0062).

As to promotions of his crew members, Gibbs cannot recall whether he recommended anyone to be promoted from catcher to a forklift position. (A-0120). Asked about the promotion of catcher Walters to forklift operator, Gibbs testified that he had no input into whether Walters got the job as forklift operator. (A-0120).

Larry Gibbs testified that if one of his catchers was absent without letting him know, he could give that catcher a warning or write-up. (A-0132).

## C.    *Joseph Garrison*

Joseph Garrison has worked for Mountaire for eight years. (A-0146). He began with Mountaire as a catcher and was promoted to become a Crew Leader in 1999. (A-0147).

When asked at his deposition who hired the catchers, he said it was Doug Lynch, the Live Haul Manager. (A-0154). He was further asked whether he recommended to Mr. Lynch that a catcher be hired and Garrison responded: "Yes, and sometimes they were hired, and sometimes not." (A-0154). He recalls recommending Woodell Foreman but that Foreman was not hired. (A-0155). When asked at his deposition how many people Garrison recommended to Lynch be hired and who were actually hired, his response was, "[r]ough guess, maybe three." (A-0155). Defense counsel then paraphrased Garrison's answer and suggested that he testified to three or four recommendations. (A-0155). When asked again whether it could have been more than three, Garrison responded, "[n]o, definitely couldn't be more." (A-0155).

Garrison testified that as a Crew Leader he was responsible for "maintaining a full crew". (A-0154). Garrison explained the following as to what the Crew Leader does if he does not have a full crew:

> If I need somebody, if I'm short-handed, I can get up with the dispatcher and I would let him know that I need a man. Or if not, I can get up with my supervisor and let him know that I need a man.

8

> And what they would do, they would send
> somebody out there with - for me and help me
> catch the chickens. (A-0154).

When further asked about how to get another crew member, Garrison
testified as follows: "I would get up with the Crew Leader..... And I would
ask him can I use somebody on his crew, if they were available." (A-0155).

On the issue of whether a Crew Leader can promote one of his
catchers, Garrison was asked whether he had ever recommended to anyone
at the company that one of his catchers be promoted to a forklift position.
(A-0159). Garrison responded "no" and that he had never done that. (A-
0159).

Garrison acknowledged that he could take limited disciplinary action
as to his crew. (A-0160). He testified that in his six plus years as a Crew
Leader, he has done several disciplinary write-ups. (A-0160-62). Defense
counsel asked Garrison during his deposition to review and acknowledge the
disciplinary write-ups produced by Mountaire. (A-0160-62).    Garrison
identified the writing on write-ups forms to be his with the exception that he
said he did not circle which violations had occurred. (A-0161). Also, in the
write-up  forms,  there  is  nothing  written  indicating  Garrison's
recommendation of action to be taken. (A-0160-62).    Further, the signature

9

line for "Human Resources Manager's signature" is blank on each of the Employee Warning Notices. (A-0160-62).

Joseph Garrison completed an Affidavit that supported his application for Summary Judgment in this matter. (A-0064).   In the Affidavit, he testified that as a Crew Leader it was not part of his job duties to hire or fire employees or to make any recommendations as to their employment status. (A-0064).

### D.    *Nathaniel Briddell*

Nathaniel Briddell served as a Crew Leader for Mountaire from September 1989 through April 2003. (A-0188).   During this thirteen-and-a-half year period, Briddell testified that he recalls that he successfully recommended for hire, four catchers. (A-0189).   Briddell also testified that he was responsible for training his catchers. (A-0189).

When asked about promotional opportunities for his catchers, Briddell testified that he could not recommend the promotion of one of his catchers to be a forklift operator. (A-0204).   Briddell testified that he was able to take disciplinary action against a crew member who did not show up for work. (A-0202).   He testified that he "would sometimes give them a verbal warning and notify my manager." (A-0202).   When questioned, Briddell specifically recalled giving one catcher "more than an oral reprimand". (A-

0204).  The catcher in question was Charles Hitchens and Briddell does not have any further recollection as to when this reprimand may have occurred. (A-0204).

Briddell also testified about the means used by Crew Leaders to maintain a full crew. (A-0203).  Specifically, Crew Leaders talked between themselves to send catchers to each other's unit when they were short-handed. (A-0203).

Nathaniel Briddell executed an Affidavit for the purposes of a cross-motion for summary judgment. (A-0066).  In the Affidavit, Briddell testified that it was not part of his job duties as a Crew Leader "to hire or fire employees, or to make recommendations as to their employment status." (A-0066).

### E.    *Willie Davis*

Willie Davis was employed as a Crew Leader at Mountaire in either April 2000 or 2001. (A-0223).  Davis left Mountaire in December 2003. (A-0243).

Davis' deposition testimony was much more limited than the other Crew Leaders because of his relatively short time as a crew leader at Mountaire.  Davis testified at his deposition that he did recall testifying at an

arbitration proceeding that resulted in the termination of Clarence Heath. (A-0239).

Like the other Crew Leaders in this action, Willie Davis executed an Affidavit that is found in the Appendix. (A-0068). In the Affidavit, he testified that as part of his job duties as a Mountaire Crew Leader, he did not hire or fire employees or make recommendation as to their employment status. (A-0068). He further stated that he was never required to recruit people to be employed by Mountaire Farms. (A-0068).

### F.    *Mountaire Testimony*

Deposition testimony was also elicited from Douglas Lynch, the Live Haul Manager, who was in charge of delivering the chickens from the farms to the processing plant, as well as from Philip Owen, who was the Human Resource Manager of Mountaire. (A-0249). Lynch testified that the Crew Leaders' responsibilities included recruiting catchers and recommending them to the company for hire. (A-0249). He also stated that Human Resources is not involved in the recruiting and/or hiring of catchers. (A-0249). Lynch testified that the recruitment of the crew is the responsibility of the Crew Leader exclusively. (A-0250). He further testified that all recommendations for hire are filtered through the Crew Leaders. (A-0249; A-0254).

## Statement of the Standard or Scope of Review

Review of the decision of the District Court granting a motion for summary judgment is plenary, with the facts viewed in the light most favorable to the nonmoving party (in the instant matter, Appellants/Crew Leaders), and with all reasonable inferences drawn in favor of the nonmoving party. Beers-Capital v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001); Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F. 3d 508, 515 (3d Cir. 1997).

Summary judgment must be granted when the materials of record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F. 3d 494, 500 (3d Cir. 1997). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must "give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

## Summary of the Argument

The sole issue in this case is whether the Crew Leaders are deemed to be exempt employees under the FLSA Executive Exemption based upon their authority to hire or fire employees, or if their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight by Mountaire management.

Appellants have set forth the testimony of the five Crew Leaders in this matter.    Each of the Crew Leaders has testified that they have no authority to hire or fire other employees.    Further, whatever suggestions or recommendations they may have made regarding the status of other employees have not been given particular weight.

The District Court erred in concluding that the Crew Leaders had the authority to hire or fire and to make other changes and to make other suggestions and recommendations as to the status of their employees. Because Mountaire has failed to establish that the Crew Leaders met the last element of the qualifications for the Executive Exemption, the Crew Leaders must be determined to be non-exempt employees and therefore eligible for overtime compensation under the FLSA.

## ARGUMENT

### THE COURT BELOW ERRED IN ITS DETERMINATION THAT THE CREW LEADERS ARE EXEMPT EMPLOYEES BECAUSE THE EVIDENCE IS CLEAR THAT THE CREW LEADERS HAVE NO AUTHORITY TO HIRE OR FIRE OTHER EMPLOYEES NOR DO THE CREW LEADERS MAKE RECOMMENDATIONS OR SUGGESTIONS REGARDING THE STATUS OF THEIR EMPLOYEES THAT IS GIVEN PARTICULAR WEIGHT BY MOUNTAIRE MANAGEMENT.

Mountaire filed for summary judgment below arguing that the Crew Leaders met the Executive Exemption criteria and are therefore not eligible to receive overtime payments. Mountaire argued, and the Court agreed, that the FLSA "exempts any employee in a bona-fide executive.... capacity...." 29 U.S.C. §213(a)(1). The United States Department of Labor regulations promulgated under this section of the United States Code set forth four elements that define "an employee in a bona-fide executive capacity."

> The term "employee employed in a bona-fide executive capacity" in Section 213(a)(1) of the Act shall mean any employee:
>
> (1)    compensated on a salary basis at a rate of not less than $455.00 per week..... exclusive of board, lodging or other facilities;
>
> (2)    whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3)    who customarily and regularly directs the work of two or more employees; and,

> **(4)    who has the authority to hire or fire, or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.**

29 C.F.R. §541.100. (Emphasis added).

Exemptions from the FLSA must be narrowly construed against the employer.    Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295 (1959). The burden of proof to establish that the employee meets the exemption is on the employer.    Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190 (1966).

The regulation cited supra. has been interpreted by the Court of Claims to mean that the exempt employee's authority to make or recommend personnel actions, must pertain to both the selection or removal *and* advancing in pay or promoting of subordinate employees.    Angelo v. United States, 57 Fed. Cl. 100 114-15 (2003).

The record evidence in this case fails to demonstrate that any one of the Crew Leaders was involved in either hiring or firing of their crew.    At best for Mountaire, there was testimony from Crew Leaders (Joseph Garrison, Larry Gibbs and Nathaniel Briddell) who together in their thirty years of service at Mountaire as Crew Leaders, that they collectively recommended only ten crew members over this span of years.    Given that a

Crew Leader has seven or eight catchers at any one time, it is apparent that one catcher recommended every three years suggests that any recommendations by the Crew Leaders are few and far between. In addition, any recommendations made by the Crew Leaders were not always accepted by Mountaire.

Most importantly, however, is the sworn statement in the form of an Affidavit that was submitted to the Court below by each of the five Crew Leaders. In the Affidavits, each Crew Leader testified it was not part of their job duties to hire or fire employees. Further, they testified that it was not part of their job duties to make recommendations as to their employment status.

The District Court "disregarded" the Affidavits of the Crew Leaders. (A-0017). The Court determined that this sworn testimony "contradicted without explanation" prior testimony. (A-0017). However, it is respectfully submitted that the Affidavits submitted to the District Court did not, in any way, contradict any prior testimony of the Crew Leaders by way of their depositions. A close review of the record will demonstrate that the Affidavits did indeed contradict the testimony of Mountaire management personnel, Live Haul Manager, Doug Lynch, and Human Resources Manager, Philip Owen. In keeping with the Court's mandate to view the

17

facts in the light most favorable to the non-moving party (Appellants herein), this Court must not disregard the Crew Leaders' Affidavits.

This analysis addresses the second aspect of the pertinent part of the regulation referring to whether the suggestions or recommendations of the Crew Leaders were given particular weight. As noted, given the infrequency of any recommendations that were made and accepted by the company, this must fail.

Applying the Department of Labor regulation interpreting the Executive Exemption portion of the statute, a primary inquiry must be whether the Crew Leaders had the authority to hire or fire. With respect to hiring or firing, there was absolutely no evidence presented that would suggest that the Crew Leaders had any involvement with the termination of any of their crew members. Similarly, there was no evidence suggesting that they were involved in the hiring process. Rather, the consistent testimony of the Crew Leaders was that if someone looking for a job as a catcher approached a Crew Leader, the Crew Leader would send them to the Live Haul Manager's office or to Human Resources. There was no evidence presented that the Crew Leaders conducted any interviews, made any offers of employment, conducted background checks, performed drug screening or

had any further involvement in the hiring process other than directing any interested applicants to the main office.

The District Court misinterpreted the acknowledged responsibility of each of the Crew Leaders "to maintain a full crew." This does not mean, as Mountaire suggested in its briefing below, that if a Crew Leader was short-handed, that the Crew Leader went out and recruited and hired someone outside the Mountaire organization. To the contrary, the testimony of Joseph Garrison makes clear that if a Crew Leader was short-handed, the Crew Leader would appeal to other Crew Leaders to "borrow" a catcher in order to make up the loss of the catcher.

Finally, an issue was raised below with regard to the Crew Leaders' power to discipline their crew. The District Court referred to the employee disciplinary warnings issued by Joseph Garrison and Roy Walters. Garrison's warnings consisted of a statement handwritten by Joseph Garrison detailing the nature of the violation by the crew member. Each of these warnings was a result of issues relating to the absence or the tardiness of the catchers. Garrison testified that he did not circle the number of the offense that was shown on the warning form. Also, in each of Garrisons' warnings, there is nothing written as to the action taken by the company against the crew member. On each of the forms there is a printed signature

19

line for the Human Resources manager. In each case, there was no such signature.

As to Roy Walters' disciplinary warnings, they too were catcher-absence issues. Unlike Garrison's warning notices, however, three of the six warning notices written by Walters and used by Mountaire at Walters' deposition contained actions. In two instances the catcher was directed to take one day off and the third was for a three-day suspension. Again, like Garrison's warning notices, there were no signatures for the Human Resources manager listed although the form indicated where such a signature would be found.

It is important to note that both in Garrison's and Walters' cases that these were the warning notices that were found by Mountaire in preparation for the depositions for each of these Crew Leaders. Referring once again to the Department of Labor regulation cited supra., one or three-day suspensions for failure to show and/or call does not demonstrate a "change of status" of these employees.

The District Court cited with approval and adopted the rationale of another Department of Labor regulation interpreting the statute at issue. The term used in the regulation, "particular weight", has been further explained as follows:

> To determine whether an employee's suggestions and recommendations are given "particular weight", factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency for which the employee's suggestions and recommendations are relied upon. Generally an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. **It does not include an occasional suggestion with regard to the change and status of a co-worker.** An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level management's recommendation has more importance, and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. §541.105. (Emphasis added).

This regulation makes it clear that an "occasional suggestion" is insufficient with regard to satisfying the criteria of the Executive Exemption. Mountaire has shown that the "occasional suggestion" in the context of hiring recommendations by the Crew Leaders where recommendations were made every three years. With regard to disciplinary action taken by the Crew Leaders, Mountaire has also demonstrated nothing more than an "occasional suggestion." Mountaire has shown that one of the five Crew Leaders issued three disciplinary warnings during his four plus years of

service as a Crew Leader for Mountaire.  Just as importantly, the type of discipline dispensed, one-day or three-day suspensions, has no particular impact on any of the employees such that it would change the status of those employees.

In view of Mountaire's failure to meet its burden to show that the Crew Leaders met the Executive Exemption, specifically by its failure to meet the fourth element, it is respectfully submitted that this Court enter judgment in favor of Appellants and remand this matter to the U.S. District Court for an assessment of damages.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the Order of the District Court for the District of Delaware and remand this matter to the District Court for an assessment of damages in favor of Appellants.

Respectfully submitted,

Jeffrey K. Martin, Esquire (DE #2407)
Lori A. Brewington, Esquire (DE #4522)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, DE  19806
(302) 777-4680
Attorney for Appellants

DATED:  December 21, 2005

## CERTIFICATION OF ADMISSION TO BAR

JEFFREY K. MARTIN, certifies as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty and perjury that the foregoing is true and correct.

_____
JEFFREY K. MARTIN

DATED:  December 21, 2005

## CERTIFICATION OF ADMISSION TO BAR

LORI A. BREWINGTON, certifies as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty and perjury that the foregoing is true and correct.

_____
LORI A. BREWINGTON

DATED:  December 21, 2005

24

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief is in compliance with the 14,000 word maximum set forth in Federal Rule of Appellate Procedure Rule 32(a)(7)(B)(i). In particular, the word processor count on words is approximately 4,772.

JEFFREY K. MARTIN

## VERIFICATION OF IDENTICAL COPIES AND VIRUS CHECK

The undersigned hereby certifies that the text of the PDF file and Hard Copies of the Brief and Appendix are identical and a virus check was performed by using Symantec Anti-Virus Corporate Edition software.

JEFFREY K. MARTIN

## **CERTIFICATE OF FILING AND SERVICE**

I, JEFFREY K. MARTIN, certify as follows:

1.    On this date, I caused 10 copies of the Opening Brief of Appellants

and 4 copies of the Appendix of Appellant - Volume II to be filed with the

United States Court of Appeal for the Third Circuit by Parcels courier

service addressed to:

>       Clerk
>       United States Court of Appeals
>       for the Third Circuit
>       21400 U.S. Courthouse
>       Independence Mall West
>       601 Market Street
>       Philadelphia, PA  19106

2.    On this date, I caused 2 copies of the Opening Brief of Appellant and

a copy of the Appendix of Appellant - Volume II to be served by UPS

overnight courier upon the following attorney listed below:

>             Arthur M. Brewer, Esquire
>             Shawe & Rosenthal, LLP
>             Sun Life Building, 11th Floor
>             20 South Charles Street
>             Baltimore, MD  21201

3.    Pursuant to 28 U.S.C., I certify under penalty of perjury that the

foregoing is true and correct.

JEFFREY K. MARTIN

DATED:  December 21, 2005

26