B



ATTORNEYS AT LAW
www.margolisedelstein.com

**DELAWARE OFFICE:**
1509 GILPIN AVENUE
WILMINGTON, DE 19806
302-777-4680
FAX 302-777-4682

PHILADELPHIA OFFICE:*
THE CURTIS CENTER, 4TH FLOOR
601 WALNUT STREET
INDEPENDENCE SQUARE WEST
PHILADELPHIA, PA 19106-3304
215-922-1100
FAX 215-922-1772

HARRISBURG OFFICE:*
3510 TRINDLE ROAD
CAMP HILL, PA 17011
717-975-8114
FAX 717-975-8124

PITTSBURGH OFFICE:
310 GRANT STREET
THE GRANT BUILDING, SUITE 1500
PITTSBURGH, PA 15219
412-281-4256
FAX 412-642-2380

SCRANTON OFFICE:
THE OPPENHEIM BUILDING
409 LACKAWANNA AVENUE
SUITE 3C
SCRANTON, PA 18503
570-342-4231
FAX 570-342-4841

SOUTH NEW JERSEY OFFICE:*
SENTRY OFFICE PLAZA
216 HADDON AVENUE, 2ND FLOOR
P.O. BOX 92222
WESTMONT, NJ 08108
856-858-7200
FAX 856-858-1017

NORTH NEW JERSEY OFFICE:
CONNELL CORPORATE CENTER
THREE CONNELL DRIVE
SUITE 6200
BERKELEY HEIGHTS, NJ 07922
908-790-1401
FAX 908-790-1486

* MEMBER OF THE HARMONIE GROUP

May 19, 2006

The United States Third Circuit Court of Appeals
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

    Re: Willie Davis, Jr., et al. v. Mountaire Farms, Inc., etc., et al.
        No. 05-3982; Listed; Thursday, June 15, 2006

    In a letter dated May 4, 2006, this Court requested the parties submit letter briefs with citation of pertinent authority addressing the following question: Whether, and which, of the Appellants' actions with respect to the employees they supervised effected a "change of status" of those employees, as that term is used in 29 C.F.R. § 541.100(a)(4)? That which follows is Appellants' Letter Brief responding to the Court's request.

### Statement of Facts

    This Statement of Facts is intentionally curtailed in the interests of brevity and succinctness. Appellants are five Crew Leaders employed by Appellee. (Op. Br. of Appellants at 2.) Appellants supervise other employees of Appellee known as "chicken catchers," who catch and crate chickens to be sent to Appellee's processing plant. (Id.) As part of their job duties, Appellants transport crew members from the crew members' homes, to work on the farm, and back home again. (Id.) This time spent transporting crew members is in addition to Appellants' work on the farm. (Id. at 3.) Appellee has refused to pay overtime wages to Appellants because it claims that Crew Leaders are "exempt" employees not entitled to overtime compensation. (Id.)

### Legal Issues to Be Briefed

    The federal requirements for overtime payment in 29 U.S.C. § 207(a)(1) (2006) do not apply to an "employee employed in a bona fide executive capacity." See 29 U.S.C. § 213(a)(1) (2006). The term is not defined by statute, but by regulation. 29 C.F.R. 541.100(a)(4) (2006) provides:
The term "employee employed in a bona fide executive capacity" . . . shall mean any employee . . . [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Id.[1] The Executive Exemption should be narrowly construed against the employers that try to assert it. Douglas v. Argo-Tech Corp., 113 F.3d 67, 70 (6th Cir. 1997). "[T]he character, type, and extent of activities and duties performed by employees plays the primary role in any decision regarding the applicability of the exemption." Martin v. Penn Line Service, Inc., 416 F. Supp. 1387, 1389–90 (W.D. Pa. 1976).

### What is a "Change of Status?"

The Department of Labor did not define "change of status" in the regulation. See 29 C.F.R. § 541.100. However, the Department had a definition in mind when promulgating the regulation:

> [T]he Department intends that this phrase be given the same meaning as that given by the Supreme Court in defining the term "tangible employment action" for purposes of Title VII liability. In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998), the Supreme Court defined "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." The Department believes that this discussion provides the necessary guidance to reflect the types of employment actions a supervisor would have to make recommendations regarding, other than hiring, firing or promoting, to meet this prong of the executive test.

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,131 (April 23, 2004)

Just because Appellants exercised an iota of managerial duties does not necessarily mean that they should be deemed to be covered under the Executive Exemption. Such a result would be contrary to logic and contrary to the spirit of the Exemption. Cf. 29 C.F.R. § 541.100(a)(2) (2006) (requiring that the employee's "primary duty" be management); see also 29 C.F.R. § 541.106(c) ("[A] relief supervisor or working supervisor whose primary duty is performing nonexempt work on the production line in a manufacturing plant does not become exempt merely because the nonexempt production line employee occasionally has some responsibility for directing the work of other nonexempt production line employees....").

### Were Appellants Able to Effect a "Change of Status?"

The Court has requested that Appellants identify whether they effected a "change of status" of their supervised employees. As defined by the Department of Labor, through reference to Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), discussed supra, a "change of status" is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 761–62.

Appellant Walters testified that he had nothing to do with hiring members of his crew, (A-0074), and further stated that he had absolutely no input into hiring. (A-0082.) "[Appellee] evaluates the man, they hire the man and they place the man." Walters testified, "It was not part of my job duties when I was a Crew Leader to hire or fire employees, or to make any

---

[1] Note that the employer has the burden of proving an additional three elements before the Executive Exemption is met. See 29 C.F.R. 541.100(a)(1)–(4) (2006). However, in the interests of brevity, Appellant will forego any further discussion of the other elements.

2

recommendations as to their employment status...I was never required to recruit people to be employed by [Appelllee.]" (A-0060.) While Walters was given some limited authority to discipline his crew, it cannot be said that Walters' power allowed him to effect a "significant change in employment status." See Ellerth at 761–62. Indeed, the furthest extent of Walters' disciplinary powers was to issue two one-day suspensions and one three-day suspension. (See A-0109, 0110, 0113).

Appellant Gibbs testified that his recommendations to hire were sometimes followed and other times not followed. (A-0128.) During his ten years of employment as Crew Leader, he only remembers recommending "two or three" other catchers. (Id.) Surely, merely recommending an employer hire an employee does not mean that Gibbs had the power to hire or cause "a significant change in benefits." Indeed, a recommendation was the extent of Gibbs' involvement—Gibbs would have the prospective employee fill out an application and send the application to a manager. (A-0062.) Similarly, Gibbs had no ability to promote his subordinates from catcher to forklift operator. (A-0120.) Gibbs' disciplinary power was limited to giving the subordinate a warning or a write-up, with the actual implementation of punishment to be determined by Gibbs' superiors. (A-0132.)

Similar to Gibbs and Walters, Appellant Garrison recommended that a prospective employee be hired, but sometimes his recommendations were followed and sometimes they were not—the ultimate decision to hire was made by Garrison's superiors. (A-0154.) When asked whether he had ever recommended one of the catchers be promoted to a forklift position, Garrison responded with a definite "no." (A-0159.) Garrison's power to mete out discipline was limited to the clerical task of filling out the write-up form and leaving blank the line for "Human Resources Manager's signature." (A-0160 to 0162.) Garrison was not empowered to hire or fire employees or to make any recommendations as to their employment status. (A-0064.)

Appellant Briddell worked for Appellee for thirteen-and-a-half years, and during that time he successfully recommended for hire a total of four employees. (A-0189.) Similar to his fellow appellants, Briddell could not recommend the promotion of one of his catchers to be promoted to forklift operator. (A-0204.) Briddell's disciplinary duties were limited to giving a verbal warning and notifying Briddell's manager. (A-0202.) Briddell swore in an affidavit that it was not part of his job duties to hire or fire employees or to make any recommendations as to their employment status. (A-0066.)

Appellant Davis' testimony was relatively limited because he had only been employed for a short time as crew leader. The only discipline-related activity that he could remember was testifying at arbitration hearing in the termination of another employee. (A-0239.) Davis had no ability to hire or fire employees or to make any recommendations as to their employment status. (A-0068.)

### Contrasting the Case Sub Judice with Other Executive Exemption Cases

There are few cases that focus, as this Court requests of the parties here, on the issue of power to effect a "change of status." However, comparing the case sub judice with other cases applying the Executive Exemption may prove to be instructive.

Contrast the Appellants' duties with those of the employee Beauchamp v. Flex-n-Gate, 357 F. Supp. 2d 1010, 1016 (E.D. Mich. 2005), which found that the employee fell within the Executive Exemption because he was responsible for the enforcement of company policies and safety regulations and was responsible for the disciplining of employees. In Appellants case,

their only power was to recommend discipline (i.e., by filling out a "write-up" form and forwarding it to Appellee's management).

Anderson v. City of Cleveland, 90 F.Supp. 2d 906 (D. Tenn. 2000) is another case in stark contrast with that before the Court. In this case, plaintiff police officer was held to be an exempt employee, in part because plaintiff had the power to discipline the sergeants and officers who worked under him. Id. at 910. Unlike Anderson, the Appellants here would report discipline issues and forward the report to management—Appellants had no power to enforce discipline.

In Ale v. TVA, 269 F.3d 680, 687 (6th Cir. 2001), employee shift supervisors completed evaluations of their subordinates. Id. at 687. However, these evaluations were "not instrumental in recommendations or promotions." Id. Similar to Appellants in the case sub judice, the plaintiffs in Ale did not have the authority to discipline their subordinates. Id. Accordingly, the Sixth Circuit held the shift supervisors were not covered by the executive exemption. Id.

These cases are instructive of the case-by-case approach that courts use in applying the Executive Exemption. As is explained in the immediately following section, Appellants contend that the District Court erred in granting Defendant/Appellee's summary judgment motion.

### The Findings in the Memorandum Opinion Warrant Further Review

The Honorable Kent Jordan, in a Memorandum Opinion filed July 28, 2005, granted summary judgment in favor of Appellee/Defendant. The next day, reargument was denied in a Memorandum Opinion. The District Court focused on the deposition testimony of Lynch, a manager employed by Appellee, that Appellee's "human resource department is not involved in recruiting and hiring chicken catchers and does not advertise for chicken catcher positions." (Mem. Or. at 3.) The court found persuasive the fact that Appellants recommended hiring and termination. (Id.) Respectfully, this focus on recommendation is misplaced as Appellants had no real power to effect a change in status, as required under the regulations. 29 C.F.R. 541.100(a)(4) (2006).

Additionally, as a basis for its holding, the District Court held that "[I]nvolvement in firing is not the standard by which to determine whether an employee is exempt." (Mem. Or. at 3, fn. 2.) Again, respectfully, Appellants point to the text of the regulation itself:

> The term "employee employed in a bona fide executive capacity" . . . shall mean any employee . . . [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

C.F.R. 541.100(a)(4) (2006) (emphasis added). As it can clearly be seen, contrary to the Memorandum Order, firing is one of the standards by which an employee is determined to be exempt.

The Memorandum Opinion found fault that Appellants (then Plaintiffs) "fail[ed] to cite a single authority in support of their argument that Plaintiff's suggestions regarding hiring, firing, advancement, promotion, or any other change in status of employees were not given 'particular weight.'" (Mem. Op. at 14, n. 9.) Again, respectfully, Appellants take issue with this part of the holding. First, claiming that Plaintiffs failed to prove that their suggestions were not given weight loses sight of the big picture: that it is the employer's burden to prove that the employee is exempt. Claiming that Appellants have not proved this element is analogous to claiming a

4

defendant in a negligence claim must prove that he was not negligent. Second, the Memorandum Opinion does not examine the frequency with which Appellants' hiring suggestions were taken. 29 C.F.R. § 541.105 (2006) provides guidance as to the meaning of "particular weight":

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon..

Id. (emphasis added). As described in more detail in the discussion of Appellants' power to hire/promote/discipline (see supra discussion under the heading Were Appellants Able to Effect a "Change of Status?"), Appellants' suggestions were given rarely and seldom followed.[2]

### Conclusion

In short, Appellee's efforts to classify Appellants as "executives" is analogous to trying to pound a square peg in a round hole—executive employees they clearly are not. They have no authority to effect a "change of status" of any of the chicken catchers. As such, Appellants are entitled to the same hourly wage provisions as nonexecutives.

Respectfully yours,

JEFFREY K. MARTIN
Attorney for Appellants

---

[2] For example, Appellant Gibbs' hiring recommendations were only followed two or three times out of the ten years he worked for Appellee (an average of, at the most, one recommendation every three years), and Appellant Briddell's hiring recommendations were followed only four times out of the thirteen-and-a-half years he worked for Appellee (again, an average of one recommendation every three years). (See A-0128, A-0189.) Appellant's hiring suggestions were infrequent. This frequency is determinative of whether their hiring suggestions were given any "particular weight." See 29 C.F.R. § 541.105.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| WILLIE DAVIS, JR., <br> NATHANIEL BRIDDELL, <br> JOSEPH GARRISON, <br> LARRY E. GIBBS, <br> ROY H. WALTERS, <br><br> Appellants <br><br> v. <br><br> MOUNTAIRE FARMS, INC., a Delaware Corporation; <br> MOUNTAIRE FARMS OF DELMARVA, INC., a Delaware Corporation; <br> and MOUNTAIRE FARMS OF DELAWARE, INC., all Delaware corporations, <br><br> Appellees. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Docket No. 05-3982 <br> ) District Court No. 04-0414 (KAJ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## CERTIFICATE OF SERVICE

I, Jeffrey K. Martin, Esquire, do hereby certify that on May 19, 2006, I filed an original and three copies of *Plaintiffs' Letter Brief* with the Clerk of the Court by hand-delivery with a copy to the following attorney-of-record below by first-class mail:

Arthur M. Brewer, Esquire
Laura Pierson Scheinberg, Esquire
Shawe & Rosenthal, LLP
Sun Life Building, 11th Floor
20 South Charles Street
Baltimore, MD 21201

MARGOLIS EDELSTEIN

/s/ Jeffrey K. Martin
_____
JEFFREY K. MARTIN
*Attorney for Appellants*
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 – phone
(302) 777-4682 – fax