## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

WILLIE DAVIS, JR., NATHANIEL BRIDDELL, )
GEORGE W. FEDDIMAN, JOSEPH GARRISON, )
LARRY E. GIBBS and ROY H. WALTERS, )
                                           )
ALL SIMILARLY-SITUATED CURRENT AND )
FORMER EMLOYEES OF MOUNTAIRE )
FARMS, INC., MOUNTAIRE FARMS OF )
DELMARVA, INC., and MOUNTAIRE FARMS )
OF DELAWARE, INC., )
                                           )
             Plaintiffs, )
                                           )
      v. )
                                           )
MOUNTAIRE FARMS, INC., )
MOUNTAIRE FARMS OF DELMARVA, INC., )
and MOUNTAIRE FARMS OF )
DELAWARE, INC., all Delaware corporations, )
                                           )
             Defendants. )

C. A. NO. 04-0414-SLR

JURY TRIAL DEMANDED

COLLECTIVE ACTION

## PROPOSED PRETRIAL ORDER

### (1)    THE NATURE OF THE ACTION

Plaintiffs are five current or former employees of Mountaire Farms of Delmarva, Inc.

located in Selbyville, Delaware. They were each employed or continue to be employed as a

Crew Leader for Defendant. This is an action for overtime brought under the Fair Labor

Standards Act. The issues have been narrowed by the Third Circuit Opinion dated July 20, 2006

and this Court's Memorandum Opinion dated May 8, 2008.

Plaintiffs also assert a violation of a State cause of action under the Wage Payment and

Collection Act, 19 Del. C. §1101 et seq. The June 28, 2005 Memorandum Opinion found that

the Wage Act claim must fail because "Plaintiffs have not established that they are non-exempt

under the FLSA." It is Plaintiffs' position that the Wage Act claim is valid if the jury finds that

Plaintiffs are non-exempt. Defendant submits that the State cause of action is derivative of the federal claim and need not be separately addressed. The earlier dismissal of the State cause of action was not appealed.

**(2)    FEDERAL JURISDICTION**

The Fair Labor Standards Act, 29 U.S.C. § 216 gives the Court jurisdiction over claims for unpaid overtime.

**(3)    ADMITTED FACTS WHICH REQUIRE NO PROOF**

1.    Plaintiffs are residents of the States of Delaware and/or Maryland who are or were employed by Mountaire Farms of Delmarva, Inc.

2.    At all relevant times hereto, Mountaire Farms of Delmarva, Inc., met the test for enterprise coverage under the Fair Labor Standards Act.

3.    Plaintiff, Willie Davis, Jr., is an individual residing at P.O. Box 1026, Millsboro, Delaware, 19966. He was employed as a Crew Leader from April 26, 2001 until December 30, 2003.

4.    Plaintiff, Nathaniel Briddell, is an individual residing at 14544 Jackson Boulevard, Easton, Maryland 21822. He was employed as Crew Leader from 1989 to April 20, 2003.

5.    Plaintiff, Joseph Garrison, is an individual residing at Route 4, Box 4E, Frankford, Delaware 19945. He was employed as a Crew Leader from 1999 to July 21, 2004.

6.    Plaintiff, Larry E. Gibbs, is an individual residing at Route 1, Box 96B, Frankford, Delaware, 19945. He was employed as a Crew Leader from 1994 to date.

7.    Plaintiff, Roy H. Walters, is an individual residing at RD 1, Box 184, Dagsboro, Delaware 19939. He was employed as a Crew Leader from October 8, 2000 to date.

8.      Defendant, Mountaire Farms of Delmarva, Inc., is an Arkansas Corporation.

9.      Defendant is engaged in the production, processing and distribution of poultry products for consumers.

10.     Plaintiffs have/had been classified as "exempt" from overtime by Defendants pursuant to the Fair Labor Standards Action ("FLSA") during their employment as Crew Leaders with Defendants.

11.     Defendant has not paid overtime to the Crew Leaders, based on its position that they are exempt.

12.     Defendant is aware of the overtime regulations governed by the FLSA and applicable regulations and standards for determining same

13.     Plaintiffs were/are required to travel daily to various locations to transport (i.e. pick up and return home) the "catchers" to the farm(s) to which they are assigned each day.

14.     Crew Leaders are employed to supervise other employees known as chicken catchers who travel to various growers' farms to catch and crate chickens to be sent to the Mountaire Processing Plant.

15.     As part of their job responsibilities, the Crew Leaders are required to pick up each of seven or eight crew members at their homes, transport the crew to the farms where the chickens are harvested, and then transport the crew members back to their homes.

16.     The crew consists of chicken catchers and a forklift driver.

17.     The Crew Leaders have other responsibilities for directing the crew's work including making sure that the crew arrives at a farm on time, checking in with the grower, checking the chicken houses for pre-catch dead birds and damage, dividing houses into sections to facilitate the catching process, directing the placement of ventilation fans, monitoring the

3

catching process to prevent any smothers, checking that the proper number of birds are placed in each transport cage, ensuring that the cages are uniformly stacked in the Live Haul trucks and filling out farm tickets to send with the Live Haul drivers to the plant.

18.    Mountaire's written job description for Crew Leaders does not include hiring and firing. [453 F.3d at 556]. This is not stipulated by Defendant.

19.    The Crew Leaders occasionally issue disciplinary warning "write-up" forms to catchers for certain listed violations, e.g., failing to timely notify them that the catcher will not be working on a given day. [453 F.3d at 556]. This is not stipulated by Defendant, because they do it more than occasionally.

20.    The crew transportation part of the Crew Leader's responsibilities takes anywhere from two to six hours per day in addition to their work at the farms. [453 F.3d at 556]. This is not stipulated by Defendant.

21.    Mountaire has refused to pay any overtime wages to the Crew Leaders because they claim that the Crew Leaders are "exempt" executive employees who are not entitled to overtime compensation. [453 F.3d at 556]. This is not stipulated by Defendant because of its phrasing.

22.    The audit review dated March 21, 2001 prepared by Mountaire as a result of Department of Labor Audit notes that Crew Leaders (who were then still hourly paid) should be receiving overtime and that house-to-house travel is compensable for hours worked. [453 F.3d at 556]. This is not stipulated by Defendant.. .

23.    Mountaire concedes that the Crew Leaders' duties and responsibilities did not change after they switched to a salaried status. [453 F.3d at 556]. This is not stipulated by Defendant.

24.    In July 2002, Plaintiffs became salaried employees; however, their duties remained the same. [5/8/08 Memorandum Opinion at 2] [1] This is not stipulated by Defendant.

25.    Plaintiff, Willie Davis, was never salaried and after being paid for piece rates, he became an hourly employee. [2] This is not stipulated by Defendant.

26.    During the period in question, the Crew Leaders are or were compensated on a salary basis on a rate not less than $455 per week exclusive of board, lodging and other facilities.

27.    Plaintiffs' primary duty was/is management of a customarily recognized department of Mountaire.

28.    Plaintiffs customarily and regularly direct or directed the work of two or more other employees.

29.    Mountaire admits that it must pay overtime to each of the Crew Leaders from June 18, 2001 through June 2002 after acknowledging this in its Audit Review. This is not stipulated by Defendant.

## (4)    ISSUES OF FACT THAT REMAIN TO BE LITIGATED

### A.    Plaintiffs' Statement of the Issues:

1.    Whether Plaintiffs have/had the authority to hire or fire other crew members or suggestions and recommendations as the hiring, firing, advancement, promotion or any other change of status of other crew members are given particular weight.

---

[1] While Defendant does not agree that these are "admitted facts which require no proof," these "Statements of Facts" have been set forth by the Third Circuit (453 F.3d at 556) and by this Court in its May 8, 2008 Memorandum Opinion at page 2. (Footnote 1 references Paragraphs 18 through 24 above).

[2] While Defendant also objects to this being an "admitted fact", it has never been an issue and Defendant has provided no evidence to show that Plaintiff, Willie Davis, ever worked at Mountaire as a salaried Crew Leader.

2.      Whether Defendant has a good faith defense for failure to pay overtime to the Crew Leaders. **Defendant's response**: This is an issue of law for the Court to decide under 29 U.S.C. § 260.

3.      Whether Defendant knew or should have known that overtime should have been paid on or before June 2001 and thereafter. **Defendant's response:** The standard for a willful violation is knowledge or reckless disregard. The lawsuit was filed 6/21/04. The two year remedy period starts 6/22/02. A finding of a willful violation would extend the period by one year to 6/21/01. 29 U.S.C. § 255. Defendant submits that is entitled to judgment as a matter of law on this issue, since the only test for the exemption it is alleged to have violated did not come into effect until August 23, 2004.

4.      Whether Mountaire was aware of the FLSA's requirements regarding exemptions in 2001 and took no affirmative action to comply with them.   Alverez v. IBP, Inc. **Defendant's response**:  See Defendant's comment to item 3.

5.      Defendant to provide to the Plaintiffs and the Court with all of the farm times for each of the five Plaintiffs from June 21, 2001 to the present or until such time as the Crew Leader left employment with Mountaire as a Crew Leader. **Defendant's response**.  This is not an issue of fact.

**B.      Defendant's statement of the issues for the jury:**

1.      Whether each Plaintiff was an employee who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.  29 C.F.R. §541.100.

2.      If the jury finds for Plaintiffs, how many hours per week did the Plaintiff work?

(The parties agree that if there is a finding of liability, they can compute backpay based on the jury's findings as to the number of hours worked.)

      3.        If the jury finds for Plaintiffs, whether the violation was willful? 29 U.S.C. § 255.

## (5)    ISSUES OF LAW THAT REMAIN TO BE LITIGATED

### A.    Plaintiffs' statement:

      1.        Can Defendants' good faith defense on the basis of the initial Summary Judgment Opinion be defeated by the reversal by the Third Circuit?

      2.        Computation of back pay should be done by arriving at an hourly wage based upon the number of hours set forth by Defendant as the hours worked to justify each Plaintiffs' salary (except Willie Davis who is not salaried).

      3.        Did Mountaire act in good faith through its duty to investigate potential liability? (Leach v. Johnston, Washington v. Miller, Reeves v. ITT)

      4.        Did Mountaire show a lack of good faith by knowing or having reason to know that its conduct was subject to the FLSA? (Reeves v. ITT)

      5.        Did Mountaire have reasonable grounds to believe that it was not in violation of the FLSA?

      6.        Did Mountaire know or show reckless disregard for the issue of whether the employer's conduct was prohibited under the FLSA thereby constituting "willful" conduct? "Willful" is considered synonymous with "voluntary", deliberate and intentional? (McLaughlin v. Richland Shoe Co.; Wales v. Jack and Berry, Inc.)

      7.        Was Mountaire's conduct willful if Mountaire was aware of the FLSA's requirements and took no affirmative action to comply with them? (Alverez v. IBP, Inc.)

### B.    Defendant's statement:

If the jury finds for Plaintiffs, whether the Defendant is entitled to relief from liquidated damages on the grounds that it acted in good faith and had reasonable grounds for believing that its act or omission was not a violation of the Fair Labor Standards Act? 29 U.S.C. § 260. This is an issue for the Court to decide.

There may be a legal issue concerning the method of computing backpay, if the jury finds liability. Plaintiff has submitted that the Plaintiffs' backpay should computed by dividing the Crew Leaders' weekly wages by 40 to arrive at a the "regular rate," and then paying 1.5 times the "regular rate" for hours in excess of 40. Defendant submits that backpay should be computed by dividing the Crew Leaders' weekly wages by the number of hours worked in the week to arrive at the "regular rate," and then paying .5 times the "regular rate" for hours in excess of 40.

## (6)    LIST OF PRE-MARKED EXHIBITS WHICH EACH PARTY INTENDS TO OFFER AT TRIAL WITH OR WITHOUT OBJECTION

### A.    Plaintiff's Exhibits:

| Plaintiff's Exhibit Number | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| PX 1 | United States Department of Labor Audit – May 25, 2000 (B0099 – B0113) | | |
| PX 2 | Department of Labor Audit Review prepared by Mountaire on March 21, 2001 (D00320, D00321) | Limited relevance. Shows good faith by Mountaire. References to salary not relevant to issues in dispute. | |
| PX 3 | Mountaire Live Haul Guidelines – (Garrison Exhibit Number 2) (A00889-A00892) | | |

| | | | |
|---|---|---|---|
| PX 4 | Mountaire Position Content Summary for Live Haul Crew Leader Roy Walters (D00350-D00354) | | |
| PX 5 | Letter from Jeffrey K. Martin to Phillip Owen at Mountaire dated February 27, 2004. | | |
| PX 6 | Final Warning to Roy Walters dated 3/2/04 (D00271) | | |
| PX 7 | Letter from Jeffrey K. Martin to Arthur M. Brewer dated March 3, 2004 | Deals with retaliation claim that was dismissed 6/28/05. | Shows discriminatory animus following presentation of a claim |
| PX 8 | Letter from Arthur M. Brewer, Esquire to Jeffrey K. Martin, Esquire dated March 5, 2004 | | |
| PX 9 | Mountaire's Crew Leader Analysis (D00355-D00356) | | |
| PX 10 | Mountaire's calculation of Crew Leaders' time from 8/05/00 through 8/31/02 (D00358) | | |
| PX 11 | Crew Leaders' Earning Summaries from 2000-2003 (D00343) | | |
| PX 12 | Mountaire Live Haul Activity Report for the week ending December 13, 2003 (D00399) | | |
| PX 13 | Mountaire Application for Employment (D00344-D00347) | | |
| PX 14 | W2's and Pay Stub(s) for Plaintiff | | |

| | | | |
|---|---|---|---|
| | Willie Davis, Jr. | | |
| PX 15 | W2's and Pay Stub(s) for Plaintiff Nathaniel Briddell | | |
| PX 16 | W2's and Pay Stub(s) for Plaintiff Joseph Garrison | | |
| PX 17 | W2's and Pay Stub(s) for Plaintiff Larry E. Gibbs | | |
| PX 18 | W2's and Pay Stub(s) for Plaintiff Roy H. Walters | | |

Plaintiff reserves the right to use any exhibits on Defendant's list.  Additional exhibits not listed above may be offered for rebuttal purposes with the Court's permission.  Plaintiff reserves the right to use blow-ups for any demonstrative exhibit admitted into evidence by the Court.

**B.      Defendant's Exhibits:**

### DEFENDANT'S EXHIBITS

| Exhibit | Description | Plaintiffs' Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| 1 | Briddell Dep. 45-47, 109 | FRE 613 | They are admissions. Rule 801. |
| 2 | Gibbs Dep. 44-46, 53, 78, 79-89 | FRE 613 | They are admissions.. Rule 801. |
| 3 | Garrison Dep. 56-59 | FRE 613 | They are admissions. Rule 801. |
| 5 | Walters Self Eval.  Dep. Ex 6 | | |
| 6 | Live Haul Catcher Authorization Form (old version). Mount.00001 | | |
| 7 | Live Haul Authorization Form (new version).  Mount.00002 | | |
| 8 | Hire Report (six pages).  Mount.00003 | | |
| 9 | Termination Report (eight pages). Mount.00009. | | |
| 10 | Pay Sheets for Roy Walters crew as of 2000 and 2008 (two pages). | | |

| | | | |
|---|---|---|---|
| | Mount.00017. | | |
| 11 | Pay Sheets for Larry Gibbs crew as of 2000 and 2008 (two pages)Mount00019. | | |
| 12 | Crew Leader incentive payments for Plaintiffs (one page)Mount.000021. | FRE 802 | Summary of business record. Rule 1006 |
| 13 | Summary of Crew Leader incentive payments (one page).Mount00022. | FRE 802 | Summary of business records. Rule 1006. |
| 14 | Forklift Operator Promotion (one page).Mount00023. | FRE 802 | Summary of business records. Rule 1006 |
| 15 | DEDO supervisor training. Mount.00024. | | |
| 16 | Recruitment Efforts for Non-Catchers pre 2005. Mount.00025. | FRE 802, 402 | Summary of business records, Rule 1006. Relevant to hiring authority |
| 17 | Recruitment Efforts for Non-Catchers 2006-present. Mount.00026. | FRE 802, 402 | Summary of buiness records. Rule 1006. Relevant to hiring authority |
| 18 | Linwood Pitts termination papers (two pages)(James White crew). Mount.00027 | Second Page FRE 802 | Public record, 803(8) |
| 19 | Cancel and Trinidade termination papers (two pages)(Rogelio Barrios crew). Mount.00029. | | |
| 20 | Warning notices signed by Garrison (three pages). Mount.00031. | | |
| 21 | Warning notices signed by Gibbs (four pages). Mount.00034. | | |
| 22 | Warning notices signed by Walters (15pages). Mount.00038 | | |
| 23 | Report Regarding Drive time. Mount.00053/ | FRE 802 | Rule 803(1), 803(5), |
| 24 | Farm Time for Crews. Mount.00054. | FRE 802 | Rule 1006. |
| 25 | Crew Leaders Salaries. Mount.00054 | | |
| 26 | Summary of farm time 2001-2002. Mount.00056 | FRE 802 | Rule 1006. |
| 27 | Owen FLSAresearch. Mount00057. | | |

| 28 | Crew Leader 2002 hours worked. D00359, D00362-366 | FRE 802 | Rule 1006. |
|----|----|----|----|
| 29 | Crew Leader Job Analysis.  D00357 | FRE 802 | |
| 30 | Average of farm time chart. Mount. 00074 | FRE 802 | Rule 1006. |

Defendant reserves the right to use any exhibits on Plaintiffs' list. Additional exhibits not listed above may be offered for rebuttal purposes with the Court's permission. Defendant reserves the right to use blow-ups for any exhibit admitted into evidence by the Court.

## (7)    NAMES AND ADDRESSES OF ALL WITNESSES A PARTY INTENDS TO CALL.

### A.    For Plaintiffs:

Willie Davis, Jr., P.O. Box 1026, Millsboro, DE  19966

George W. Feddiman, Route 2, Box 12, Selbyville, Delaware 19975

Joseph Garrison, Route 4, Box 4E, Frankford, Delaware 19945

Larry E. Gibbs, Route 1, Box 96B, Frankford, Delaware 19945

Nathaniel Briddell, 14544 Jackson Boulevard, Eden, Maryland 21822

Roy H. Walters, RD1, Box 184, Dagsboro, Delaware 19939

Doug Lynch, Live Haul Manager, Mountaire Farms

David Nuse, Assistant Live Haul Manager, Mountaire Farms

Susie McCauley, former Live Haul Department Assistant, Mountaire Farms

Al Zlotorzynski, Human Resources Manager, Mountaire Farms

Phillip Owen, Human Resources Director, Mountaire Farms

Mike Terrell, Mountaire Farms

Plaintiffs reservethe right to call in their case any witness identified by Defendant.

Plaintiffs object to the use of designated portions from Plaintiffs' deposition transcripts.

Plaintiffs are prepared to testify and may be examined with regard to the issues set forth in the

designated portions of the deposition transcripts.

**B.    For Defendant:**

Doug Lynch, Live Haul Manager, Mountaire Farms

David Nuse, Assistant Live Haul Manager, Mountaire Farms

Susie McCauley, former Live Haul Department Assistant, Mountaire Farms

Al Zlotorzynski, Human Resources Manager, Mountaire Farms

Phillip Owen, Human Resources Director, Mountaire Farms

## (8)    BRIEF STATEMENT OF WHAT PLAINTIFFS EXPECT TO PROVE IN SUPPORT OF CLAIMS

Plaintiffs are/were employed by Defendant Mountaire as Crew Leaders supervising chicken catchers and a forklift operator. Per company policy, they must pick up their crew members at their homes before reporting to the poultry farm where the chickens will be caught and crated. At the completion of the farm time whether it involves one or more farms, Plaintiffs must transport their crew back to their homes.

Plaintiffs have never received any overtime compensation to compensate them for working more than 40 hours per week in any one week. Instead, Mountaire has considered Plaintiffs to be exempt employees who are ineligible for overtime compensation.

Plaintiffs will demonstrate that they are not exempt employees and specifically do not meet the executive exemption because they have no authority to hire or fire their crew nor are they able to make recommendations regarding a change in status of their crew that is given particular weight by their supervisor or manager. Plaintiffs will show that the transportation time alone for their crew is five to six hours per day and that coupled with the farm time they work and have worked approximately 65 hours per week. Plaintiffs are seeking payment of the overtime hours worked at the rate of time and a half of their hourly rate (reduced from the salary

rate except with Willie Davis who has never been salaried). Plaintiffs are also seeking liquidated damages in the amount equal to the unpaid overtime as well as attorney's fees.

Plaintiffs will show that Mountaire was aware in 2001 as a result of a U.S. Department of Labor audit and the subsequent audit review done by Mountaire that the Department of Labor determined that the Crew Leaders' time to transfer the crews was compensable time. Therefore, Mountaire's failure to recognize Crew Leaders as non-exempt employees eligible for overtime compensation was willful.

Plaintiffs take strong issue with over twenty statements made by Defendant in Section 9 below. Most of these facts have never adduced through pretrial discovery and to the contrary, these purported facts are contrary to sworn statements on the record.

The Audit Review conducted by Mountaire in March 2001 (PX 2) acknowledges that, "Crew leaders should also be paid OT because they are not salary." Mountaire has admitted that it has not paid the Crew Leaders overtime even after they became salaried employees (except for Willie Davis who was never a salaried employee) In June 2002. Therefore, Mountaire admits that they owe the Crew Leaders overtime compensation from June 21, 2001 through June 2002."

## (9)   BRIEF STATEMENT OF WHAT DEFENDANT INTENDS TO PROVE AS DEFENSES

**Authority to hire and fire etc.**

There is frequent turn-over among chicken-catchers. When a Crew Leader has a vacancy in his crew, he finds someone to fill the vacancy. Often, the replacement is a relative or friend of the Crew Leader or a crew member. The Crew Leaders wants to make sure that the members of the crew live close together so that it is easy to pick them up and drop them off.

When the Crew Leader has found an applicant, he takes the applicant to the Live Haul office. The applicant fills out a job application form. He may have gotten the form earlier from the Crew Leader and filled it out. Some of the Crew Leaders carry applications in their trucks.

Susan McCauly, the Administrative Assistant in the Live Haul office, signs a live haul authorization form. She does not require the Crew Leader to explain or justify the selection decision. The purpose of the form is to inform the HR Department that it is authorized to process the application. McCauly does not interview the applicant. McCauly does not approve or disapprove applicants. If McCauly is tied up or not there, Doug Lynch, the Live Haul Manager, signs the form. Lynch does not interview the applicant. Lynch does not approve or disapprove applicants. The Live Haul Department will comment on an applicant only if the applicant was previously terminated by the Company. In that case, the Lynch will talk to the Crew Leader about the situation. The Crew Leader makes the final decision. This happens rarely.

After the form is signed, the Crew Leader takes the applicant to the Human Resources Department. The HR Department checks the applicant's ID, sends the applicant for a medical test and drug screen, and gives the applicant a TB skin test. The HR Department does not interview the applicant. Two days later, the Crew Leader brings the applicant back for the TB test to be inspected. If the applicant passes the TB test, the HR Department verifies the ID with the government and gives the applicant and ID badge. The applicant is now ready to work.

Sometimes, an applicant is sent to the Live Haul office by a Crew Leader without the Crew Leader being there. In that case, McCauly or Lynch calls the Crew Leader to see if it is ok to sign the Live Haul Authorization form. On rare occasions, the Live Haul Departments gets a

walk-in applicant who has not been in touch with a Crew Leader. In that case, the Department takes the applicant's telephone number and gives the number to a Crew Leader.

The Company does not hire chicken catchers and assign them to a Crew Leader to work. Everyone who is hired is initially selected by the Crew Leader. No one is hired without being selected by a Crew Leader. By way of comparison, the HR Department recruits for other jobs, interview and selects applicants. It does not perform those functions for chicken catchers.

The Crew Leaders have authority to discipline employees. No prior approval is required. The Crew Leaders also have authority to fire employees. They typically check with Dave Nuse, who makes sure that the Crew Leader is on solid ground, because of the Union contract. But Nuse has no way of knowing about issues unless Crew Leader tells him. The Crew Leader initiates termination and his say so is accepted. Nuse has never told a Crew Leader not to fire someone. Doug Lynch signs termination forms, based on the say so of the Crew Leader.

Crew Leaders may transfer a crew member from one crew to another to solve shortage problems. Both Crew Leaders would have to agree. The Crew Leaders work this out among themselves. No paperwork is involved.

Crew Leaders also select crew members for promotion to fork lift driver. The forklift drier has to pass a test. Normally, if they are selected, they pass the test and receive the promotion.

In addition to their salaries, the Crew Leaders receive a monthly performance bonuses, based on their job performance and the performance of their crew.

**Hours worked.**

To determine time spent in transporting crew members, existing crew members and crew leaders were identified and addresses determined. On Tuesday, March 9, 2004, Live Haul

Supervisor, Dave Nuse, and Human Resources Manager, Al Zlotorzynski, drove to each crew leader's and catcher's home address. From the crew leader's home, they drove to each catcher's address, mileage was tracked, and then totaled for each crew. Drive time of 60 minutes to farms is included in each result (average driving distance to each farm is 55 miles).

One-way drive time results by crew leader are as follows:

- Joe Garrison              2 hours 23 minutes
- Roy Walters               1 hour  52 minutes
- Francisco Sarabia         1 hour  35 minutes
- Terry Morris              1 hour  35 minutes
- Larry Gibbs               1 hour  33 minutes
- Enrique Sarabia           1 hour  25 minutes
- Francisco Hernandez  could not locate home address

### Non-Willfulness

The Company did not commit a willful violation. The "hire and fire" test did not become applicable until August 23, 2004. On June 28, 2005, the District Court entered judgment in the Company's favor. That decision was reversed and remanded July 20, 2006. At all relevant times, the Company has had a reasonable basis for believing that its Crew Leaders satisfied the "hire and fire" test.

### Liquidated damages

The "hire and fire" test did not become applicable until August 23, 2004. On June 28, 2005, the District Court entered judgment in the Company's favor. At all relevant times, the Company has acted in good faith and has had reasonable grounds for believing that the Crew Leaders satisfied the "hire and fire" test.

## (10)    STATEMENTS BY COUNTERCLAIMANTS/CROSS-CLAIMANTS

Not applicable.

**(11)    AMENDMENTS TO PLEADINGS**

Not applicable.

**(12)    CERTIFICATION OF GOOD FAITH SETTLEMENT NEGOTIATIONS**

**Plaintiffs statement**:  The Plaintiffs have attempted for years to try to resolve this matter.

Defendant recently unilaterally cancelled mediation and advised the Court that this matter can

not be settled.  Hence, Defendant did not engage in good faith settlement negotiations.

**Defendant's Response**:  Defendant submits that it has cooperated, in good faith, with Magistrate

Judge Thynge who was assigned to conduct mediation in this case..

**(13)    OTHER MATTERS**

**A.    Jury Verdict Form**

The parties will submit a Proposed Jury Verdict Form.

**B.    Voir Dire Questions**

The parties will submit Proposed Voir Dire Questions.

**C.    Jury Instructions**

The parties will submit Proposed Jury Instructions.

**D.**    Plaintiffs request that Defendant produces farm time records for the entire applicable

period from June 21, 2001 through present and/or through the end date for the three Crew

Leaders who are no longer Crew Leaders at Mountaire.  Defendant submits that it has produced

the records in question.

**E.**    Defendant agreed to produce memoranda referenced by Phillip Owen in his deposition at

pages 31 through 33.  Although requested again, these memoranda have not been produced.  In

addition, in Mr. Owen's deposition he referenced a written analysis of the Crew Leader drive

18

times and that has also not been produced although requested. Defendant submits that it has produced the records in questions.

F.      Mountaire has not yet designated the representative for Mountaire who will attend trial. This has been requested by Plaintiffs' counsel, but there has been no response. Defendant responded by stating that it has not decided on its corporate representative yet.

**G.      Motions for Judgment by Defendant**

To preserve its contention, Defendant intends to move for judgment concerning Garrison, Briddell and Davis on the grounds that they were no longer employed as of August 23, 2004 and that their status should be assessed under the "short" test.

To preserve its contention, Defendant intends to move for judgment on all claims predating August 23, 2004.

Similarly, Defendant intends to move for judgment on the willfulness issue on the grounds that the additional year of limitations affected by this issue is June 22, 2001 to June 22, 2002. During that period, Defendant could not have willfully violated a test that did not come in to effect until August 23, 2004.

**H.      Local Counsel**

Plaintiffs request that local counsel actively participate in this trial. Defendant requests that local counsel be excused from attending the trial after jury selection.

**I. Reference to "Executive"**

Defendant submits that the title of the exemption at issue, the "Executive Exemption" is misleading. Defendant proposes that the term not be used at trial, and that the term "exempt supervisor" be used instead. In the alternative, the jury should be instructed that the term

"executive" is legal terminology, which applies to many working supervisors, and does not require that the supervisor work in office or wear business attire.

   **Plaintiffs' Response**: Plaintiffs object to Defendant's attempt to change the language of the law that governs this case. Plaintiffs further submit that this matter would be have been appropriately addressed by way of a Motion in Limine that would have permitted Plaintiffs to make further responses to Defendants' reasons proffered for this change.

## J.  Order of presentation

   Defendant submits that because the only liability issue is an affirmative defense, Defendant should go first in the order of presentation.

   **Plaintiffs' Response**: Plaintiffs are content with Defendant presenting its case first so long as the jury is advised that Defendant has the burden of proof with regard to the determination that the Crew Leaders have/had the authority to hire and fire their crew and/or the ability to make recommendations as to the hiring, firing, advancement, promotion or any other change of status that is given particular weight. In the alternative, Plaintiffs respectfully request that they be permitted to initially present evidence before Defendant has the opportunity to rebut same or to present its own evidence. Plaintiffs further submit that this is an issue that should have been presented by Motion in Limine so that both sides could consider their relative positions and present authority in support of same.

## K.  Witness

   Plaintiffs have requested that Mountaire make available at trial without necessity of a subpoena, its Human Resources Director, Phillip Owen. Plaintiffs have had no response to their requests. Defendant states that it has not made a determination as to if and when it will call Phillip Owen.

(14)    **TRIAL TIME ESTIMATES**

Trial is scheduled to begin with jury selection on August 5, 2008.  The trial will continue

from August 6 through August 8.


**THIS ORDER SHALL CONTROL THE SUBSEQUENT COURSE OF THE ACTION UNLESS MODIFED BY THE COURT TO PREVENT MANIFEST INJUSTICE.**


**MARTIN & WILSON, P.A.**                          **SHAWE & ROSENTHAL**


**JEFFREY K. MARTIN, ESQ.(ID#2407)**              **ARTHUR M. BREWER, ESQ.**
**TIMOTHY J. WILSON, ESQ. (ID #4323)**            **ERIC HEMMENDINGER, ESQ.**
1508 Pennsylvania Avenue                          Sun Life Building, 11th Floor
Wilmington, DE  19806                             20 S. Charles Street
(302) 777-4680                                    Baltimore, MD  21201
*Attorneys for Plaintiff*                          (410) 752-1040
                                                  *Attorneys for Defendant*

                                                  **CONNOLLY, BOVE, LODGE & HUTZ, LLP**


                                                  **MATTHEW F. BOYER, ESQ.**
                                                  **(ID #2564)**
                                                  1007 North Orange Street
                                                  P.O. Box 2207
                                                  Wilmington DE 19899
                                                  (302)884-6585
                                                  *Attorney for Defendants*

**IT IS SO ORDERED,** this ___ day of _____, 2008.

_____
J.