**EXHIBIT 7**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1026831 (D.Del.)

Page 1

Cuffee v. The Dover Wipes Co.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Corinthian T. CUFFEE Plaintiff,
v.
THE DOVER WIPES COMPANY and The Proctor
& Gamble Company, Defendants.
**No. Civ. 03-276-SLR.**

April 27, 2005.

Corinthian T. Cuffee, Felton, DE, pro se.
John M. LaRosa, Law Office of John M. LaRosa, Stephen J. Neuberger, Thomas S. Neuberger, The Neuberger Firm, P.A., Wilmington, DE, for Plaintiff.
Barry M. Willoughby, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On March 12, 2003, plaintiff filed this action alleging employment discrimination based on age, gender, and race in violation of Title VII, 42 U.S.C. § 1981 and the ADEA, a violation of the Equal Pay Act ("EPA"), and retaliation for protected activities in violation of Title VII and 42 U.S.C. § 1981. (D.I. 3 at 11) On September 7, 2004, this court granted in part and denied in part defendants' motion for summary judgment, leaving only plaintiff's claims under the ADEA, the EPA, Title VII and § 1981 for trial. (D.I.52) A four day jury trial commenced on October 12, 2004. The jury returned a verdict for defendants, finding that defendants had not discriminated against plaintiff based on his race and had not violated the EPA.[FN1] (D.I.104)

FN1. Plaintiff did not assert an ADEA claim at trial.

The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Currently before the court are plaintiff's motions for a new trial.[FN2](D.I.112, 113, 117)

FN2. Mr. Cuffee supplemented these motions with letters in which he asserts that relevant evidence was not presented at trial and he was inadequately represented at trial. (D.I.109, 117) A civil litigant does not have a constitutional right to effective assistance of counsel. *SeeKushner v. Winterthur Swiss Ins. Co.,* 620 F.2d 404, 408 (3d Cir.1980). Therefore, this court declines to grant Mr. Cuffee a new trial on the grounds that he is displeased with his representation.

II. PLAINTIFF'S *BATSON* CHALLENGE

A. Background

Prior to voir dire, the parties were given information on prospective jurors that included the juror's identification number, name, address, age, marital status, occupation and employer. During voir dire, four prospective jurors were removed for cause. (D.I. 111 at 28) Fourteen prospective jurors were then randomly pooled. (*Id.*) Each party was allowed to exercise three peremptory challenges to remove prospective jurors from this pool; the eight remaining were impaneled as the jury.[FN3]

FN3. Upon agreement of the parties, one of the jurors was excused before the trial began, but after all of the prospective jurors had been dismissed. (D.I. 111 at 40) Therefore, this trial had seven jurors, instead of eight. (*Id.*)

While the parties were exercising their peremptory challenges, plaintiff requested a sidebar to make a *Batson* challenge. (*Id.* at 29) Defendants had struck

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1026831 (D.Del.)

Page 2

Juror No. 8, a 58 year old man with some college education. Juror No. 8's occupation was listed as "factory worker" at Baltimore Aircoil Company. Juror No. 8 was the only African American in the pool of fourteen prospective jurors. (*Id.*) Plaintiff argued that striking Juror No. 8 was discriminatory, as plaintiff was African American and so was Juror No. 8. (*Id.*)Defendants argued that Juror No. 8 was struck because he was a factory worker and they did not want any factory workers on the jury. (*Id.*) Defendants' attorneys asserted that they had made the decision to strike Juror No. 8 before getting to the courtroom that day and based solely on the biographical information provided to them. (*Id.*) In response, plaintiff argued he was "entitled to a hearing" on the issue of whether defendants' reasons were legitimate or merely pretext for discrimination. (*Id.*) This court declined to hold a separate hearing for the *Batson* challenge and, upon agreement of the parties, deferred the issue until after trial.[FN4](*Id.* at 30) In concluding the sidebar, the court stated, "[c]learly, defense counsel have come back with a legitimate nondiscriminatory reason."(D.I. 111 at 31)

> FN4. From defendants' post-trial briefs, the court infers that they do not think they agreed to defer the issue until after the trial. However, defendants' counsel explicitly stated, "I can defer it if the Court thinks it appropriate. I don't see a problem with that."(D.I. 111 at 30-31)

B. Discussion

Peremptory strikes are usually educated guesses based on the limited information about prospective jurors that is available to an attorney at the time. See*United States v. DeJesus,* 347 F.3d 500, 505 (3d Cir.2003). As such, "peremptory strikes are presumptively valid until it is shown that they were exercised on an unconstitutional basis, such as race or gender."*Id.* at 505-06.The Supreme Court has outlined a three part test for evaluating claims that a defendant used its peremptory challenges in violation of the Equal Protection Clause. *See id.* at 506

(citing *Hernandez v. New York,* 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). First, the party challenging a peremptory strike must make a prima facie showing that the strike was based on race. Second, if a prima facie case is established, then the burden shifts to the striking party to articulate a race neutral explanation for the strike. Third, the trial court must decide whether the party challenging the strike has carried its burden of proving purposeful discrimination. *Seeid.*However, when the striking party offers an explanation for its peremptory challenge before the court addresses the prima facie case " 'any issue regarding the existence of a prima facie showing of discrimination becomes moot....' " *Id.* at 506 (quoting *United States v. Uwaezhoke,* 995 F.2d 388, 392 (3d Cir.1993)).

*2 In this case, the issue of a prima facie case is moot because defendants presented their nondiscriminatory justification for striking Juror No. 8 before the court made a decision regarding plaintiff's prima facie case. Having already concluded that defendants' counsel presented a legitimate reason for challenging Juror No. 8, the issue remaining for this court is whether plaintiff has shown that defendants' justifications are mere pretext, i.e., the peremptory challenge was motivated by race.

Plaintiff's argument of pretext is based on the fact that Juror No. 8 was one of four jurors arguably identified as having "blue collar jobs"; [FN5] because defendants had choices, the fact that they chose to strike Juror No. 8, an African American, is suspect. Defendants have responded to this challenge by asserting that their underlying strategy was to strike jurors with occupations similar to plaintiff's, on the theory that such jurors might be overly sympathetic to plaintiff. Defendants assert that, based on the basic biographical information provided by the court, they had determined to strike Juror No. 8 before coming into the courtroom.

> FN5. The juror biographical information provided by the court to the parties included the following:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1026831 (D.Del.)

Page 3

Juror No. 8 was described as a male with some college education who worked as a "factory worker" for Baltimore Aircoil Company.

Juror No. 12 was described as a male with a high school education who worked as a "grounds worker" for the City of Dover.

Juror No. 20 was described as a male with a high school education who worked as a "pipefitter" with Local Union 74.

Juror No. 29 was described as a male with a high school education who was employed by McCarthy Tire Company.

There is no dispute that the three jurors struck by defendants were in fact blue collar workers employed in the private sector.[FN6] The court finds that defendants made valid inferences from the limited information available. Because the court concludes that plaintiff has failed to carry his burden of demonstrating that Juror No. 8 was struck because he was African American, his motion for a new trial on those grounds is denied. (D.I.112)

> FN6. As opposed to Juror No. 12, who was employed in the public sector.

III. ADMISSION OF EVIDENCE

A. Standard of Review

Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). The decision to grant or deny a new trial is within the sound discretion of the trial court and, unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *See Allied Chem. Corp. v. Darflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.,* 9 F.3d 282 (1993); *LifeScan Inc. v. Home Diagnostics, Inc.,* 103 F.Supp.2d 345, 350 (D.Del.2000) (citations omitted). *See also* 9A Wright & Miller, *Federal Practice and Procedure* § 2531 (2d ed. 1994) ("On a motion for new trial the court may consider the credibility of witnesses and the weight of the evidence."). Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly-discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations,* 953 F.Supp. 581, 584-85 (D.N.J.1997) (citations omitted). The court must proceed cautiously, mindful that it should not simply substitute its own judgment of the facts and the credibility of the witnesses for those of the jury. Rather, the court should grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. *See Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir.1991); *EEOC v. State of Del. Dep't of Health and Soc. Servs.,* 865 F.2d 1408, 1413 (3d Cir.1989).

B. Discussion

*3 Prior to the first day of trial, plaintiff objected to defendants' exhibits and evidence regarding their manager-technician job classification system. (D.I.96) This court admitted the evidence, finding that it was relevant to "a number of issues." (D.I. 111 at 3) In his motion for a new trial, plaintiff objects to the following admitted exhibits: [FN7]

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1026831 (D.Del.)

Page 4

> FN7. Plaintiff's motion also objects to defense exhibits 3, 20, 21, 22, 25, 26 and 32. According to court records, however, defense exhibits 20, 21, 22, 25 and 26 were not admitted. At trial, plaintiff did not object to the admission of defense exhibits 3 or 32; therefore, he has waived any objection to these two exhibits. (D.I. 111 at 170; D.I. 120 at 348)

> In plaintiff's letters supplementing his motions for a new trial, he argues that several pertinent documents were not admitted at trial by his counsel. (D.I.117) According to plaintiff, these documents would have supported his discrimination claims. (*Id.*) The court, however, finds no reason to grant a new trial simply based on the documents provided in plaintiff's letter.

1. Documentation of a salary increase of $6,500 for Sharene Lee. (DX 24)

2. Sharene Lee's compensation plan. (DX 23)

Plaintiff argues that the two documents at issue were irrelevant and too prejudicial to be admitted at trial.[FN8] Defendants argue that the documents were relevant to their defense to plaintiff's EPA claim, as the documents show that plaintiff was paid less than Mary Ann Varacalli due to a factor other than sex.

> FN8. "Relevant evidence" is evidence that has a "tendency to make the existence of any fact that is of consequence ... more or less probable than it would be without the evidence."Fed.R.Evid. 401 (2005). Relevant evidence can be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."Fed.R.Evid. 403 (2005).

The EPA prohibits employers from discriminating between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex [.]

29 U.S.C. § 206(d)(1). Defendants can rebut a plaintiff's claim of an EPA violation by showing the wage differential was attributable to something "other than sex." 29 U.S.C. § 206(d)(1); *see also, e.g.,Stanziale v. Jargowsky,* 200 F.3d 101, 108 (3d Cir.2000).

At trial defendants relied on the documents at issue, as well as other evidence, to show that they had two employment tracks, one for managers and one for technicians. Defendants argued that managers were paid more than technicians, and this differentiation was an integral part of their business structure. The court concludes that the documents objected to by plaintiff were relevant to defendants' arguments that a factor other than sex caused the discrepancy in pay. The documents are evidence of a manager's pay plan and support defendants' contention that it distinguished between managers and technicians.[FN9](D.I. 120 at 318-24)

> FN9. Plaintiff relies heavily on this court's statement in its memorandum opinion denying defendants' motion for summary judgment that a title system, such as defendants' manager/technician system, does not "in and of itself" explain the discrepancy in pay. Based on Third Circuit precedent, in order for defendants' motion for summary judgment to be granted, defendants had to show that the manager/technician distinction did "in fact explain the wage disparity."*Stanziale v. Jargowsky,*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1026831 (D.Del.)

Page 5

200 F.3d 101, 108 (3d Cir.2000). This court's finding that defendants' evidence was not sufficient to warrant summary judgment is not tantamount to finding that such evidence is irrelevant to defendants' burden under the EPA.

Plaintiff further argues that the evidence was unduly prejudicial, but does not describe how such evidence misled the jury. The court concludes that the jury was not prejudiced by the evidence. A substantial part of defendants' case was that there were two employment tracks. Defendants presented evidence that plaintiff never attempted to qualify as a manager, and that other technicians had been successful at becoming managers. The jury found that plaintiff and Varacalli performed equal work, but that they were paid differently due to a factor other than sex. This verdict is consistent with the substantial evidence presented by defendants that the separate employment tracks for technicians and managers accounted for the pay discrepancy. Therefore, the court finds the probative value of the evidence outweighed any prejudicial effect and plaintiff's motion for a new trial is denied.

*4 The court further declines to grant plaintiff a new trial based on plaintiff's generic argument that the testimonial evidence at trial was irrelevant and prejudicial, as plaintiff fails to cite the alleged inadmissible or prejudicial testimony.

V. CONCLUSION

Therefore, at Wilmington this 27th day of April, 2005;

IT IS ORDERED that plaintiff's motions for a new trial (D.I.112, 113) are denied.

D.Del.,2005.
Cuffee v. The Dover Wipes Co.
Not Reported in F.Supp.2d, 2005 WL 1026831 (D.Del.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.