**EXHIBIT 8**

```
 1                    - EXCERPTED TRANSCRIPT -

 2            IN THE UNITED STATES DISTRICT COURT

 3            IN AND FOR THE DISTRICT OF DELAWARE

 4                         - - -

 5   WILLIE DAVIS, JR.,              :  CIVIL ACTION
     NATHANIEL BRIDDELL, GEORGE      :
 6   W. FEDDIMAN, JOSEPH             :
     GARRISON, LARRY E. GIBBS        :
 7   and ROY H. WALTERS,             :
                                     :
 8   ALL SIMILARLY-SITUATED          :
     CURRENT AND FORMER              :
 9   EMPLOYEES OF MOUNTAIRE          :
     FARMS, INC., MOUNTAIRE          :
10   FARMS OF DELMARVA, INC.,        :
     and MOUNTAIRE FARMS OF          :
11   DELAWARE, INC.,                 :
                                     :
12                  Plaintiffs,      :
                                     :
13       vs.                         :
                                     :
14   MOUNTAIRE FARMS, INC.,          :
     MOUNTAIRE FARMS OF              :
15   DELMARVA, INC., and             :
     MOUNTAIRE FARMS OF              :
16   DELAWARE, INC. All Delaware     :
     corporations,                   :
17                                   :
                    Defendants.      :  NO. 04-0414 (SLR)
18

19                         - - -

20                            Wilmington, Delaware
                              Tuesday, August 5, 2008
21                            9:30 o'clock, p.m.

22                         - - -

23   BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J., and a jury

24                         - - -

25                            Valerie J. Gunning
                              Official Court Reporter
```

```
 1    APPEARANCES:
 2
              MARTIN & WILSON, P.A.
 3            BY:  JEFFREY K. MARTIN, ESQ. and
                   TIMOTHY J. WILSON, ESQ.
 4
 5               Counsel for Plaintiffs
 6
 7
 8            CONNOLLY, BOVE, LODGE & HUTZ, LLP
              BY:  MATTHEW F. BOYER, ESQ.
 9
10                    -and-
11
              SHAWE & ROSENTHAL
12            BY:  ARTHUR M. BREWER, ESQ. and
                   ERIC HEMMENDINGER, ESQ.
13                 (Baltimore, Maryland)
14
15               Counsel for Defendants
16                    - - -
17
18
19
20
21
22
23
24
25
```

```
 1                  (REPORTER'S NOTE:  The following is an excerpted
 2    transcript.)
 3                  MR. MARTIN:  Yes, your Honor.  May we approach?
 4                  (Sidebar conference held as follows.)
 5                  THE COURT:  This is a white noise -- who knows.
 6    I think we just shout over it.  I will leave it on.
 7                  Do you want to come closer so you don't have to
 8    shout quite that much?
 9                  MR. MARTIN:  Your Honor, I'd like to make a
10    Batson challenge as to the removal of No. 11, who was seated
11    in the 14th slot.  She is an African-American woman, who is
12    a financial analyst.  I don't really understand why she
13    would have been stricken by the defense other than for her
14    race.
15                  THE COURT:  I think the protocol is if there's
16    a reason other than race, you need to let me know what it
17    is.
18                  MR. HEMMENDINGER:  Can I confer for a second?
19                  THE COURT:  Sure.
20                  (Pause.)
21                  MR. HEMMENDINGER:  Your Honor, the strike was
22    based on her education.  It says she's a financial --
23    financial analyst here, but there was just high school
24    education indicated, and we were looking for jurors who had
25    some industrial experience rather than office experience, to
```

1  the extent we had any choices.

2      MR. MARTIN: Your Honor, may I take a moment? I
3  will look to see what kind of education the ten jurors may
4  have had.

5      THE COURT: All right.

6      (Pause.)

7      MR. MARTIN: Juror No. 4, these were the -- the
8  original juror numbers. Mr. Bodnar had just a vocational
9  education background. No. 22, Ms. Kenworthy, has high
10 school and college. She's a retired business analyst. No.
11 17 has simply a high school education, your Honor. And, in
12 fact, there's really no information as to what she does, and
13 yet she was retained as a juror, whereas the woman stricken
14 was a financial analyst.

15     Okay. Number 30. Corla Rogers has high school
16 and college. No. 9, Andy Dunn, has just a high school
17 education. Your Honor, he's an air belt sorter for U.P.S.
18 No. 24, high school and college. She's a rental property
19 lady. No. 13, high school and vocational, Ms. Glass.
20 Unemployed. And, finally, number -- I'm sorry.
21 African-American nurse.

22     Your Honor, I submit, based on that showing,
23 that their purported reason, her high school education, is
24 insufficient when you look at the other jurors who are
25 retained. I believe that this was an overt attempt to

1  dismiss an African-American juror.

2         MR. HEMMENDINGER: Your Honor, when we --
3  sometimes you don't get to be quite as analytical when you
4  are selecting people to be stricken as you would like to be,
5  but we were looking at Mr. Dunn, the air belt sorter. We
6  were looking at people with high school educations. We
7  liked    Mr. Dunn. He's an air belt sorter. He works
8  for United Parcel Service. We consider that to be an
9  industrial-type of occupation that made him simpatico, we
10 hope.

11         Mr. Hollinger has a high school education, lists
12 his employer as a race track, works around animals. We'd
13 assume knows this kind of work world that we're talking
14 about.

15         No. 11, the one in question, has a high school
16 education, works in an office for an insurance company. I
17 didn't think it was the right mix for us.

18         You know, that is about as analytical as we were
19 able to be about it.

20         THE COURT: Well, it has been a while since I
21 had a Batson challenge. I believe that there has been a
22 proffer that is not frivolous.

23         What's the next step?

24         MR. MARTIN: I think it's the Court's ruling. I
25 don't know that we get anything --

1          THE COURT:  Okay.
2          MR. MARTIN:  I'm sorry.  Are you speaking about
3  my proffer or --
4          THE COURT:  No.  I said the defendants' -- I
5  mean, proffer, they offer a non-frivolous, in terms of the
6  difference between the industrial and the office kind of
7  status of employees or potential jurors.
8          MR. MARTIN:  If I may, your Honor, it's Mr.
9  Hollinger, works at Dover Downs in some non-described
10 capacity with a high school education.  I don't know
11 how that can really be determined by the defense to be a
12 much better witness, or juror, rather, than a lady who
13 may only have a high school education, but she's a financial
14 analyst for an insurance company, which are known to
15 be rather conservative.  And I think that my Batson
16 challenge is stronger now after having analyzed the
17 remaining jurors.
18         MR. BREWER:  Your Honor, the gentleman works at
19 Dover Downs.  we would assume -- of course, his job is not
20 described, but he works outdoors.  He's working with
21 animals.  He's working --
22         THE COURT:  Actually, I think Dover Downs is car
23 racing, not  horse racing, is it not?
24         MR. WALTER:  They have them both.
25         MR. BREWER:  I believe they do.

```
 1              THE COURT:  You know more about it than I do.
 2              MR. BREWER:  As opposed to a woman who'S sitting
 3    in an office every day, just crunching numbers.
 4              THE COURT:  Well, I mean, I believe there is a
 5    distinction that can be made.  I don't believe that jury
 6    selection is a science and that everyone thinks about it the
 7    same way.  On the other hand, you all have to be aware that
 8    Mr. Martin has been on a campaign to change our jury
 9    selection process and that this will be an issue for appeal.
10              I'm not convinced that you all did this for the
11    wrong purposes and so I will deny the Batson challenge.  I
12    just want you to know that you are complicating the record,
13    if you continue to want to do that.  That is your choice.
14              MR. BREWER:  Okay.
15              THE COURT:  All right.
16              MR. HEMMENDINGER:  Excuse me, your Honor.  Do we
17    get a break before opening?  I'm thinking about the
18    restroom.
19              THE COURT:  What I will do is I will the panel.
20    We have two choices.  We have lunches being served at 11:30,
21    so we can excuse the panel, give the preliminary
22    instructions, then take basically an hour break to let the
23    jurors make their phone calls and have their lunch.  Then
24    we'll start in with openings after that.  If you all can
25    make it while I --
```

1        MR. HEMMENDINGER:  It's not an emergency.

2    (End of sidebar conference.)

3    (End of excerpted transcript.)

4              - - -