IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIE DAVIS, JR., NATHANIEL BRIDDELL, GEORGE W. FEDDIMAN, JOSEPH GARRISON, LARRY E. GIBBS and ROY H. WALTERS, <br><br> ALL SIMILARLY-SITUATED CURRENT AND FORMER EMLOYEES OF MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA, INC., and MOUNTAIRE FARMS OF DELAWARE, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA, INC., and MOUNTAIRE FARMS OF DELAWARE, INC., all Delaware corporations, <br><br>    Defendants. | C. A. NO. 04-0414-SLR <br><br> JURY TRIAL DEMANDED <br><br> COLLECTIVE ACTION |

**MOUNTAIRE'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A NEW TRIAL**

Defendant Mountaire respectfully opposes Plaintiffs' Motion for a New Trial (D.I. 134) and in support of its opposition, states as follows:

**A.    Challenges To Rulings On Evidence.**

Plaintiffs' first three grounds for moving for a new trial concern rulings excluding evidence. The legal standard for deciding a motion for a new trial based on such rulings is provided by F. R. Civ. P. 61, which states:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, setting aside a verdict, or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

In this case, the sole liability issue presented to the jury was whether the Plaintiffs met the "hire or fire" prong of the executive exemption from overtime. None of the rulings challenged by Plaintiffs excluded evidence relevant to the Plaintiffs' authority to hire, fire, etc. It follows that none of the rulings affects their "substantial rights."

1. **Objection to testimony of Joseph Garrison regarding alleged admission by Douglas Lynch.**

The Court correctly sustained Mountaire's objection to Walter Garrison's testimony that Live Haul Manager Douglas Lynch told him that Mountaire owed the Plaintiffs payment for overtime. The Court's ruling was correct for several reasons:

a. The proposed testimony was hearsay. It was not an admission by a party-opponent, because there was no foundation for the proposition that deciding whether or not to pay the claim was within the scope of Lynch's employment. F. R. Ev. 801(d)(2). Indeed, the reason there was a trial in this case is that Mountaire did not pay the claim but contested it.

b. The proposed testimony was elicited in an unfair manner. When Mountaire learned that Lynch had scheduled a vacation for the week of trial, it arranged with Plaintiffs to take his video deposition on July 23, 2008. Plaintiffs were well aware that Lynch would not be available at trial.[1] Mountaire did not question Lynch about his conversation with Garrison because it was not related to the "hire or fire" issue which was the only liability issue identified for trial. Plaintiff also failed to question him about the conversation during the video deposition. Thus, when Plaintiffs' counsel sought to question Garrison about the conversation at trial, Mountaire had no ability to respond,

---

[1] Plaintiffs also continue to insinuate that Phillip Owen's absence from the trial was contrived to prevent them from receiving a fair trial. Mr. Owen is still seriously ill.

2

except possibly to read a portion of Lynch's discovery deposition. That portion was taken by Plaintiff's counsel and did not fully develop Mountaire's response. Indeed, it is not even clear that the deposition deals with the same conversation. Garrison's testimony concerned a conversation after the lawsuit was filed (D.I. 135-2 at 3) while the discovery deposition testimony concerned a conversation before the case was filed (D.I. 135-3 at 5).

c. The proposed testimony was irrelevant. Even crediting Garrison's version of the conversation, there is no evidence that Lynch's supposed admission was linked to the question of the Plaintiffs' authority to hire or fire, etc. It sheds no light on the question of whether the Crew Leaders had the authority to hire or fire, etc.

**2.    Exclusion of Trial Exhibit 1.**

The Court correctly sustained Mountaire's objection to the March 21, 2001 DOL Audit Review. Plaintiffs' Trial Ex. 1; Exhibit 4 to Plaintiffs' Motion for a New Trial. The sole liability issue presented to the jury was whether the Plaintiffs satisfied the "hire or fire" test. The exhibit in question deals with Mountaire's awareness of the salary basis test in 2001 and is completely irrelevant to the "hire or fire" test. Plaintiffs' own motion establishes that the document was offered in an effort to impeach Mountaire on a collateral issue. D.I. 135 at 7.

**3.    Exclusion of Responses to Requests for Admissions.**

After the close of evidence, Plaintiffs sought to offer responses to requests for admissions served by Mountaire in 2005 concerning Mountaire's awareness that Plaintiffs worked more than 40 hours per week. The Court correctly sustained Mountaire's objection for several reasons:

a. The responses, which were not listed in the pretrial order as exhibits, were offered after the close of evidence. If they had been used in cross examination or offered during Plaintiffs' case in chief, Mountaire would have had an opportunity to explain why the responses no longer represented Mountaire's position.

b. The responses were irrelevant to the "hire or fire" issue. They solely concern Mountaire's awareness of the number of hours worked by Plaintiffs. By the time the case reached trial, Mountaire did not take the position expressed in the responses. Mountaire not only admitted, but made part of its own case, the fact that the Plaintiffs' job often required them to work more than 40 hours a week. Again, Plaintiffs' own motion establishes that the only basis for offering the responses was to attempt to impeach Mountaire on a collateral issue. D.I. 135 at 10.

In summary, none of the rejected evidence addresses the one substantive issue that the jury was asked to decide, whether the Plaintiffs had authority to hire or fire, etc. The admission of the evidence in question would have created distracting and time-consuming side-shows, irrelevant to the issue that the jury was instructed to decide. Because the evidence does not deal with the sole liability question in this case, its exclusion could not have affected Plaintiffs' "substantial rights."

**B.    Challenges Concerning Racial Composition Of Jury.**

Plaintiffs' last two grounds for moving for a new trial accuse both Mountaire and the District Court's jury selection system of racial bias. There is no basis for either accusation.

### 1. Plaintiffs' *Batson* challenge was correctly rejected.

In ruling on a *Batson* challenge, the court must decide whether the striking party has advanced a non-pretextual, race-neutral reason for the preemptory challenge. *Forrest v. Beloit Corporation*, 424 F.3d 344, 350 (3d Cir. 2005). The reason advanced by the striking party "need not be especially persuasive from a tactical standpoint." *Id.* The reason must be based on something other than the race of the juror, and free of discriminatory animus. *Id.* Because the trial court's evaluation turns in large part on the credibility and demeanor of the attorney who exercised the challenge, the trial judge is afforded considerable deference. *Id.*

In his *Batson* challenge, Plaintiffs' counsel compared the struck African-American venire member No. 11 (Edwards) to other potential jurors, specifically mentioning No. 9 (Dunn) and No. 17 (Hollinger). Mountaire's counsel then explained that No. 9 (Dunn) had industrial experience that Mountaire felt made him "simpatico." Similarly, No. 17 (Hollinger) works in a race track and knows the "kind of work world we're talking about." By comparison, Mountaire struck the African-American juror in question, No. 11 (Edwards), because her education was limited to high school and because her work experience was in an insurance company office. Tr. 81, D.I. 135-9. (Mountaire did not strike the other African-American member of the venire, who explained during jury selection that she was employed as a nurse, which requires post-high school education.)

In their motion, Plaintiffs compare No. 11 to No. 13 (Glass). During the challenge, however, Plaintiffs recited No. 13's education as "high school and vocational." Tr. 80, D.I. 135-9. In Mountaire's view, the vocational education put her in a different

5

category than the venire members being discussed. Accordingly, Mountaire did not discuss her and was not asked to provide a further explanation concerning her at trial. If any explanation for not striking her is now required, it is, as discussed above, that she had further education after high school.

In their motion, Plaintiffs argue that Mountaire's explanation is pretextual because Mountaire should have preferred an office worker over blue collar workers. Plaintiffs argue that an office worker would be more naturally aligned with management whereas the blue collar workers would be more naturally aligned with Plaintiffs. Mountaire's analysis, however, was because she had only a high school education, No. 11's insurance company work was probably routine and far from management level. Moreover, an insurance company is, by nature, a bureaucratic setting, with formal lines of authority. The blue collar workers, Mountaire reasoned, would have experience being supervised by field supervisors, similar to the Plaintiffs, in a less formal, non-office setting. Moreover, the blue collar workers, Mountaire reasoned, were likely to be members of unions, and would understand the kind of authority exercised by supervisors such as Mountaire's Crew Leaders.

### 2. There is no evidence that African Americans were systematically excluded from the venire.

In order to establish a violation of the Jury Selection and Service Act, 28 U.S.C. § 1861 and the Sixth Amendment, Plaintiffs must show that the representation of African-Americans in venires is not fair and reasonable in relation to their number in the community and that the under-representation is due to systematic exclusion in the jury selection process. *Duren v. Missouri*, 439 U.S. 357 (1979); *Boyd v. City of Wilmington*, 2007 WL 174135 (D.Del. 2007)(Robinson, J.). There is no requirement, however, that

6

the petit jury chosen mirror the population. *Taylor v. Louisiana*, 419 U.S. 522 (1975); *Boyd, supra*.

Mountaire does not have a transcript of the trial, but has no notes or recollection of Plaintiffs' challenging the composition of the venire before the jury was selected. It also has no record concerning the racial composition of the venire. Assuming that Plaintiffs are correct that five out of thirty six (14%) members of the venire were African-American, Plaintiffs nonetheless offered no statistical evidence that the composition of the venire was so different from the population that its "fair and reasonable" composition could be reasonably questioned *United States v. Weaver*, 267 F.3d 231, 240 (3d Cir. 2001)(statistical evidence required). Furthermore, Plaintiffs have offered no reason to believe that the composition of the jury was due to systematic exclusion in the Court's jury selection process. *Id.*[2]

Mountaire has no independent knowledge of the working of the District Court's jury selection process. The Court's website contains the jury selection plan. According to it, the District Court uses a system which has been adopted for the use of federal courts on a national basis. See also, *Boyd v. City of Wilmington, supra* (describing selection system). Plaintiffs have proffered no reason to think that the system is not working properly.

---

[2] Ultimately, the jury in this case was comprised of seven jurors, after one juror was excused for personal reasons almost immediately after being seated. One of the jurors was African-American (14 percent). If two of the jurors had been African-American, the percentage would have been 28 percent. Accepting Plaintiffs' contention that the relevant community is 20 percent African American, it was impossible to have a jury that exactly matched the community. A difference of minus six or plus eight percentage points was inescapable.

7

## CONCLUSION

For the foregoing reasons, Mountaire respectfully requests that Plaintiffs' Motion for a New Trial be denied.

Respectfully submitted,

*/s/ Timothy M. Holly*

Matthew F. Boyer (Del. Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141


/s/ Arthur M. Brewer

Arthur M. Brewer (admitted *pro hac vice*)
Eric Hemmendinger (admitted *pro hac vice*)
SHAWE & ROSENTHAL, LLP
20 S. Charles St., 11th Floor
Baltimore, MD 21201
Telephone: (410) 752-1040
Facsimile: (410) 752-8861
*Attorneys for Defendants*

September 8, 2008

CBLH: 633460