IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIE DAVIS, JR., NATHANIEL BRIDDELL, GEORGE W. FEDDIMAN, JOSEPH GARRISON, LARRY E. GIBBS and ROY H. WALTERS, ALL SIMILARLY-SITUATED CURRENT AND FORMER EMLOYEES OF MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA, INC., and MOUNTAIRE FARMS OF DELAWARE, INC., <br><br>Plaintiffs, <br><br>v. <br><br>MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA, INC., and MOUNTAIRE FARMS OF DELAWARE, INC., all Delaware corporations, <br><br>Defendants. | C. A. No. 04-0414-SLR <br><br>JURY TRIAL DEMANDED <br><br>COLLECTIVE ACTION |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR NEW TRIAL**

Plaintiffs respond to Defendant's Opposition to Plaintiffs' Motion for New Trial as follows:

**I.    Challenges To Rulings On Evidence**

   **A.    Objection to Testimony of Joseph Garrison regarding alleged Admission by Douglas Lynch.**

   1.    Defendant has not overcome the clear application of F.R.E. §801(d)(2) wherein Mr. Lynch's remarks to Mr. Garrison must be construed as an admission of a party-opponent. The fact that Defendant called it hearsay does not make it hearsay. Indeed, under §801(d)(2) this is specifically not hearsay.

2. Defendant attempts to suggest that Lynch's statement about the company's willingness to pay the claim was not within the scope of Lynch's employment. To the contrary, Lynch was the crew leader's manager and the director of the Live Haul Department within Defendant Mountaire. It is undisputed that Lynch had or has great authority to run this department that is so vital to the mission of Mountaire. Notably, Lynch's statement did not just say "I," he specifically told Joe Garrison that, "We know we owe y'all some [money] but...we don't know how much." Thus, Mr. Lynch was not speaking simply for himself but spoke for his company when he asked Mr. Garrison not to sign any papers knowing that the company owed the crew leaders some money.

3. The ultimate issue in this case is whether Defendant Mountaire owed Plaintiffs compensation for working overtime. The unresolved issue that was an issue at trial was the "hire or fire" test. However, Lynch's statement was more than relevant, it was probative of the ultimate issue in the case; i.e., whether Mountaire owed Plaintiff crew leaders for their overtime.

4. Defendant's statement that, "The proposed testimony was elicited in an unfair manner" does not make sense. The proposed testimony was never presented to the jury and therefore could not have been "elicited." What was unfair, however, was defense counsel's speaking objection in front of the jury advising the jury that, "the conversation has nothing to do with the law suit." While the speaking objection was improper, the statement made to the jury was also inaccurate.[1]

---

[1] Defendant suggests that Plaintiff continues to "insinuate" that Phillip Owens' absence was contrived. Plaintiffs never suggested that Owens absence was somehow planned by Defendant. Plaintiffs do, however, believe that they were prejudiced by not having any senior managers come to the courtroom and testify. These managers had given depositions previously and Plaintiffs' counsel was prepared to cross-examine them as to numerous discrepancies.

2

5. The testimony of Joe Garrison with regard to his conversation with Doug Lynch was critical to Plaintiffs' proof that Mountaire was aware that they should have been paying overtime compensation to the crew leaders.

**B.    Exclusion of Trial Exhibit 1.**

1. In its Response, Defendant Mountaire fails to appreciate that this Exhibit would have been used by Plaintiffs to show that Mountaire knew that the crew leaders were not exempt at least through June 2002 and that the company failed to pay them overtime. This would have a significant impact upon the jury's impression whether Mountaire considered the crew leader's exemption status. Further, this Exhibit would effectively impeach the credibility of Defendant Mountaire as a company as well as the witnesses who testified and who were aware of this Exhibit.

**C.    Exclusion of Responses to Requests for Admissions.**

1. Once again, this evidence would have impeached the credibility of Defendant and its witnesses by a demonstration that, at least until a few years ago when the Requests for Admissions were answered, Mountaire refused to recognize that Plaintiff crew leaders worked more than 40 hours per week. As such, Mountaire would not recognize the applicability of any overtime claims.

2. The fact that these admissions were not set forth in the pretrial order has no meaning. Hence the Court noted throughout the trial, these were part of the record and were able to be given to the jury. Plaintiffs' counsel misunderstood the Court and the Court's response after Plaintiffs' counsel asked during the presentation of his case whether he could show these Requests for Admission responses to the jury. When the Court answered in the

affirmative, it was not understood that this could not be done solely in Closing Argument (as had been done with the Stipulations of Fact that were shown to the jury in the Opening Statement).

    3. Plaintiffs respectfully submit that the Requests for Admissions should have been admitted as a means to further test the credibility of Mountaire and its witnesses. The fact that Mountaire may not have had anyone present in the Court room to acknowledge that these Requests for Admissions were wrong, does not, preclude their admissibility, as is directed under the rules of civil procedure. If any responses to pleadings are inaccurate, they must be changed, sometime with leave of Court. Having failed to amend their Responses to Admissions, Defendant had no standing to object to the introduction of same at trial.

  **II.** **Challenges Concerning Racial Composition of Jury.**

    **A.** **Plaintiffs' *Batson* Challenge was Correctly Rejected.**

    1. For the reasons Plaintiffs set forth in their Motion for New Trial, Plaintiffs maintain that the strike of African American juror number 11 (Edwards) was racially motivated. It is, in part, telling the Defendants strike of juror number 11 (Edwards) was their first strike. Racial motivation for the strike might have been more apparent if it was a third strike rather than first strike.

    2. Plaintiffs maintain that juror number 11's (Edwards) profile is more suitable to be a prospective juror for the defense than for Plaintiffs. Defendants' suggestions that this juror's work was "probably routine" is inconsistent with her description as a "financial analyst." While having a high school education, a financial analyst is not a clerical position and is by definition a conservative position with a conservative employer (insurance

company). Defendants' statement that juror number 9 (Dunn), a UPS airbelt sorter who was allegedly "simpatico" strains credulity.

3. Ultimately, the Court must determine whether Defendants' reasoning was based on non-pretextual, race-neutral reasons. For the reasons stated previously and herein, Plaintiffs believe that this is not the case.

**B. Systematic Exclusion of African Americans from the Venire.**

1. Plaintiffs' counsel has made this same argument before this Court previously. This matter is scheduled for oral argument before the U. S. Court of Appeals on or about October 24, 2008.

2. Plaintiffs' stand on their argument set forth in Plaintiffs' Motion for New Trial.

**WHEREFORE,** for the forgoing reasons, Plaintiffs respectfully request that their Motion for New Trial be granted.

MARTIN & WILSON, P.A.

_____
**JEFFREY K. MARTIN**    (ID No. 2407)
**TIMOTHY J. WILSON**    (ID No. 4323)
1508 Pennsylvania Avenue
Wilmington, DE 19806
302-777-4681
jmartin@martinandwilson.com
twilson@martinandwilson.com
*Attorneys for Plaintiffs*

DATED: September 15, 2008

## CERTIFICATE OF SERVICE

I, Jeffrey K. Martin, Esquire, the undersigned counsel for Plaintiffs in the above-captioned case, hereby certify that a copy of *P Plaintiffs' Reply To Defendants' Opposition To Plaintiffs' Motion For New Trial* was served by electronic filing to the following:

>Eric Hemmendinger, Esquire
>Arthur M. Brewer, Esquire
>Shawe & Rosenthal, LLP
>Sun Life Building, 11th Floor
>20 South Charles Street
>Baltimore, MD 21201

/s/ JEFFREY K. MARTIN

Dated: September 15, 2008