IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIE DAVIS, JR., NATHANIEL BRIDDELL, JOSEPH GARRISON, LARRY E. GIBBS, ROY H. WALTERS, and ALL SIMILARLY-SITUATED CURRENT AND FORMER EMPLOYEES OF MOUNTAIRE FARMS, INC., MOUNTAIRE FARMS OF DELMARVA, INC., and MOUNTAIRE FARMS OF DELAWARE, INC. | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 04-414-SLR ) |
| MOUNTAIRE FARMS, INC., a Delaware corporation, MOUNTAIRE FARMS OF DELMARVA, a Delaware corporation, and MOUNTAIRE FARMS OF DELAWARE INC., a Delaware corporation, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Jeffrey K. Martin of Martin & Wilson, P.A., Wilmington, Delaware. Counsel for Plaintiffs.

Matthew F. Boyer of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Arthur M. Brewer, Esquire and Eric Hemmendinger, Esquire of Shawe & Rosenthal, LLP, Baltimore, Maryland.

**MEMORANDUM OPINION**

Dated:  January 22, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs Willie Davis, Jr. ("Davis"), Nathaniel Briddell ("Briddell"), Joseph

Garrison ("Garrison"), Larry E. Gibbs ("Gibbs"), and Roy H. Walters ("Walters")

(collectively, "plaintiffs" or "Crew Leaders") brought suit against defendants Mountaire

Farms, Inc., Mountaire Farms of Delmarva, Inc., and Mountaire Farms of Delaware, Inc.

(collectively, "defendants") for, among others, violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et. seq. Plaintiffs sought unpaid overtime compensation for

hours worked in excess of 40 each week beginning in 2001 and going forward. 29

U.S.C. § 207(a). After a jury trial, the jury found in favor of defendants. Thereafter,

plaintiffs moved for a new trial, and moved for partial summary judgment seeking

compensation for plaintiffs for the period of June 2001 through June 2002. (D.I. 134;

D.I. 138)

## II. BACKGROUND

### A. Plaintiffs

Plaintiffs are five "Crew Leaders" who are either currently or formerly employed

by defendants. Crew Leaders supervise other employees known as "chicken catchers"

who travel to various growers' farms to catch and crate chickens to be sent to

defendants' processing plant.[1] Crew Leaders are required to pick up each member of

their crew (seven or eight individuals) at their respective homes, transport the crew to

---

[1]For a more detailed description of plaintiffs' duties, see Davis v. Mountaire Farms, Inc., No. Civ. A. 04-414, 2005 WL 1522609, at *1-2 (D. Del. June 28, 2005) (hereinafter Mountaire I), and Davis v. Mountaire Farms, Inc., 453 F.3d 554, 555-57 (3d Cir. 2006) (reversing Mountaire I as to the fourth prong of the FLSA's executive exemption test).

the farms where the chickens are harvested and then convey the crew members back to their homes at the conclusion of the work day. In July 2002, plaintiffs became salaried employees; however, their duties remained the same. Plaintiffs seek payment for the time spent transporting their catchers to and from work which, they contend, is compensable.

## B. Litigation History

Plaintiffs brought the present action on June 21, 2004 seeking, *inter alia*, compensation for unpaid overtime wages for overtime completed since 2001. (D.I. 1) Plaintiffs brought several claims. Plaintiffs asserted that defendants violated the FLSA by misclassifying plaintiffs as employees who are exempt from overtime wages. In addition, plaintiffs brought a retaliation claim and a state law claim under the Delaware Wage Payment and Collection Act, 19 Del. C. § 1101 et. seq. (*Id.*)

Under the FLSA, the general rule is that employers must pay overtime compensation to employees who work over 40 hours per week; however, those who are employed in a "bona fide executive, administrative, or professional capacity" are exempt from this requirement. 29 U.S.C. §§ 207(a)(1); 213(a)(1). In August 2004, a new statute was adopted defining an "executive employee" as one "who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. 541.100 (2005).[2]

---

[2]Prior to August 23, 2004, either a "long test" or a "short test" determined an employee's exempt status. *See Marshall v. Western Union Tel. Co.*, 621 F.2d 1246, 1249 (3d Cir. 1980). Under the "long test," whether an employee is an executive is determined through various job-related criteria. *See* 29 C.F.R. § 541.1 (2004). "Under

2

On May 2, 2005, the parties filed cross-motions for summary judgment. (D.I. 41; D.I. 43) On June 28, 2005, the court applied the recently amended regulations and, in so doing, granted defendants' motion for summary judgment on all claims. *See Davis v. Mountaire Farms, Inc.*, No. Civ. A. 04-414, 2005 WL 1522609, at *1-2 (D. Del. June 28, 2005).[3] Plaintiffs moved for reconsideration (D.I. 57), which motion was denied. (D.I. 59)

Plaintiffs appealed to the Third Circuit solely on the overtime issue, challenging the district court's finding with respect to the fourth factor of the new regulation, the "hire or fire" prong. (*See* D.I. 76, ex. A at 4) The Third Circuit remanded, determining that genuine issues of material fact remained. *See Davis v. Mountaire Farms, Inc.*, 453 F.3d at 559. In so doing, The Third Circuit noted that the case had proceeded "on the assumption that the [new] regulation applie[d] to all the overtime at issue." *See id.* at 557, n. 2. Noting that regulations generally are not given retroactive effect, the Third Circuit commended to the court's attention the determination of which regulation (old or new) applies to what overtime and whether, once the proper regulation is applied, all overtime at issue is compensable. *See id.*

_____

the 'short test' for high-salaried managerial employees, managerial status is determined by reference to the employee's salary level and his 'primary duty' as an employee." *See Marshall*, 621 F.2d at 1249. "[A]n employee who earns not less than $250 per week (as opposed to $15[5] per week under the long test) and 'whose primary duty consists of the management of the enterprise . . ., and includes the customary and regular direction of two or more other employees, therein' is deemed to have met the requirements for executive status." *Id.* (citing 29 C.F.R. § 541.1(f) (2004)) (alteration in original) (citation omitted).

[3]The decision on summary judgment was issued by the Honorable Kent A. Jordan. Subsequent to his elevation to the Third Circuit, the case was re-assigned to this judicial officer.

3

Defendants subsequently moved for partial summary judgment based on the

Third Circuit's mandate to consider these issues. (D.I. 67) The court found that the old

regulations govern the time period prior to August 23, 2004; the new regulations are not

retroactive. *See Davis v. Mountaire Farms Inc.*, 551 F. Supp. 2d 343, 348 (D. Del.

2008) (hereinafter, "*Mountaire II*"). Defendants argued that the first three prongs of the

new regulations generally equated to the older "short test" for executive status and,

therefore, summary judgment should be entered against Garrison, Bridell, and Davis,

who were not employed by defendants at the time of the August 2004 FLSA

amendment. (D.I. 67 at 5-6) The court declined, however, to apply the "short test," and

ordered trial to proceed on the only remaining factor of the "long test" – whether

plaintiffs had authority to "hire or fire." *Mountaire II*, 551 F. Supp. 2d at 349.

The jury ultimately reached a verdict that defendants had proven, by a

preponderance of the evidence, that plaintiffs had the authority to "hire and fire," or

otherwise met the requirements of 29 C.F.R. 541.100. (D.I. 130) Judgment was

entered in favor of defendants on August 13, 2008. (D.I. 133) Following the entry of

judgment, on August 26, 2008, plaintiffs filed a motion styled as a "motion for partial

summary judgment" by which they seek overtime for the period of June 2001 through

June 2002, in view of PTX-1, a document excluded at trial. (D.I. 138) Plaintiffs have

also moved for a new trial based on several evidentiary issues ruled upon from the

bench, including the exclusion of PTX-1. (D.I. 134; D.I. 135)

## III. STANDARDS

### A. New Trial

4

The decision to grant or deny a new trial is within the sound discretion of the trial court and, unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *See Allied Chem. Corp. v. Darflon, Inc.*, 449 U.S. 33, 36 (1980). Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

New trials are commonly granted in the following situations: (1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence surfaces that would likely alter the outcome of the trial; (3) where improper conduct by an attorney or the court unfairly influenced the verdict; or (4) where the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584 (D.N.J. 1997) (citations omitted). The court, however, must proceed cautiously and not substitute its own judgment of the facts and assessment of the witnesses' credibility for the jury's independent evaluation. Nevertheless,

> [w]here a trial is long and complicated and deals with a subject matter not lying within the ordinary knowledge of jurors a verdict should be scrutinized more closely by the trial judge than is necessary where the litigation deals with material which is familiar and simple, the evidence relating to ordinary commercial practices. An example of subject matter unfamiliar to a layman would be a case requiring a jury to pass upon the nature of an alleged newly discovered organic compound in an infringement action.

*Lind v. Schenley Indus. Inc.*, 278 F.2d 79, 90-91 (3d Cir. 1960).

5

## B. Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) provides that a party may move for judgment as a matter of law ("JMOL") "any time before the case is submitted to the jury"; "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." The court may grant the motion at that time, or reserve judgment, in which case "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." *Fed. R. Civ. Pro.* 50(b). "[I]f the motion addresses a jury issue not decided by a verdict," a party must then renew its motion for JMOL "no later than 10 days after the jury was discharged." *Id.*

## IV. DISCUSSION

The record in this case is incredibly convoluted; counsel and the court were, at times, three ships passing in the night. In order to facilitate review, the court begins by communicating its understanding of the proceedings as well as the legal underpinnings of the issues at bar.

Title 29 of the United States Code, section 255, provides a two-year statute of limitations for FLSA actions, and a three-year statute of limitations for willful violations, as follows.

§ 255. Statute of limitations

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.]--

6

(a) if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that **a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued**[.]

29 U.S.C. § 255(a) (emphasis added).  The court pauses to note the obvious:  the

foregoing is a "statute of limitations" provision, not a "damages" provision.  The FLSA's

damages provision reads as follows:

b)  Damages; right of action; attorney's fees and costs; termination of right of action

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction . . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216.  Additionally:

260.  Liquidated damages

In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], if **the employer shows** to the satisfaction of the court that the act or omission giving rise to such action was in **good faith and that he had reasonable grounds for believing that his act or omission was not a violation** of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260 (emphasis added).  Willfulness, therefore, is relevant to two inquiries in

FLSA cases:  the maximum recovery period (the statute of limitations) and the court's

7

award of liquidated damages.[4]  In other legal contexts, willfulness is infrequently
considered separate and apart from damages.  The difference in the present statutory
scheme appears to be a subtle, but important one: it is possible for a plaintiff to
demonstrate a willful violation of the FLSA without obtaining punitive damages.

In many FLSA cases, plaintiffs' willfulness evidence is challenged on a motion to
dismiss, or a motion for summary judgment, at which time the court may make rulings
regarding the sufficiency of the willfulness evidence. *See, e.g., Fowler v. Incor*, 279
Fed. Appx. 590, 602 (10th Cir. 2008).  That did not occur here.  Judge Jordan had no
occasion to consider willfulness in the first round of summary judgment briefing, and
declined to consider plaintiffs' cursory argument in the context of their motion for
reargument.  (D.I. 57; D.I. 59)  Plaintiffs proceeded to the Third Circuit on the executive
exemption issue, and the Court remanded on that issue.  That is, this court was
charged only with considering, once plaintiffs became salaried employees in June 2002,
whether plaintiffs had the authority to "hire or fire."

Under § 255, so long as willfulness was on the table, plaintiffs had a claim for
overtime wages for June 2001 - June 2002.[5]  Recognizing that a verdict for defendants
on the executive exception (during the 2002 - 2004 timeframe) would have necessitated

---

[4]Notably, in the statute of limitations context, willfulness is plaintiffs' burden.
Defendants have the burden of proof of demonstrating good faith in the damages
context.  The court does not deem willfulness and a lack of good faith to be equivalents,
but recognizes, in concurrence with the majority of Circuit Courts, that a finding of
willfulness would preclude a finding of good faith. *See Alvarez Perez v. Sanford-
Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1166 (11th Cir. 2008) (collecting authority).

[5]Plaintiffs characterized their claim in the joint pretrial order as follows: "Whether
defendant[s] knew or should have known that overtime should have been paid on or
before June 2001 and thereafter."  (D.I. 105 at 6)

8

an inquiry into defendants' good faith pursuant to § 260, the court ruled that plaintiffs would be permitted to admit willfulness evidence at trial. Further, insofar as a pattern of behavior by defendants could illustrate a lack of good faith, the court found that plaintiffs' willfulness evidence need not be limited to 2002 - 2004. (D.I. 143 at 121); *see Reich v. Department of Conservation and Natural Resources, State of Ala.*, 28 F.3d 1076 (11th Cir. 1994).

This evidentiary holding was made in the context of considering liquidated damages under § 260 in the event of a plaintiffs' verdict. During trial, however, defendants elected to concede willfulness, subject to their continuing objection that plaintiffs had waived the issue by not addressing it in their summary judgment briefing before Judge Jordan and/or not appealing Judge Jordan's denial of their motion for reconsideration on this ground. (D.I. 144 at 5, 12-13) The results of defendants' "qualified" concession were as follows: (1) if the jury were to find that the executive exemption did not apply, the court would automatically award overtime damages for all three years, or from 2001 - 2004; and (2) plaintiffs' willfulness evidence was no longer relevant to the issue remaining to be tried, *i.e.*, plaintiffs' authority to "hire or fire." The court, therefore, declined to admit PTX-1, a 2001 document plaintiffs sought to use to demonstrate willfulness, on the basis of relevance.

At the close of defendants' case, plaintiffs' counsel lodged an oral motion for judgment that plaintiffs were due overtime wages for the June 2001 - June 2002 time frame. The motion was based on defendants' concession that plaintiffs worked over 40 hours per week at all relevant times and were not salaried until June 2002. The court reserved judgment.

9

Judgment for plaintiffs should have been granted at that time.  As plaintiffs noted, there were no disputed facts regarding the number of hours worked or plaintiffs' salaried status.  Defendants conceded willfulness, subject to their waiver argument. The court had previously indicated its disagreement with defendants' waiver argument, rendering that issue ripe for appeal.  (D.I. 122; D.I. 142 at 6-7)  There was nothing else for plaintiffs to prove on their claim for overtime wages for the third year.  Although the reservation of judgment did allow for the possibility that the jury would find for plaintiffs on the executive exemption issue, in which case plaintiffs would be awarded damages for the June 2001 – June 2002 time frame per defendants' stipulation, it was an oversight on the court's part not to enter judgment on this issue not to enter judgment on this issue upon the jury's returning a defense verdict.  Therefore, pursuant to Federal Rule of Civil Procedure 60(a), the court shall correct the judgment to reflect the agreement of the parties.  Judgment shall be entered in favor of plaintiffs for the June 2001 – June 2002 time frame.[6]  Given this decision, plaintiffs' motion for partial summary judgment is denied as moot.

### B.  Plaintiffs' Motion for a New Trial

The jury returned its verdict in this case on August 8, 2008 (D.I. 129), and judgment was entered by the court on August 13, 2008 (D.I. 133).  Pursuant to Federal Rule of Civil Procedure 59, new trial motions are due ten days from the court's entry of judgment.  In this case, the Saturday, August 23, 2008 deadline would have been

---

[6]If judgment were not entered in favor of plaintiffs in this regard, defendants would have been given the benefit of the court's evidentiary rulings on PTX-1, without being held to its concession that plaintiffs were hourly employees who worked more than 40 hours per week during this time frame.

extended to Monday, August 25, 2008. Plaintiffs' motion for a new trial was filed on August 26, 2008 (D.I. 134), and must be denied as untimely.[7] Notwithstanding, for purposes of compiling a complete record for appeal, the court notes that it would have denied plaintiffs' motion for the following substantive reasons.

## 1. PTX-1

Plaintiffs claim that the court's failure to admit PTX-1 during the jury trial was an error necessitating a new trial. (D.I. 135 at 7-8) Plaintiffs assert that PTX-1 is an admission that could have been used "to impeach the credibility of Mountaire as a company, [and] also to impeach the credibility of Mountaire's witnesses who played a part in the charade of attempting to legitimize the crew leaders' standing as exempt employees." (Id. at 7) This argument ignores that fact that the issue of willfulness was removed from issue in the trial. The jury was tasked only with determining whether plaintiffs had the authority to "hire or fire," and the court stands by its ruling that PTX-1 is irrelevant to that issue.[8] Fed. R. Evid. 402.

## 2. Garrison's Testimony

The excluded testimony of Garrison was equally irrelevant to the "hire or fire" issue before the jury. Fed. R. Evid. 402. At trial, plaintiffs sought to admit a portion of Garrison's deposition transcript wherein Garrison testified that Mountaire representative

---

[7]The court notes that two grounds of plaintiffs' motion, plaintiffs' Batson challenge and the constitutionality of the jury venire process, were not jury issues, and likely should have been brought as JMOL motions, in which case the motion should have been brought no later than ten days after the jury was discharged on August 8, 2008. See Fed. R. Civ. P. 50(b).

[8]Further, in view of its lack of relevance to any issue tried, its prejudicial value outweighs any probative value. Fed. R. Evid. 403.

Doug Lynch ("Lynch") told him that defendants owed plaintiffs for overtime wages.[9]

Garrison testified that no one else was present during this discussion, and that he had

not asked Lynch to give him a statement to help in this case.[10]  (*Id.* at 17)

The court excluded the proffer as classic hearsay. (D.I. 145 at 95 ("there is no

way for [the court] to determine whether it was actually said because there is no other

evidence except this witness.")) Plaintiffs do not offer any other foundation in their

current papers. Moreover, Federal Rule of Evidence 801 can not apply, as plaintiffs

suggest, because the testimony offerred – Garrison's testimony – was not defendants'

---

[9]Garrison's deposition testimony was as follows:

Well, at the chicken farm, he came out there and seen me, and asked me about
the lawsuit. And he said the he did owe us some money of the lawsuit but he
didn't know how much.
\* \* \*

Well, he asked me, said, "Joe, I heard about the lawsuit that is going on." He
said, "I am asking you not to sign any papers," he said, "we can talk about it." He
said, "I do know that we owe you all some money, but," he said, "I don't know
how much."
\*\*\*

Then he said that, "Willie Davis is doing this but," he said, "He is a nobody and
he is not getting any money, he is not getting anything." But he said, "We know
we owe y'all some but," he said, "we don't know how much."

(D.I. 135, ex. 1 at 15-16)

[10]Lynch was later deposed, and he generally testified to having asked Garrison
about the lawsuit with Garrison on the farm, although no further details were elicited.
(*Id.*, ex. 2 at 36-37 (PTX-12)) Lynch had a second, videotaped deposition (based upon
his unavailablity at trial) during which neither party questioned him about this
discussion. Plaintiffs assert in their papers that, as Garrison's deposition occurred first,
defendants had plenty of opportunities to gather its own evidence on the issue, and
could not have been truly "surprised" by this proffer. (D.I. 135 at 5-6) This argument
misses the mark, both because it is the party seeking admission of evidence who has
the burden to establish its admissibility, and because the evidence was irrelevant in any
respect.

12

"own" admission, or a statement in which defendants (or an agent of defendants) expressed any beliefs. In sum, Garrison's testimony was irrelevant hearsay, and not a party admission.

### 3. Defendants' responses to plaintiffs' requests for admissions

After the close of evidence, plaintiffs sought to admit various responses from defendants' answers to plaintiffs' request for admission into evidence. Plaintiffs' counsel sought to use defendants' admissions in their closing argument, and was not aware that admissions needed to be previously admitted. (D.I. 135 at 9) The admissions sought to be entered were defendants' denials of requests 3, 4, and 7, served by defendants in 2005, in which defendants denied that plaintiffs often worked more than 40 hours per work week, that plaintiffs' jobs required as crew leaders necessitated more than 40 hours of work per week, and any awareness of defendants that plaintiffs were working such hours.

Defendants admitted at trial, and made a part of their own case, the fact that plaintiffs often worked more than 40 hours per week. (See, e.g., D.I. 143 at 120 (opening statement)) Plaintiffs argue that "[t]he significance of these denials to requests for admissions is the defendant[s] took a position which is now declared to be 'wrong' by [their] counsel . . . this information should have been provided to the jury to show the bad faith of defendant[s] by failing to acknowledge that there was an overtime issue that pertained to plaintiffs." (D.I. 135 at 10)

It was within the court's purview to deny, as unduly prejudicial to defendants, the admission of a document that was not used in plaintiffs' case in chief, used in cross examination, or even more fundamentally, listed in the pretrial order as a potential

13

exhibit. As defendants did not contest the fact that whether plaintiffs worked more than
40 hours a week, allowing the admission of the 2005 document[11] would have been
more prejudicial than probative of any issue before the jury. *Fed. R. Evid.* 403.
Defendants' good faith (or lack thereof) was not before the jury, and the belatedly
proffered admissions are not relevant to the "hire or fire" issue. *Fed. R. Evid.* 402.
Plaintiffs sought only to admit defendants' answers to show that "the company keeps
changing its mind" (D.I. 145 at 208); the court's rejection of this evidence did not affect
plaintiffs' "substantial rights."

### 4. *Batson* Challenge

Plaintiffs in this case are African-Americans. Prior to trial on this issue,
defendants used a peremptory challenge to strike Juror No. 11, an African-American
female who works as a financial analyst. Defendants' counsel indicated that the strike
"was based on her education," which was limited to high school, and because
defendants sought jurors with industrial (rather than "office") experience. (D.I. 143 at
80) Defendants' strike left only one African-American juror on the panel.

Peremptory strikes are usually educated guesses based on the limited
information about prospective jurors that is available to an attorney at the time. *See
United States v. DeJesus*, 347 F.3d 500, 505 (3d Cir. 2003). As such, "peremptory
strikes are presumptively valid until it is shown that they were exercised on an
unconstitutional basis, such as race or gender." *Id.* at 505-06. The Supreme Court has
outlined a three part test for evaluating claims that a defendant used its peremptory

---

[11]The court does not, obviously, condone defendants' failure to amend its
answers prior to trial in 2008.

challenges in violation of the Equal Protection Clause. *See id.* at 506 (citing *Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)).  First, the party challenging a peremptory strike must make a prima facie showing that the strike was based on race.  Second, if a prima facie case is established, then the burden shifts to the striking party to articulate a race neutral explanation for the strike.  Third, the trial court must decide whether the party challenging the strike has carried its burden of proving purposeful discrimination. *See id.*  However, when the striking party offers an explanation for its peremptory challenge before the court addresses the prima facie case " 'any issue regarding the existence of a prima facie showing of discrimination becomes moot . . . .' " *Id.* at 506 (quoting *United States v. Uwaezhoke*, 995 F.2d 388, 392 (3d Cir. 1993)).

In this case, the issue of a prima facie case is moot because defendants presented their nondiscriminatory justification for striking Juror No. 11 before the court made a decision regarding plaintiffs' prima facie case.  Having already concluded that defendants' counsel presented a legitimate reason for challenging Juror No. 11, the issue remaining for this court is whether plaintiffs have shown that defendants' justifications are mere pretext, *i.e.*, the peremptory challenge was motivated by race.

Plaintiffs' argument of pretext is based on the fact that Juror No. 11 was not the only juror lacking an education past high school and was, in plaintiffs' opinion, "conservative and likely to favor defendants" due to her job as a financial analyst for an insurance company.  More specifically, plaintiffs assert that defendants' strike was racially motivated in view of the following:  (1) "plaintiffs' pretrial review of the jury list suggested that [Juror No. 11] would be a strong juror for the defense given that she was

15

a financial analyst for an insurance company"; (2) Juror No. 7 had only a high school/vocational education; (3) Juror No. 3 gave no educational background, stating only that he worked at a Delaware racetrack; (4) Juror No. 5 was an airbelt sorter at UPS, and likely "sympathetic to plaintiffs . . . who like him, carry out the 'heavy lifting' of the company"; (5) Juror No. 1 was a retired pipefitter who "clearly . . . would be familiar with overtime principles and [plaintiffs] again believe that he would be more likely sympathetic to [plaintiffs] than to defendant"; and (6) the fact that the foregoing jurors were not stricken in favor of a financial analyst, "who very likely qualifies as an exempt employee and is conservative and likely to favor defendants," is indicative of racial bias. (D.I. 135 at 11-13)

In response, defendants explain that they preferred blue-collar jurors who "were likely to be members of unions, and would understand the kind of authority exercised by supervisors such as [defendants'] crew leaders." (D.I. 136 at 6) Further, Juror No. 1, who did not have more than a high school diploma, was believed to do insurance work that was "probably routine and far from management level" in a "bureaucratic setting with formal lines of authority." (*Id.*) With respect to the non-African-American jurors who were not challenged, defendants note that Juror No. 9 had industrial experience that defendants felt made him "simpatico" (D.I. 143 at 82), and Juror No. 17 works with animals at a race track and "knows the kind of work world we're talking about" (*id.*). (D.I. 136 at 5-6)

Defendants did not strike the other African-American juror on the panel, Juror

16

No. 26, a female nurse, who had a post-high school education.[12] By plaintiffs' own argument, Juror No. 11 would likely have been favorable to defendants (notwithstanding her race) based upon her employment experience, and defendants' decision to strike, therefore, was ultimately beneficial to plaintiffs. The fact that, in plaintiffs' opinion, defendants could have (but did not) veto additional Caucasian witnesses who presumably would be sympathetic to plaintiffs is of no import in view of the fact that these Caucasian witnesses had blue collar jobs, while Juror No. 11 had a corporate office job. The court finds that defendants made a valid inference based upon the limited information available, and that plaintiffs failed to carry their burden of demonstrating that Juror No. 11 was struck because she was African-American.

### 5. Jury Venire Challenge

The issue of the underrepresentation of African Americans in the court's jury venire has been brought by plaintiffs' counsel before this court on multiple occasions. In *Boyd v. City of Wilmington*, No. Civ. A. 05-178, 2007 WL 174135 (D. Del. Jan. 16, 2007), the court found plaintiff's challenge legally insufficient; the court adopts its prior rationale by reference here. The court notes that plaintiffs did object to the underrepresentation of African Americans in the jury venire during jury selection, preserving the issue for appeal.[13]

___

[12]Plaintiffs assert that Juror 26 "fell asleep and slept through most of the first day of trial" due to having to work just prior to reporting for jury duty. (D.I. 135 at 11, n.6) This unfortunate fact is not relevant to the court's review of defendants' preemptory strike or of the representation of African-Americans in the venire or on the jury.

[13]*Compare Boyd v. Wilmington Police Dept. et al.*, Civ. A. No. 07-1731, 2008 WL 5062364 at *2 (3d Cir. Dec. 2, 2008) (plaintiff failed to timely raise objection) (citing 28 U.S.C. § 1867(c)).

17

## V. CONCLUSION

Plaintiffs' motion for a new trial (D.I. 134) is denied.  Judgment is entered for plaintiffs for overtime damages for the period of June 2001 to June 2002.  Plaintiffs' motion for judgment (D.I. 138) is denied as moot.   An appropriate order shall issue.